UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECOVERY EFFORT INC.,

Plaintiff,

- against -

ZEICHNER ELLMAN & KRAUSE LLP,
WACHTEL MISSRY LLP, YOAV M. GRIVER,
and WILLIAM B. WACHTEL,

Defendants.

---

No.: 1:19-cv-05641 (VSB)

**FIRST AMENDED
COMPLAINT**

Plaintiff, Recovery Effort Inc., by its attorneys, Pollock Cohen LLP, alleges as follows:

## <u>Summary of Claims</u>

1.      Defendants are law firms and lawyers who disloyally and deceptively claimed to be acting "on behalf of" The Orly Genger 1993 Trust (the "Orly Trust") in a derivative lawsuit, while in actuality facilitating a brazen scheme to enrich themselves, as well as other clients and friends.  Specifically, they collaborated with the grantor (Arie Genger), his friends Arnold and David Broser, and a beneficiary of the Orly Trust (Orly Genger), to misappropriate and divert tens of millions of dollars of the Orly Trust's property.

2.      The Orly Trust is a spendthrift trust with two living beneficiaries, six other living persons with a remainderman interest, and debts to creditors in excess of $8 million.  As detailed below, Defendants represented Orly Genger in bringing derivative suits on behalf of the Orly Trust.  They repeatedly stood up in court and said that they were representing the interests of the Orly Trust, that they were acting on behalf of the Orly Trust, and that the benefit would go to the Orly Trust.  But when tens of millions of dollars arrived to resolve the suit in settlement, they secretly helped their clients to make off with the money, cutting out the real party in interest – the Orly Trust – in contravention of the basic fundamentals of derivative litigation.

3.      Defendants knew that the Orly Trust was essentially insolvent and owed monies to creditors.  They knew that cutting out the Orly Trust – the real party in interest – from the settlement meant diverting the funds from those creditors and the future beneficiaries of the Orly Trust.  But they facilitated this scheme anyway.

4.      Defendants are now left to argue, at best, that it was a collusive settlement – that they facilitated a secret settlement only on behalf of Orly Genger *individually*, even though she had no real individual claims.  But such collusive settlements of derivative suits have long been barred by the courts for obvious reasons: settlements that pay off the derivative plaintiff, without returning value to the real party in interest, are patently improper.

5.      As a proximate result of Defendants' conduct, the Orly Trust suffered damages in excess of $32 million in settlement proceeds. These funds were converted to pay third parties, including entities controlled by the grantor (Arie Genger), and *his* creditors: Arnold and David Broser. And, not surprisingly, Arie and the Brosers were all friends and business associates of the Wachtel Defendants (defined below).

## Parties

6.       Plaintiff Recovery Effort Inc. ("REI") is an Arkansas corporation which has its principal place of business in Arkansas, and is the assignee of the claims of The Orly Genger 1993 Trust asserted herein, and is wholly owned by it.

7.      Defendant Zeichner Ellman & Krause LLP (the "Zeichner Firm") is, upon information and belief, a limited liability partnership existing under the laws of the State of New York, is a citizen of the states of New York, New Jersey, Connecticut, and the District of Columbia, and is a law firm.

8.     Defendant Wachtel Missry LLP (the "Wachtel Firm") is, upon information and belief, a limited liability partnership existing under the laws of the State of New York, is a citizen of the states of New York and California, and is a law firm.

9.     Defendant Yoav M. Griver (collectively with the Zeichner Firm, the "Zeichner Defendants") is, upon information and belief, a citizen of the state of New York, a member of the bar of the state of New York, and a partner of the Zeichner Firm.

10.     Defendant William B. Wachtel (collectively with the Wachtel Firm, the "Wachtel Defendants") is, upon information and belief, a citizen of the state of New York, a member of the bar of the state of New York, and a partner of the Wachtel Firm.

## Jurisdiction and Venue

11.     Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     Venue is proper under 28 U.S.C. § 1391 because all Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## Facts

### The 2013 Settlement related to claims concerning TRI shares.

13.     The collusive settlement agreement, made in June 2013 (the "2013 Settlement") represents the culmination of various disputes that arose concerning ownership of shares in a business called Trans-Resources Inc. ("TRI").[1]

---

[1] TRI is a holding company having as its principal asset a fertilizer business with manufacturing facilities in Israel.

14.     The Genger family's ownership in TRI was initially held through TPR Investment Associates, Inc. ("TPR").  In 2001, certain investors and their affiliated entities (together, the "Trump Group") purchased a minority stake in TRI.  That minority stake included a right of first refusal.

15.     Also in 2001, Arie Genger and his wife Dalia separated.  Then, in October 2004, as part of their divorce settlement, Arie and Dalia entered into an agreement under which the Genger family's valuable interests in TRI were transferred by TPR to (i) Arie, (ii) the Orly Trust, and (iii) a separate trust that had been established for the benefit of Orly's brother, Sagi (the "Sagi Trust").

16.     The Trump Group later filed suit, arguing that the 2004 transfers violated its right of first refusal.  Of relevance here, the Trump Group claimed that, by virtue of these events, it had acquired, or had the right to acquire, certain shares of TRI that were owned by the Orly Trust (the "Orly Trust Shares"). Those TRI shares had previously been purchased by the Orly Trust from TPR as part of the 2004 separation agreement.

17.     Ultimately, in mid-2010, the Delaware Chancery court ruled that Arie had no claim to ownership of any TRI shares and that, because of the violation of the Trump Group's right of first refusal, the shares had reverted from Arie and the two trusts back to TPR.

18.     In 2011, the Supreme Court of Delaware affirmed judgment invalidating the 2004 transfer of the TRI shares to the Orly Trust only as to *record* ownership.  However, as to *beneficial* ownership, the Supreme Court of Delaware held that because the trial court lacked personal jurisdiction over the Orly Trust and TPR, it lacked the power to declare who beneficially owned the TRI shares.

***The parties continued their litigation in New York State.***

19.     Meanwhile, the Zeichner Defendants had commenced lawsuits entitled *Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust against Dalia Genger, et al.*, Supreme Court of the State of New York, New York County, Index No. 109749/2009 (the "2009 Action"), and *Arie Genger and Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust against Sagi Genger, et al.*, Supreme Court of the State of New York, New York County, Index No. 651089/2010 (the "2010 Action").

20.     Of relevance here, in her pleadings in the 2010 Action, Orly, in her capacity as trust beneficiary, asserted *derivative* claims on behalf of the Orly Trust. These derivative claims related to the Orly Trust's claimed ownership of the TRI shares and the Trump Group's allegedly unfair purchase price ($10.3 million) paid for the Orly Trust block of shares.

21.     In late 2011, the Wachtel Defendants also appeared on behalf of the Orly Trust in both the 2009 and 2010 Actions. Thereafter, for a period of several years, the Zeichner and Wachtel Defendants jointly represented the interests of the Orly Trust. In 2017, the Zeichner Defendants withdrew from both representations. The Wachtel Defendants have never filed any notice of withdrawal from either case.

22.     Thus, at all relevant times, the Zeichner Defendants and the Wachtel Defendants appeared as counsel for Orly Genger, the derivative plaintiff. And therefore, they directly represented the interests of the Orly Trust (the real party in interest) and fully acknowledged their legal duty to faithfully represent the Orly Trust's interests with an undivided loyalty.

23.     When Defendants in the 2010 Action moved to dismiss Orly's derivative claims for lack of standing, the Wachtel Defendants and the Zeichner Defendants filed an opposition memorandum of law on November 22, 2011, arguing that "'as the beneficiary of the … Trust,

[Orly] has a right to assert causes of action on behalf of the trust,'" quoting from an earlier

holding in the 2009 Action affirming the same.

24.     Thereafter, at a motion hearing on March 13, 2012, Orly's counsel (Defendant

Yoav Griver) again argued that Orly had the right to pursue derivative claims on behalf of the

Orly Trust:

> So there's no question that the Orly Trust is represented.
> The caption of the case says that Orly is representing both
> herself and the Orly Trust. The Orly Trust interests are
> represented here. If the Court agrees with me, it's being
> represented by me. If the Court agrees with [the Trustee's
> counsel] Mr. Meister -- I don't think that will happen -- but
> if it does, it's being represented by Mr. Meister and [the
> Trustee]. Everyone here, every trustee, every beneficiary is
> right before the court.

25.     Mr. Griver later reassured the court that the lawsuit was indeed for the benefit of

the Orly Trust, and if the court disagreed, then it could only be because it was not "paying

attention":

> As far as the fact that Orly is trying to steal from the trust, if
> your Honor credits that, then honestly it has not [been]
> paying attention to the last two years of litigation.  But I will
> draw the Court's attention to footnote 7 of page 10 of Orly
> Genger's second reply memorandum in further support of
> her motion to enjoin defendants Dalia Genger, the Trump
> Group and TPR Investments from prosecuting the
> duplicative Delaware chancery action, where *Orly explains that
> Orly seeks the reformation of the stipulation of settlement, which would
> result in the Orly Trust continuing to have the same beneficial interest in
> its TRI shares that it was intended to have as a result of Arie and
> Dalia's divorce.*

> (emphasis added).

26.     The foregoing representations by Mr. Griver at oral argument were not spoken

in haste; they were repeated in Mr. Griver's subsequent brief.  In a Memorandum of Law filed

on February 26, 2013, Defendants re-affirmed that: "As the caption in this case clearly states

[referring to Orly being listed in the caption as plaintiff both in her individual capacity and 'on behalf of the ORLY GENGER 1993 Trust'], the Orly Trust remains a party to this case. Moreover, this Court has already ruled that Orly has the right to prosecute actions on behalf of the Orly Trust."

27.     Indeed, on January 3, 2013, the state court granted in part and denied in part the Trump Group's motion to dismiss the derivative claims brought against it by Orly on behalf of the Orly Trust.  In particular, the court adopted Orly's position that Orly "has legal standing to represent the Orly Trust, per the holding of the previously assigned justice."

### *The derivative claims were resolved in the 2013 Settlement.*

28.     In February 2013, a few months before execution of the 2013 Settlement Agreement, the Delaware Chancery Court ruled that Arie had no claim to ownership of any TRI shares.  In the same ruling, the Delaware Chancery Court indicated that there would be a contempt proceeding held against Arie for continuing to maintain the aforementioned action in New York relating to TRI, in violation of the Delaware Court's Order.

29.     Then, in June 2013, the parties entered into a secret settlement agreement to finally resolve the litigation in various courts with respect to the Trump Group's ownership of the Orly Trust shares.  (The agreement was hidden from the then-Trustee of the Orly Trust, Dalia Genger (the "Trustee") – the real party in interest – and it was not until October 2014 that the actual agreement was provided to counsel for the Trustee of the Orly Trust.)

30.     According to its signatories, the purpose of the settlement agreement was "to resolve all issues, disputes and disagreements between [Orly Genger and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares."

31.     Consistent with the nature of the claims in the 2010 action (Arie individually and Orly derivatively), the 2013 Settlement made clear that, by its terms, the Trump Group would obtain free and clear title to the Arie shares and the Orly Trust Shares, *i.e.*, the disputed TRI shares in which the Orly Trust claimed an ownership interest, and in which Orly in her personal capacity did not.

32.     Consequently, one of the settlement terms was that Orly, Arie, Arnold Broser, and David Broser – defined therein, collectively, as the "AG Group" – would take all actions necessary to obtain a judicial declaration that the members of the Trump Group "own all right, title and interest to the shares of [TRI] … purportedly transferred by TPR in October 2004 to … [the] Trust."

33.     Although Orly also purported to waive any *individual* claim to ownership of TRI shares in the 2013 Settlement, that waiver was, at most, a mere formality, because Orly never had any individual interest in any TRI shares.  To the contrary, in the 2010 Action, Orly, suing in her derivative capacity as the trust beneficiary, expressly alleged that the shares at issue were "Orly Trust Shares."

34.     The 2013 Settlement Agreement provided, in relevant part, that the Trump Group would pay Wachtel, as counsel to the AG Group, $32.3 million (comprised of $17.3 million in cash and two promissory notes of $7.5 million each) – to serve solely as escrow agent. The Wachtel Defendants were never beneficiaries of the funds.

35.     The Agreement, however, made no mention as to how the $32.3 million was to be distributed by counsel.  Numerous attempts by the Trustee of the Orly Trust to obtain this information – or even to be shown a copy of the 2013 Settlement Agreement – were rebuffed by the Zeichner and Wachtel Defendants.

36.     The only material consideration that the Trump Group in fact received for the foregoing settlement payment was the release of the derivative claims by Orly with respect to the Orly Trust Shares.

37.     Accordingly, on June 18, 2013, Arie's counsel wrote to the state court: "Enclosed please find a Stipulation of Discontinuance with Prejudice….  Please be advised that Plaintiffs/Counterclaim Defendants Arie Genger and Orly Genger, in her individual capacity *and on behalf of the Orly Genger 1993 Trust*; Third-Party Defendants Arnold Broser, David Broser and [their entities]; and Defendants/Counterclaimants/Third-Party Plaintiffs [the Trump Group], and Trans-Resources, Inc. have entered into a confidential settlement agreement to resolve all issues among the stipulating parties" (emphasis added).

38.     As indicated in the letter, on the enclosed stipulation of dismissal, Yoav Griver signed for Orly Genger, "in her individual capacity and on behalf of the Orly Genger 1993 Trust".

39.     After further submissions to the Court (including a proposal by counsel to the remainderman beneficiary, the Sagi Trust, to carve out from the dismissal and preserve any derivative claims), on June 28, 2013, the Trump Group (represented by Skadden Arps) submitted a joint letter to the state court collectively rejecting that proposal:

> I write on behalf of the parties to the settlement agreement that was submitted in camera to Your Honor yesterday, including Arie and Orly Genger and my clients, the Trump Group. A material term of the agreement among the settling parties was the dismissal of **all** claims presently pending against one another, in whatever capacity they were brought. Certain of Orly Genger's claims against the Trump Group in this action have been held by Justice Feinman to be derivative in nature, brought by Orly on behalf of the Orly Genger 1993 Trust.
>
> …

The language that was drafted during yesterday's conference call as a potential "fix" for the issues raised by [counsel for the Sagi Trust] – that "nothing contained [in the Order] shall in any way affect any derivative claims presently before the Court" - - would have the effect of **_not_** dismissing Orly Genger's derivative claims against the Trump Group, contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group bargained and paid for in the settlement, and as a consequence we cannot stipulate to the entry of an order that includes such carve-out language.

(emphasis in the original).

40.     Accordingly, a Second Amended Stipulation of Discontinuance with Prejudice was filed on June 26, 2013.  This stipulation was amended to indicate that it was between Orly Genger "in her individual capacity and as beneficiary of the Orly Genger 1993 Trust."  The "as beneficiary of" language matched the earlier submissions of the Wachtel and Zeichner Defendants stating that Orly had the right to assert derivative claims because: "as the beneficiary of the … Trust, [Orly] has a right to assert causes of action on behalf of the trust."  (Nov. 22, 2011 memorandum of law.)  The Second Amended Stipulation of Discontinuance, like those before it, made no mention of the disposition of the settlement proceeds or even that consideration was given at all.

41.     The state court so-ordered the Second Amended Stipulation of Discontinuance with Prejudice on July 1, 2013.  Notwithstanding the foregoing, the Trustee of the Orly Trust moved to intervene into the case, asserting that the derivative claims against the Trump Group had not been dismissed and therefore she should be allowed to intervene into the case to continue to prosecute them.  The state court disagreed.  On November 25, 2014, the state court entered a subsequent order, confirming that the July 1, 2013 so-ordering of the Second Amended Stipulation had indeed dismissed all of the claims against the Trump Group, including the derivative ones brought by Orly on behalf of the Orly Trust.  *See* Order dated Nov. 25, 2014,

filed as 2010 Action dkt. 1153 ("pursuant to a stipulation So-Ordered by the Court on July 1, 2013, all of Plaintiffs' remaining claims against the Trump Group were discontinued with prejudice").

42.     The Trustee appealed the November 25, 2014 denial of her motion to intervene to the Appellate Division. The Appellate Division ruled against the Trustee, and affirmed the denial, holding once again that intervention was moot because all of the derivative claims had been already dismissed by the prior state court orders filed on January 3, 2013 and July 1, 2013. *See Genger v. Genger*, 144 A.D.3d 581, 581 (1st Dep't 2016) ("[the November 2014] order did not dismiss any claims; rather, it recognized that all claims had previously been dismissed or discontinued by prior court orders ….").

43.     What the state courts *never* decided was who should ultimately receive the proceeds from the derivative settlement—a matter which, as noted above, even the 2013 Settlement Agreement itself curiously does not address.[2]

44.     However the signatories to the 2013 Settlement Agreement chose to dispose of the settlement proceeds, there is one thing that is absolutely clear: there can be no question that the settlement proceeds represent the monetization of the claims brought by Orly on behalf of the Orly Trust.  (At the very least, they were resolving in substantial part – if not entirely – the

---

[2] As a consequence of the 2013 Settlement Agreement, the validity of the derivative claims against the Trump Group were never finally adjudicated.  Rather, as Judge Forrest later found, the fact that Orly was able to monetize a mere "*claim* to beneficial ownership of the TRI shares … provides further evidence that the Orly Trust had a legitimate claim to beneficial ownership of the TRI shares."  *Genger v. Genger*, 76 F. Supp. 3d 488, 500 n.22 (S.D.N.Y. 2015) (Forrest, J.) (emphasis added), *aff'd*, 663 F. App'x 44 (2d Cir. 2016).

The Trustee of the Orly Trust sought to have the settlement proceeds deposited with the state court so that the court could decide the prior disposition of any settlement proceeds, but the state court ultimately declined to take on the issue, on February 19, 2019 denying the Trustee's motion as "moot" because all of the underlying claims of the 2010 Action had all been dismissed.

monetization of the Orly Trust claims.)  As Judge Forrest of this Court found in her January 5, 2015 Opinion & Order in *Genger v. Genger*, and then reaffirmed in her July 27, 2018, Opinion & Order—both of which were subsequently unanimously affirmed by the Second Circuit Court of Appeals—Orly, by entering into the 2013 Settlement, "monetized her beneficial interest in the Orly Trust shares for $32.3 million …."[3]

### *The 2013 Settlement was an improper, collusive payment for the derivative claims.*

45.    It is hornbook law that the proceeds of the settlement between a derivative plaintiff and the defendant must go to the real party in interest.

46.    Yet here, Defendants knowingly facilitated a secret, collusive arrangement whereby their client, the derivative plaintiff,  improperly diverted the settlement proceeds *away* from the real party in interest.

47.    Although Defendants had repeatedly reassured the court that they were representing the interests of the Orly Trust, and that any benefit would accrue thereto, when the $32.3 million settlement materialized, they cut out the real party in interest.

48.    Defendants knew that the Orly Trust was essentially insolvent and owed monies to creditors.  And Defendants knew that by cutting out the Orly Trust – the real party in interest – from the settlement, they would frustrate those creditors, as well as other beneficiaries for whom money would have been left over.  Defendants clearly knew of the Orly Trust's debts

---

[3] *See also* May 15, 2014 Opinion & Order of Judge Keenan in a related suit, *TPR Investment Associates, Inc. v. Pedowitz & Meister*, No. 13 Civ. 8243 (referencing the 2013 settlement in recognizing that, "Orly and the Trump Group have settled their claims against each other. Pursuant to that settlement, Orly acknowledged that the Trump Group is the record and beneficial owner of the Orly Trust Shares.  …  At long last, the dispute regarding ownership of the Orly Trust Shares is over.").

because they were simultaneously prosecuting the 2009 Action in which Orly sought, *inter alia*, to invalidate those debts. Thus, Defendants' scheme sought to achieve, through a secret, collusive arrangement, relief the courts would not grant them in litigation.

49. The fact that Orly Genger purported to also sign the settlement agreement individually merely reinforces that Defendants knew the settlement agreement was collusive because there are no circumstances in which the 2010 Action defendants would have paid $32 million to Orly Genger individually when she had no real individual claims. As any attorney would understand, settlements, like this one, that pay off the derivative plaintiff, without returning value to the real party in interest, are patently improper.

### Defendants wrongfully received assets of the Orly Trust.

50. As noted above, the 2013 Settlement Agreement required the Trump Group to pay $17.3 million to the IOLA account of the Wachtel Defendants, to be held "<u>as attorneys for the AG Group</u>" (which includes, as defined in the 2013 Settlement, Orly Genger, Arie Genger, and Arnold and David Broser, and the Browsers' affiliated entities).

51. The text of the agreement is important. During the litigation, the Wachtel Defendants asserted that they represented Orly Genger and, derivatively, the Orly Genger Trust. But by the time the money arrived, the Wachtel Defendants were now also (or, *only*) representing the interests of their long-time friends and business associates: Arie Genger and the Brosers. This was patently improper and goes to the heart of the Defendants' scheme.

52. The Wachtel Defendants acted as escrow agent for the settlement agreement proceeds. As such, they were duty bound as IOLA escrow agents to hold those proceeds for the Orly Trust – the real party in interest. Yet they instead accepted direction from their friends

Arie Genger and/or Arnold and David Broser (parties for whom they had never entered an appearance as counsel of record) to release the funds for their respective benefits.

53.     Indeed, although the Wachtel Defendants, as counsel of record for the derivative plaintiff, had a legal duty to represent the interests of the Orly Trust – as the real party in interest – the Wachtel Defendants engaged in a deceptive sleight-of-hand. While the Wachtel Defendants claimed they were representing the interests of the Orly Trust, they were in fact principally representing the interests of Arie Genger, David Broser, and Arnold Broser.  Arie Genger and the Brosers each happened to be Wachtel's friends and/or business associates.  And the Wachtel Defendants represented their friends' interests to the exclusion of the interests of the Orly Trust—the real party in interest.  (Their relationship runs all the way through the families, as Defendant William Wachtel's son now works for Arie Genger and David Broser.)

54.     The Zeichner Defendants were fully aware of this arrangement but lodged no objection, apparently because they knew they were to be paid substantial sums of money, upon the release of the funds wrongfully diverted to entities controlled by Arie and the Brosers.

### *Payment and dismissal*

55.     Following the signing of the 2013 Settlement, the Trump Group made the first $17.3 million payment thereunder by wiring it to the IOLA account of the Wachtel Defendants.[4]

56.     Upon information and belief, the Wachtel Defendants then immediately transferred the funds outside the Orly Trust and instead to a series of entities controlled by the

_____

[4] To get to $32.3 million in total consideration, the 2013 Settlement Agreement has a second component: two promissory notes, each in the amount of $7.5 million, to be paid upon the happening of various events, some of which have not yet occurred.  To date, upon information and belief, no payment has been made for any amount under either promissory note.  Rather, the two promissory notes are currently held by Michael Bowen, as successor escrow agent under the 2013 Settlement (in place of William Wachtel, the agent named in the Agreement).

Brosers. Specifically, upon information and belief, the Wachtel Defendants immediately wired out all of the settlement funds, sending it through various intermediaries, with $16.8 million of those funds ending up with Tedco, Inc. ("Tedco"), an entity controlled by the Broser family, and with the final $1 million ending up with AGA, LLC ("AGA"), an entity controlled by Arie Genger.

57.     As a consequence of this scheme, Arie Genger and the Brosers were able to make off with essentially all of the Orly Trust's funds. Defendants stood to profit from this scheme, as the Zeichner Defendants were apparently promised to be (and later were paid) from the settlement proceeds. And the Wachtel Defendants were under a contingent fee arrangement for the proceeds.

58.     Meanwhile, the 2013 Settlement Agreement also required the parties to "cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties, including, without limitation, any claims pending in the [Delaware] Orly Trust Action." In other words, the signatories – facilitated by Defendants – took the Orly Trust's money and then agreed to work to try to ensure that the Orly Trust's claims would be extinguished.[5]

---

[5] In 2011, the Trustee of the Orly Trust had brought a declaratory judgment action in Delaware seeking to validate the Trust's ownership of the TRI shares—a suit Orly then successfully had enjoined as "duplicative" of her earlier-filed derivative claims in the 2010 Action. *See Dalia Genger v. TR Investors, LLC*, Case No. 6906-CS (Del. Ch. Ct.). After the 2013 Settlement Agreement had been entered into, the Wachtel Defendants lobbied the Delaware court and the Orly Trust's Trustee, on Orly's behalf, to discontinue her declaratory judgment claim against the Trump Group, on the ground that the ownership issue had been conclusively resolved in New York by virtue of the 2013 Settlement Agreement. *See* August 12, 2013 Letter from William Wachtel to Chancellor Strone ("We wish to confirm to your Honor that Orly has indeed settled all disputes between her and the Trump Group. As part of that settlement, Orly has acknowledged individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust."). In reliance thereon, the Orly Trust's Trustee ultimately agreed to do so, but specifically carved out the right to maintain "claim[s] for monetary damages".

59.     Then, after the initial diversion of the $17.3 million in 2013, Defendants further facilitated the foregoing scheme by actively concealing the existence of documents and information which would have revealed the fund diversion.

60.     In the 2009 Action, during a time at which the Orly Trust was still represented by both the Zeichner and the Wachtel Defendants, a trial subpoena was served on David Broser. That subpoena sought testimony and documents about all payments made relating to the 2013 Settlement Agreement.  Broser successfully quashed the trial subpoena by representing, under oath, that: "I have no documents called for in the Schedule attached to the subpoena."

61.     Broser's representation was false and Defendants knew it was false.  Yet it was concealed from the Orly Trust and its Trustee, who were parties to the litigation.

62.     As a consequence of these and other acts of concealment, the Trustee of the Orly Trust did not learn of the diversion of the funds to Tedco and AGA (Arie Genger's entity) until 2019.  Upon learning what had happened, the Trustee of the Orly Trust promptly made demand for the return of those funds, prior to commencing this action.  To date, that demand has gone unanswered.

63.     The foregoing conduct by Defendants damaged and frustrated the Orly Trust, leaving it unable to pay its creditors or to provide for the future generations -- which was clearly the intent of the Orly Trust (as evidenced by the Trust instrument).

### FIRST CAUSE OF ACTION – ALL DEFENDANTS
(Constructive Fraud)

64.     Plaintiff incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

65.     The relationship between the Orly Trust – the real party in interest in the derivative litigation – created a fiduciary duty to disclose on the attorneys for Orly Genger (the derivative plaintiff).

66.     As described above, Defendants engaged in fraudulent misconduct involving multiple affirmative false representations and omissions that they were advancing Trust interests. Defendants deceived the courts, the Orly Trust, and others into believing that they were representing the interests of the Orly Trust when their true (but omitted) intention was to assist Orly Genger, Arie Genger, and the Brosers in diverting and misappropriating funds belonging to the Orly Trust.

67.     Indeed, from 2009, the Zeichner Defendants—joined in 2011 by the Wachtel Defendants—made numerous representations, both written and oral, both in and out of court, both to the Trustee and to third parties, that they were acting in the interests of the Orly Trust. For example (in addition to the other examples cited elsewhere in this Complaint): (a) in a letter dated July 2, 2009, the Zeichner Defendants made demands to TPR Investment Associates, Inc. "on behalf of … the Orly Trust" while "reserv[ing] … the rights of the Orly Trust"; and (b) in a stipulation dated June 19, 2013, the Zeichner Defendants executed a stipulation implementing the 2013 Settlement Agreement "on behalf of the Orly Genger 1993 Trust".

68.     Moreover, following the execution of the June 2013 Settlement Agreement, by email dated August 21, 2013, the Wachtel Defendants represented that they were acting in the interests of the Orly Trust and that it was, therefore, in the Orly Trust's interest to discontinue the allegedly duplicative declaratory judgment action brought in Delaware seeking a determination that the Orly Trust owned the TRI shares.

69.     These are just a few representative examples of an unbroken pattern of such representations.  Moreover, all these representations were on top of Defendants' appearances in court expressly "on behalf of" the Orly Trust in both the 2009 and 2010 Actions.

70.     The Orly Trust relied on those misrepresentations to its detriment by, among other things, (a) not appealing the restraining order preventing it from prosecuting its claims in Delaware, (b) not acting to secure the money paid for releases made on its behalf before the money was converted, and (c) agreeing to voluntarily discontinue the Delaware action with respect to ownership.  (Although, in an abundance of caution, she carved out the right to prosecute money damages claims in New York

71.     In fact, Defendant William Wachtel was a longtime friend and business associate of Arie Genger and the Brosers.  It was not until the secret June 2013 settlement agreement was finally revealed in October 2014 that the truth was uncovered:  Defendants Wachtel and the Wachtel Firm were acting as attorneys for the entire "AG Group," which included Arie Genger and the Brosers.

72.     And when the money arrived, the Defendants did not disclose the details of the settlement agreement to the real party in interest, and did not inform the real party in interest of the significant sums being paid to resolve the claims.

73.     All of these omissions and misrepresentations were material.

74.     As a result, Arie Genger and the Brosers were able to make off with the Orly Trust's funds and the Orly Trust was damaged as a consequence.

75.     The Orly Trust – and the Plaintiff as the assignee of the Trust – suffered injury as a result of Defendants' fraudulent conduct in an amount to be determined at trial but presently believed to be no less than $32 million.

76.     Defendants' actions were wanton, willful, and malicious, and thus the Orly Trust and the Plaintiff are also entitled to an award of punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION – ALL DEFENDANTS
(Malpractice)

77.     Plaintiff incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

78.     Although the Orly Trust did not hire the Defendants as counsel, and accordingly there is no traditional attorney-client "privity", this malpractice action arises from Defendants' fraudulent conduct and the resulting harm to the Orly Trust – the real party in interest in their litigation – and the Plaintiff as assignee of the Trust.  Accordingly, there is derivative privity between the Defendants and the Orly Trust, as the real party in interest.

79.     The Defendants failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by an ordinary member of the legal community.

80.     That negligence was the proximate cause of the actual damages sustained by the Orly Trust.

81.     The Zeichner Defendants had a duty to represent the interests of the Orly Trust as the real party in interest in the 2010 Action.

82.     The Wachtel Defendants had a duty to represent the interests of the Orly Trust as the real party in interest in the 2010 Action.

83.     But for the Defendants' negligence, the Orly Trust would not have had its property converted.

84.     The Orly Trust – and the Plaintiff as assignee – suffered injury as a result of Defendants' fraudulent conduct in an amount to be determined at trial but presently believed to be no less than $32 million.

85.     Defendants' actions were wanton, willful, and malicious, and thus the Orly Trust and the Plaintiff are also entitled to an award of punitive damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION – ALL DEFENDANTS
(Breach of Fiduciary Duty)

86.     Plaintiff incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

87.     The Defendants owed fiduciary duties to the Orly Trust as the real party in interest in the 2010 Action.

88.     But, as described above, Defendants engaged in fraudulent misconduct which caused the Orly Trust to be injured and damaged.

89.     Specifically, knowing their duties to the real party in interest, the derivative attorneys nonetheless aided a fraudulent scheme to enter into a secret settlement agreement.

90.     Then, as part of that secret June 2013 settlement agreement, the defendants aided the fraudulent scheme to steal the settlement funds and divert them to Arie Genger and Arnold and David Broser – parties who were not their clients, let alone the real party in interest.

91.     The Orly Trust – and the Plaintiff as its assignee – suffered injury as a result of Defendants' fraudulent conduct in an amount to be determined at trial but presently believed to be no less than $32 million.

92.     Defendants' actions were wanton, willful, and malicious, and thus the Orly Trust and the Plaintiff are also entitled to an award of punitive damages in an amount to be determined at trial.

### **FOURTH CAUSE OF ACTION – THE WACHTEL DEFENDANTS**
(Breach of Fiduciary Duty)

93.     Plaintiff incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

94.     The Wachtel Defendants, who took payment of the $17.3 million in their IOLA account, purportedly held "as attorneys for the AG Group" (i.e., Orly Genger, Arie Genger, Arnold and David Broser, and Tedco), owed a fiduciary duty (as the escrow agent) to the Orly Trust – the real party in interest.

95.     Instead of acting in accordance with their duties as an escrow agent to the real party in interest, the Wachtel Defendants aided a fraudulent scheme to steal the June 2013 settlement funds from their client escrow account and divert them to Arie Genger and Arnold and David Broser – parties who were not their clients, let alone the real party in interest in the derivative litigation.

96.     The Orly Trust – and the Plaintiff as its assignee – suffered injury as a result of Defendants' fraudulent conduct in an amount to be determined at trial but presently believed to be no less than $32 million.

97.     Defendants' actions were wanton, willful, and malicious, and thus the Orly Trust and the Plaintiff are also entitled to an award of punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION – ALL DEFENDANTS
### (Aiding and Abetting Breach of Fiduciary Duty)

98.     Plaintiff incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

99.     Orly Genger, both as a beneficiary of the Orly Trust and as the derivative plaintiff, owed fiduciary duties to the Orly Trust – the real party in interest in the derivative litigation – and breached them by engaging in and facilitating the fraud alleged above.  As a result, Arie Genger and the Brosers were able to make off with the Orly Trust's funds and the Orly Trust was damaged as a consequence.

100.    As described above, Defendants knowingly induced and participated in Orly Genger's fraudulent breach of fiduciary duties, as well as each other's fiduciary duties.

101.    The Orly Trust – and the Plaintiff as its assignee – suffered injury as a result of Defendants' fraudulent conduct in an amount to be determined at trial but presently believed to be no less than $32 million.

102.    Defendants' actions were wanton, willful, and malicious, and thus the Orly Trust and the Plaintiff are also entitled to an award of punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION – ALL DEFENDANTS
### (Aiding and Abetting Conversion)

103.    Plaintiff incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

104.    As described above, Tedco and AGA fraudulently converted assets of the Orly Trust.

105. As described above, Defendants aided and abetted the fraudulent conversion of Trust assets when they entered into a collusive settlement of Orly's derivative claims in the 2010 Action.

106. Although the Defendants purported to serve as the attorneys for Orly Genger, as the derivative plaintiff, when the 2013 Settlement agreement was finally exposed, it revealed that the Wachtel Defendants were serving "as attorneys for the AG Group."  Indeed, as evidenced both by the text of the agreement and the circumstances, the Wachtel Defendants were formally appearing for Orly Genger, but actually acting for their longtime friends and business associates, Arie Genger, Arnold Broser, and David Broser.

107.  Defendants aided and abetted those longtime friends and business associates in converting and making off with the Orly Trust's assets.

108. The Orly Trust – and the Plaintiff as its assignee –suffered injury as a result of Defendants' fraudulent conduct in an amount to be determined at trial but presently believed to be no less than $32 million.

109. Defendants' actions were wanton, willful, and malicious, and thus the Orly Trust and the Plaintiff are also entitled to an award of punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION – ALL DEFENDANTS
### (Breach of Contract – Intended Third-Party Beneficiary)

110. Plaintiff incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

111. The Zeichner Defendants, on the one hand, and Orly Genger, on the other hand, are parties to agreement for the provision of legal services (the "Zeichner Retainer Agreement").

112.     On information and belief, the Zeichner Retainer Agreement provides for the Zeichner Defendants' representation of Orly Genger in bringing derivative claims on behalf of the Orly Trust.  The Orly Trust was the intended third-party beneficiary of the Zeichner Retainer Agreement.

113.     The Wachtel Defendants, on the one hand, and Orly Genger, on the other hand, are parties to agreement for the provision of legal services (the "Wachtel Retainer Agreement").

114.     On information and belief, the Wachtel Retainer Agreement provides for the Wachtel Defendants' representation of Orly Genger in bringing derivative claims on behalf of the Orly Trust.  The Orly Trust was the intended third-party beneficiary of the Wachtel Retainer Agreement.

115.     The Zeichner Defendants breached the Zeichner Retainer Agreement by denying the benefit of that agreement – the proceeds from the 2013 Settlement Agreement – to the Orly Trust.

116.     The Wachtel Defendants breached the Wachtel Retainer Agreement by denying the benefit of that agreement – the proceeds from the 2013 Settlement Agreement – to the Orly Trust.

117.     Both of the foregoing breaches were material.

118.     The Orly Trust – and the Plaintiff as its assignee – were injured by both of the foregoing breaches.

119.     The Orly Trust – and the Plaintiff as its assignee – are entitled to an award of damages against Defendants in an amount to be determined at trial.

WHEREFORE, plaintiff demands, against Defendants, on all causes of action, damages in an amount to be determined at trial, which are believed to be the value of the Orly Trust

claims, the $32 million settlement amount, plus interest and other fees and charges, attorneys'
fees in this action and the 2009 Action and 2010 Action, and an award of punitive damages in an
amount to be determined at trial.

Dated: February 20, 2020
      New York, New York

                           POLLOCK COHEN LLP

                           By: _/s/ *Adam Pollock*_____

                                Adam Pollock
                                Steve Cohen
                         60 Broad Street, 24th Floor
                         New York, NY 10004
                         (212) 337-5361
                         Adam@PollockCohen.com
                         *Attorneys for Plaintiff*