SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

ARIE GENGER and ORLY GENGER, in her
individual capacity and on behalf of the ORLY
GENGER 1993 TRUST

             Plaintiffs,

      v.

SAGI GENGER, and TPR INVESTMENT
ASSOCIATES, INC.Defendants.

INDEX NO.

**SUMMONS**

Designated county of trial:
New York

The basis of the venue designated is:
The defendants' county of residence

**TO THE ABOVE NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and

to serve a copy of your answer on the plaintiff's attorney within twenty (20) days after the

service of this summons, exclusive of the day of service (or within thirty (30) days after service

is complete if this summons is not personally delivered to you within the State of New York);

and in case of your failure to appear or answer, judgment will be taken against you by default for

the relief demanded in the complaint.

DATED: New York, New York
        July 20, 2010

MITCHELL SILBERBERG & KNUPP LLP

By: _Lauren J. Wachtler_
    Lauren J. Wachtler
    12 East 49th Street, 30th Floor
    New York, New York 10017-1028
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239

    Attorneys for Plaintiffs

2786854.1

TO:    Sagi Genger
        1211 Park Avenue
        New York, NY  10128

        TPR Investment Associates, Inc.
        1211 Park Avenue
        New York, NY  10128

2786854.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of the ORLY GENGER 1993 TRUST, | INDEX NO. |
| Plaintiffs, | **VERIFIED COMPLAINT** |
| v. | |
| SAGI GENGER and TPR INVESTMENT ASSOCIATES, INC., | |
| Defendants. | |

Plaintiffs Arie Genger and Orly Genger, in her individual capacity and on behalf of the Orly Genger 1993 Trust, by their attorneys, Mitchell Silberberg & Knupp LLP, for their Verified Complaint against the defendants in this action allege as follows:

## THE PARTIES

1.      Plaintiff Arie Genger is a resident of the State of Florida, and the father of Orly Genger ("Orly") who is an adult beneficiary of the Orly Genger 1993 Trust (the "Orly Trust").

2.      Plaintiff Orly Genger is the adult daughter of Arie Genger and Dalia Genger ("Dalia"), the beneficiary of the Orly Trust, and a resident of the State of New York.  She brings this action on behalf of the Orly Trust as the beneficiary of the Orly Trust to protect her interests thereunder.

3.      Defendant Sagi Genger ("Sagi") is the son of plaintiff Arie Genger, and maintains an office at 1211 Park Avenue, New York, NY 10128.

4.      On information and belief, Sagi is the Chief Executive Officer of defendant TPR Investment Associates, Inc. ("TPR") and a member of TPR's Board of Directors.

5.      Defendant TPR Investment Associates, Inc. ("TPR") is a Delaware Corporation with a principal office located at 1211 Park Avenue, New York, NY 10128.

## NATURE OF THE CASE

6.      In this case, the Plaintiffs Arie Genger and Orly Genger are seeking a judicial declaration and permanent injunction declaring once and for all that the Defendants Sagi Genger and TPR have no right to sell, transfer, hypothecate or otherwise dispose of or control the ownership or management of the following shares in Trans-Resources, Inc. ("TRI"), a company founded by the Plaintiff Arie Genger more than 25 years ago, and that the defendants be permanently enjoined from doing so:

(i) 794.40 shares of common stock in Trans-Resources, Inc. ("TRI"), which represents approximately 14% of the issued and outstanding shares of TRI (the "Arie Genger Shares"), and

(ii) 1,102.80 shares of common stock in TRI, which represents approximately 19.425% of the issued and outstanding shares of TRI (the "Orly Trust Shares").

7.      It is incontrovertible that these shares were acquired by Plaintiffs Arie Genger and the Orly Trust from TPR pursuant to the express terms of a letter agreement dated October 29, 2004 (the "2004 TPR Letter Agreement", attached hereto as Exhibit A), which specifically provides as follows:

"This letter will set forth our agreement pursuant to which you will purchase the 3,000 shares of common stock ("the Shares") of Trans-Resources, Inc. ("TRI") owned by TPR

2

Investment Associates, Inc. ("TPR").  TPR hereby sells, transfers and conveys the Shares to you as follows:

(i)      794.40 shares to Arie Genger;

(ii)     1,102.80 Shares to the Sagi Genger 1993 Trust, and

(iii)    1,102.80 Shares to the Orly Genger 1993 Trust.

*  *  *

"The Shares represent 52.85% of the issued and outstanding shares of TRI.  The Shares are being transferred hereunder free and clear of any liens, claims or encumbrances and such transfer does not violate the Certificate of Incorporation of TPR or any agreement to which TPR is subject.

"The trustees of the Sagi Genger 1993 Trust and of the Orly Genger 1993 Trust ("Trusts") have agreed to execute on behalf of the Trusts (i) an Irrevocable Proxy to appoint Arie Genger to vote the Shares owned by the Trusts and (ii) a voting trust letter agreement, copies of which are annexed hereto."

"In case, at any time hereinafter, any further action is necessary or desirable to carry out the purposes of this Letter Agreement, each of the parties hereto shall take or cause to be taken all necessary action, including, without limitation, the execution and delivery of such further instruments and documents which may be reasonably requested by any party for such purpose or otherwise to complete or perfect the transactions contemplated hereby."

8.      This 2004 TPR Letter Agreement was executed by the Defendant Sagi Genger, as President of the Defendant TPR, as the transferor, and Plaintiff Arie Genger and the Trustees of the Orly and Genger Trusts, as the transferees.

9.      This 2004 TPR Letter Agreement implemented the express terms of a 2004 Court-Ordered Stipulation of Settlement ("Stipulation of Settlement", attached hereto as Exhibit B) entered in a divorce proceeding venued in the Supreme Court, New York County, entitled *Dalia Genger v. Arie Genger*, Index No. 30426-2002 ("Genger Divorce Action").

3

10.     The Stipulation of Settlement specifically set forth the terms and conditions for the simultaneous distribution of shares of TPR and TRI, both of which are privately held companies founded by the Plaintiff Arie Genger more than 25 years ago, as follows:

    i.     Arie Genger relinquished his 51% ownership interest in the TPR marital asset, which owned a 52.85% majority interest in TRI,

    ii.     Arie Genger received direct ownership of **794.40** shares of TRI common stock, representing approximately **14%** of the issued and outstanding common shares of TRI, and

    iii.     the Sagi Trust and Orly Trust, trusts for the benefit of Arie Genger's two adult children, received 1,102.80 shares of TRI representing approximately 19.425% of TRI stock <u>subject to Irrevocable Proxies and a Voting Trust Agreement to ensure that Arie Genger would control a majority shareholder voting interest in TRI for the duration of his life in accordance with the express language and articulated intention of the parties under the Stipulation of Settlement.</u>

(Stipulation of Settlement, Art. II, ¶¶ 2(d) and 9(b), pp. 6, 12-14) (emphasis added).

11.     On July 23, 2010, the Chancery Court of the State of Delaware (the "Delaware Chancery Court"), in a case initiated by Glenclova Investment Co. ("Glenclova") and TR Investors, LLC ("TR Investors") (collectively, the "Trump Group"), who had become minority shareholders in TRI in 2001 (the "Delaware Action"), published a 48-page opinion as to whether the 2004 transfers violated the terms of a 2001 TRI Stockholders Agreement between TPR and the Trump Group ("Opinion", attached hereto as Exhibit C).

12.     The Opinion holds, *inter alia,* that TPR's sale of the Sagi Trust shares is void and that TPR, pursuant to a 2008 Stock Purchase Agreement between the Trump Group and TPR, executed by Sagi, was authorized to convey the Sagi Trust shares to the Trump Group for almost $27 million as part of an overall settlement of the dispute relating to the validity of the transfer of the Sagi Trust shares.

13.     At the same time, the Delaware Chancery Court recognized that Arie Genger, as a permitted transferee under a 2001 TRI Stockholders Agreement, dated March 30, 2001 (the "2001 TRI Stockholders Agreement", attached hereto as Exhibit D), would be entitled to vote his TRI shares from TPR in 2004, provided that he give written notice of the transfer to the Trump Group, and agree to be bound under the terms of the 2001 TRI Stockholders Agreement.

14.     The Delaware Chancery Court refused to require Arie Genger to forfeit the ownership of the Arie Genger shares, because such a remedy would be "disproportionate" to the notice violation.

15.     Accordingly, with respect to the Arie Genger Shares, the Court only held that TRI is entitled to deny Arie Genger the right to vote his shares until Arie Genger gives formal notice to the Trump Group and signs the 2001 TRI Stockholders Agreement, which he fully intends to do in any event.

16.     With respect to the Orly Trust Shares, the Court also refused to rule that the Orly Trust shares be forfeited.  Instead, the Court acknowledged that the Orly Trust was not a party to the Delaware Court Action, and refused to make any ruling as to those shares.

17.     Specifically, with respect to both the Arie Genger Shares and the Orly Trust Shares, the Court held that "the Trump Group . . . is not entitled to the shares transferred to Arie Genger personally or the Orly Trust." (Opinion, p. 40).

18.     The Court specifically opined as follows:

**"Although the 2004 transfers violated the terms of the Stockholders Agreement, . . . the Trump Group cannot purchase the shares transferred to Arie Genger or the Orly Trust . . . .  As to the transfer from TPR to Arie Genger himself, the major problem was lack of notice.  Under the Stockholders Agreement, Genger could receive shares from TPR so long as he:  (1) gave proper notice to the Trump Group entities; and (2) signed on to the Stockholders Agreement.  He did neither, and as a result, cannot exercise any rights under**

5

**the Stockholders Agreement.  Although the Trump Group believes that the Genger violation would require him to transfer all of his Trans-Resources shares to the Trump Group, that remedy is disproportionate . . . nevertheless, Trans-Resources appears entitled, in any event, to deny Genger the right to vote his shares until he gives formal notice and signs on to the Stockholders Agreement."** (Opinion, p. 42).

19.    While this Opinion should be sufficient to deter Sagi and TPR from interfering with the Arie Genger Shares and the Orly Trust Shares, Sagi has been waging an ongoing battle for years to cause the financial ruin of his father Arie Genger, from whom he is estranged, and his sister Orly Genger.

20.    In 2008, Dalia transferred the interest she had received in TPR to Sagi.  Sagi, through various machinations, has acquired for himself virtually all of TPR's outstanding stock (including stock improperly confiscated from the Orly Trust interests in TPR which is currently the subject of a separate litigation pending in the Supreme Court of the State of New York in an action entitled Orly Genger, in her individual capacity and on behalf of the Orly Genger 1993 Trust v. Dalia Genger, Sagi Genger, D&K Group LLC, and TPR Investment Associates, Index No. 109749/2009 ("the Orly action")).  The Court, in that action, which involved TRI shares owned by the Orly Trust, granted Orly Genger a preliminary injunction to prevent Sagi from looting her trust and selling her shares.

21.    Accordingly this action for a declaratory judgment and a permanent injunction seeks a final judicial determination that the defendants are permanently enjoined from interfering with the ownership or control of the Arie Genger Shares or the Orly Trust Shares.

818181.1

## FACTS RELEVANT TO ALL CLAIMS

*Background*

22.     The Plaintiff Arie Genger is the founder and former Chairman of TRI, a private corporation which, through its subsidiaries, is a leading distributor and manufacturer of agricultural fertilizer worldwide.

23.     In 2001, a 52.85% majority of TRI Stock (which was later transferred to Arie Genger, the Sagi Trust and the Orly Trusts pursuant to the Stipulation of Settlement) was owned by the defendant TPR, a Genger family holding company.  TPR was, in turn, controlled by Plaintiff Arie Genger who owned 51% of TPR.  Thus, at that time Arie Genger maintained majority control of TRI through his majority ownership and control of TPR.  The minority interest in TPR prior to the Stipulation of Settlement was owned by Plaintiff's wife Dalia, the Sagi Trust and the Orly Trust.

24.     In 2001, Glenclova and TR Investors, both of which are entities associated with the Trump Group, became minority shareholders of TRI, acquiring approximately 47.15% of TRI common stock.

25.     Upon the Trump Group becoming a minority shareholder of TRI, the Trump Group and TPR entered into the 2001 TRI Stockholders Agreement, which among other things, was intended to ensure that Arie Genger (through his controlling interest in TPR) would continue to control the management of TRI.

7

26.     The 2001 TRI Stockholders Agreement also contains provisions relating to TPR-Arie Genger's majority control of the management of TRI not being transferred to someone other than Arie Genger prior to his death, except under certain enumerated conditions, without the consent of the Trump Group as a significant minority shareholder during Arie Genger's life.

27.     In 2002, Dalia and Arie Genger became embroiled in a bitter divorce action.  In October of 2004, after years of litigation, Dalia and Arie Genger agreed to a Court-Ordered Stipulation of Settlement, which among other things equitably distributed between Arie and Dalia various marital assets, including their interests in TPR which then held 52.85% of TRI. Prior to the Stipulation of Settlement, Arie Genger owned 51% of the TPR stock. Dalia, Sagi and Orly, at that time, owned the remaining minority interests in TPR.

28.     The Stipulation of Settlement specifically provides that Arie Genger would, upon execution of the Stipulation of Settlement, relinquish his 51% interest in the TPR marital asset, which owned a 52.85 majority stock interest in TRI , on the following basis:

A.     Dalia would receive Arie's 51% majority interest in TPR which owned a 52.85% interest in TRI, and

B.     TPR would simultaneously divest itself of this 52.85% majority interest in TRI by transferring this 52.85% TRI Stock out of TPR on the following terms and conditions:

      i.     Arie Genger would receive 794.40 shares of TRI common stock representing 13.99468% of the common stock of TRI

      ii.     the Sagi Trust and Orly Trust, would each receive 1,102.80 shares (or 19.42766 % each) of TRI stock upon the express further condition that the Sagi Trust and the Orly Trust each simultaneously would execute and deliver to the Plaintiff an irrevocable voting  proxy for all of the TRI stock owned by the trusts, in order to ensure that the Plaintiff Arie Genger would

8

maintain voting power and control of the Genger Family TRI shares for the duration of his life.

   iii.      Accordingly, upon these simultaneous transactions, it was specifically intended that Arie Genger, for the duration of his life, would maintain 52.85% voting and management control over TRI, the company he founded two decades earlier.

29.     Dalia Genger and her lawyers were provided with a copy of the TRI Stockholder Agreement and the Stipulation of Settlement.

30.     Mr. Genger informed Jules Trump, a Trump Group appointed Director of TRI, about the TPR/TRI share transaction under the Stipulation of Settlement in late 2004. Jules Trump was not only aware of the Genger Divorce Proceeding, but even testified at a Genger Divorce Proceeding hearing.

31.     TRI was also completely aware of the terms of the TPR/TRI transaction, because TRI's counsel was intimately familiar with, and assisted in, drafting the terms of the Stipulation of Settlement and Transaction Documents identified and described in paragraph 33 below.

32.     Pursuant to the terms of the Stipulation of Settlement and the 2004 Transaction Documents it was the intent of Dalia, Arie, Sagi and Orly that Arie Genger would continue to maintain a majority voting interest in TRI for the duration of his life.

33.     To implement the key TPR-TRI share transfer provisions in the Stipulation of Settlement, Arie Genger, the Sagi Trust, the Orly Trust and TPR, simultaneously with the execution of the Stipulation of Settlement, entered into the following Transaction Documents: (i) TPR Letter Agreement, dated October 29, 2004, ("2004 TPR Letter Agreement" attached hereto as Exhibit A) (ii) the Voting Trust Letter Agreement, dated October 29, 2004 (the "2004 Voting

9

Trust Letter Agreement", attached hereto as Exhibit E); (iii) The Irrevocable Proxies received from the Orly Trust and the Sagi Trust, dated October 29, 2004 ("Irrevocable Proxies" attached hereto as Exhibit F), and (iv) Back-up Voting Trust Agreement ("Back up Voting Trust Agreement", attached here to Exhibit G), attached to the 2004 Voting Trust Letter Agreement. Each of these agreements confirmed the stated intention of the parties to the Stipulation of Settlement and Transaction Documents that Arie Genger, for the duration of his life, would continue to have voting control over 52.85% of the outstanding shares of TRI that were previously owned by TPR and controlled in turn by Arie Genger through his 51% ownership of TPR.

***The 2004 TPR Letter Agreement***

34.     The 2004 TPR Letter Agreement specifically provides that 794.40 shares of TRI are distributed to Arie Genger, and 1,102.80 shares are distributed in trust to each of the Sagi Trust and the Orly Trust, subject to an Irrevocable Proxy and Voting Trust Letter Agreement, both of which were attached to the 2004 TPR Letter Agreement.   Specifically, the 2004 TPR Letter Agreement provides in pertinent part as follows:

> "The Shares represent 52.85% of the issued and outstanding shares of TRI.  The Shares are being transferred hereunder free and clear of any liens, claims or encumbrances and such transfer does not violate the Certificate of Incorporation of TPR or any agreement to which TPR is subject.
>
> The trustees of the Sagi Genger 1993 Trust and of the Orly Genger 1993 Trust ("Trusts") have agreed to execute on behalf of the Trusts (i) an Irrevocable Proxy to appoint Arie Genger to vote the Shares owned by the Trusts and (ii) a voting trust letter agreement, copies of which are annexed hereto.
>
> In case, at any time hereinafter, any further action is necessary or desirable to carry out the purposes of this Letter Agreement, each of the parties hereto shall take or

10

818181.1

cause to be taken all necessary action, including, without limitation, the execution and delivery of such further instruments and documents as may be reasonably requested by any party for such purpose or otherwise to complete or perfect the transactions contemplated hereby.

This Letter Agreement shall be governed by the laws of the State of New York without regard to conflicts of law principles.

(Exhibit A, Emphasis Added)

### *The 2004 Irrevocable Proxies Executed By The Sagi And Orly Trusts*

35.     In accordance with the 2004 TPR Letter Agreement, the Sagi and Orly Trusts simultaneously executed two identical Irrevocable Proxies, each of which states, in relevant part, that:

> "[The Sagi Trust and Orly Trust, each respectively], ("the Trust") being the current record and beneficial owner of 1,102.80 shares of common stock of [TRI] does hereby constitute and appoint Arie Genger, Chairman of the Board, Chief Executive Officer, and owner of approximately fourteen percent (14%) of the shares of common stock of TRI to vote as its proxy, all shares of common stock of TRI which are now or hereafter owned by the Trust, at any and all meetings of the stockholders of TRI, regular or special, or by consent in lieu of meeting or any adjournments thereof in the same manner and to the same extent that the Trust might were the Trust present at said meeting (or executing such consent), upon any issue or proposal which may be brought before such meeting or by such consent.
>
> "This Irrevocable Proxy shall be deemed coupled with an interest and be irrevocable from the date hereof, and shall continue for the duration of Arie Genger's life."

Exhibit F (Emphasis added).

11

*The 2004 Voting Trust Letter Agreements*

36.     Also, simultaneously with the execution of the Stipulation of Settlement, and the 2004 TPR Letter Agreement, Arie Genger and the Sagi and Orly Trusts entered into identical 2004 Voting Trust Letter Agreements, which provide as follows:

> "In connection with the transfer to the [Sagi] trust of 1,102.80 shares of common stock (the "Shares") of Trans-Resources, Inc. (TRI) **pursuant to the terms and conditions of the Stipulation of Settlement of even date herewith,** the [Sagi] trust is granting to Arie Genger an irrevocable proxy ("the Proxy") for the shares, a copy of which is annexed hereto. (Exhibit E (Emphasis added)).

37.     The 2004 Voting Trust Letter Agreement also provides that if the Irrevocable Proxies were ever declared invalid, the Orly and Sagi Trusts would enter into a Voting Trust Agreement ("Backup Voting Trust Agreement") in the form attached to the 2004 TRI Voting Trust Letter Agreement, providing:

> **"In the event that for any reason the Proxy is declared invalid and is no longer in effect,the Trust agrees, as promptly as practicable, to enter into a Voting Trust Agreement (the "Voting Agreement") with Arie Genger as the voting trustee, which shall be substantially in the form annexed hereto. During the time the Proxy is not in effect and prior to the time the Voting Agreement is entered into, the Sagi trust agrees to vote the shares as directed in writing by Arie Genger."**

## *Back-Up Voting Trust Agreement*

38.     The Backup Voting Trust Agreement provides:

> **"The Trust Securities [the Sagi and Orly TRI Shares subject to the Voting Trust] shall be held by the Trustee [Arie Genger] for the purposes of and in accordance with this Agreement and none of the Trust Securities shall be sold or otherwise disposed of by the Trustee except as herein expressly provided or in**

12

818181.1

accordance with a final order of any Court or administrative agency with jurisdiction thereover."

\* \* \*

"This Agreement shall continue in effect for the duration of Arie Genger's Life"

Exhibit G.

39.     In order to ensure that he maintained absolute control of the TRI shares for the duration of his life, Mr. Genger never delivered physical copies of these TRI shares to the Orly or Sagi Trusts.

### *The Intent of the Parties*

40.     All of the written 2004 Transaction Documents and the Stipulation of Settlement reflect clearly and accurately the stated intention of all the parties to these collective documents: that in order to settle the acrimonious contested Genger Divorce Action, Arie Genger would release to Dalia his interest in the family holding company, but only upon TPR simultaneously divesting itself of its 52.85% interest in the common stock of TRI and distributing to Arie Genger 14% and the Sagi and Orly Trusts 19.425% each, or 38.85%, of TRI Stock previously held by TPR, **on the express further condition that Arie Genger maintain voting rights for these TRI shares for the duration of his life.**  Thus, in accordance with the simultaneous execution of all these integrated documents, Arie Genger was to retain his 52.85% voting control over TRI and concomitantly continue to control the management and Board of TRI.

41.     During the course of his bitter divorce litigation, Mr. Genger confided in his friend and neighbor Jules Trump, one of the principals of the Trump Group and a Trump Group

13

appointed Director of TRI, and informed Jules Trump about the details of the ongoing and bitter divorce proceedings.

42.    The corporate records of TRI reflect that the Trump Group must have known or had constructive knowledge of the transfer of TPR's majority interest to Arie Genger, the Sagi Trust and the Orly Trust pursuant to written notices executed by the TRI Board of Directors, including the Trump Group Directors, no later than the summer of 2005.

43.    In the Summer of 2005, an important banking transaction required the unanimous written consent of the TRI Board.  A corporate document entitled "JOINT UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF TRANS-RESOURCES, INC." was distributed to the Board, including Jules Trump and the other TRI Board representatives. This Document states that "the undersigned [included] all of the members of the Board of Directors of [TRI], and all of the holders of the outstanding capital shares of capital stock of TRI entitled to vote."

44.    The signature block on this Executed Written Consent specifically identified the shareholders as Arie Genger, the Orly Genger 1993 Trust, and the Sagi Genger 1993 Trust by Arie Genger as proxy for the two trusts.  This important Unanimous Consent was also signed by Jules Trump.

45.    The Trump Group expressed no objection nor made any request or inquiry relating to these transfers resulting from the Stipulation of Settlement in the Genger Divorce until more than four years later in mid-August, 2008, when they were attempting to gain control of TRI through certain funding agreements which will be discussed below.

14

**The Trump Faction Defendants Tactics To Wrest Majority Control Of TRI From Arie Genger When TRI Becomes Profitable**

46.     There was no hint of any strain between Mr. Genger and the Trump Group until May of 2008, when, for the first time since the Trumps had invested in TRI in March 2001, TRI began to earn a healthy profit.

47.     Earlier in the Spring of 2008, TRI had faced a threat of foreclosure by Bank Hapoalim, a long-time lender of TRI, on TRI's major operating unit.

48.     Discussions ensued between Mr. Genger and the Trump Group, exploring the possibility of the Trump Group providing sufficient capital to retire the Bank Hapoalim debt in exchange for increasing the equity position of the Trump Group so that the Trump Group would hold a majority position in TRI ("Funding Plan").

49.     Mr. Genger resisted the Trump Group Funding Plan based on the advice of TRI's Delaware corporate counsel.

50.     While the Funding Plan was being worked on, the financial condition of TRI began to improve substantially.  By late June, 2004 TRI was generating positive cash flow of $15-20 million per month.  This represented a dramatic improvement in TRI's earnings within a matter of months in 2008.  As a result, there was no longer a need for the Trump Funding Plan, which was eventually rejected by Mr. Genger based on advice of counsel.

15

51.     Thwarted in its effort to take over the newly very profitable TRI through the Funding Plan, the Trump Group, in August 2008 launched a concerted campaign to wrest from Arie Genger his majority voting control of TRI, and to devalue Mr. Genger's shares.

52.     Jules Trump, a principal of the Trump Group, specifically, and in writing, threatened that unless the Funding Plan was implemented, the Trump Group would take steps to acquire TRI for a fraction of its value.

53.     For the first time, four years after the TPR and TRI transfers were made pursuant to the Stipulation of Settlement and Transaction Documents, the Trump Group argued that these transfers were void and unenforceable.

54.     On August 8, 2008, the Trump Group sent a letter to TRI asserting that it had the right under the 2001 TRI Stockholders Agreement to purchase all of the TRI shares that were the subject of the Stipulation of Settlement transfers in 2004, **at 2004 prices**.

55.     Three days later, on August 11, 2008, the Trump Group, without naming Arie Genger, Dalia, the Sagi Trust or the Orly Trusts as parties, commenced an action in the Federal District Court of the Southern District of New York against TRI and TPR seeking a declaration that the transfer of the TRI shares by Arie Genger pursuant to the Stipulation of Settlement, was void.

56.     On August 22, 2008 less than two weeks after they had commenced the Federal Court action in New York, the Trump Group attempted to take majority control of TRI without waiting for any Court ruling, by entering into a 2008 Stock Purchase Agreement to buy the Sagi

16

818181.1

Trust Shares for a purchase price of close to $27 million ("2008 Stock Purchase Agreement", attached hereto as Exhibit H).

57.     There is no question that on August 22, 2008, the Trump Group had specific knowledge of the terms of the Sagi Irrevocable Proxies, the 2004 TPR Letter Agreement, the 2004 Voting Trust Letter Agreement, the Back-up Voting Trust Agreement and the Stipulation of Settlement, all of which were intended to give Arie Genger voting control over the Sagi Trust Shares for the duration of Arie Genger's life.

58.     On August 22, 2004, the 2008 Stock Purchase Agreement was executed by the Trump Group, TR Investors, Glenclova, New TR Equity I, LLC ("TR I") and New TR Equity II, LLC ("TR II")[1], as the purchasers, and by the Sagi Trust, designated as the Seller, with TPR designated as a kind of "contingent seller."

59.     The terms of the 2008 Stock Purchase Agreement provided that the Sagi Trust purported to sell the 1102.80 shares of common stock representing 19.425% of the shares of stock to the Trump Group to two new entities – TR I and TR II – for $26,715,416.00.  When combined with the Trump Group's minority share of 47.15 %, this would give the Trump Group a 66.575% majority and controlling voting interest in TRI if the Irrevocable Proxies and 2004 Voting Trust Letter Agreement could be ignored.

60.     Because the Trump Group already knew about the Irrevocable Trusts and 2004 Voting Trust Letter Agreements, they had no choice but to acknowledge the existence of the

---

[1] TR I and TR II are investors in the Trump Group.

Irrevocable Proxy and 2004 Voting Trust Letter Agreement in the 2008 Stock Purchase

Agreement, and represented and warranted therein that:

> **"Such Purchaser hereby acknowledges receipt of copies of the irrevocable proxy dated as of October 29, 2004, issued by Seller ["Sagi Trust"] in favor of Arie Genger with respect to the shares (the "Proxy"), a backup form of voting trust agreement and voting trust certificate delivered in connection with the Proxy and the Letter Agreement dated October 29, 2004 [2004 Voting Trust Letter Agreement] with respect to the transfer of shares from TPR to Seller"**

61.    The Trump Group purported to purchase the Sagi Trust shares notwithstanding

Arie Genger's rights as expressed under the Stipulation of Settlement and Transaction

Documents.

62.    The 2008 Stock Purchase Agreement also provided that if the Sagi Trust was

determined not to be the record and beneficial owner of the Sagi trust shares for any reason, then

**TPR,** would step in and sell the Sagi Trust Shares for just under $27 million.  Thus, TPR was

selling again the very same shares that TPR had conveyed to the Sagi Trust in 2004 on the

express condition that the transfer was valid and that Arie Genger would receive lifetime voting

rights either through the Irrevocable Proxies, Back-up Voting Trust agreement, or any other

document that could be executed to protect the preservation of Arie's voting control over the

19.425 %.

63.    Instead, Sagi – the same person who executed the 2004 TPR Letter Agreement on

behalf of TPR as President—agreed to sell the Sagi Trust Shares shares a second time (this time

to the Trump Group, which would then own 66% of TRI's shares) and did nothing to protect the

18

voting rights that were the essential condition of Arie Genger relinquishing his interest ownership of these TRI shares, pursuant to the Stipulation of Settlement and Transaction Documents.

64.    Moreover, Sagi signed a side letter on very same day as the 2008 Stock Purchase Agreement that provides that if the Arie and Dalia TRI Transactions under the Stipulation of Settlement and 2004 Transaction Documents were declared void, then Sagi, on behalf of TPR, would transfer the Arie Genger Shares and Orly Trust Shares to the Trump Group for a payment to TPR for a price per share 60% lower than the Sagi Trust received at the same time under the same 2008 Stock Purchase Agreement, which would then be deemed a sale by TPR ("2008 Stock Purchase Side Letter Agreement", attached hereto as Exhibit I).

65.    By this 2008 Stock Purchase Side Letter Agreement, Sagi in complicity with the Trump Group agreed that in the event that the transfers to Arie Genger and the Orly Trust are voided along with the Sagi Trust Shares, the price paid by the Trump Faction Defendants would be calculated at a price point that was 60% less than the per share value paid by the Trump Group for the voided Sagi Trust Shares.

***The Trump Faction Defendants Declare Themselves The Majority Owners Of TRI , And Commence An Action In The Delaware Chancery Court To Determine The Composition Of TRI's Board Of Directors***

66.    On August 25, 2008, only three days after the 2008 Stock Purchase Agreement, and 2008 Stock Purchase Side Letter Agreement were executed, the Trump Group asserted that it was in control of TRI through the acquisition of 1102.80 shares that were purportedly transferred by the Sagi Trust or TPR.

19

67.     On August 25, 2008, the Trump Faction defendants commenced a Chancery

Court proceeding in the State of Delaware pursuant to 8 Del.C sec. 225(a) to determine the

composition of the Board of Directors of TRI.  ("The Delaware Action")  This complaint was

later amended to seek the following relief, declaring:

    i.      that the Trump Faction defendants are the majority shareholders of TRI
            and have the right to vote all of its shares including the shares which were
            allegedly purchased pursuant to the Stock Purchase Agreement;

    ii.      that the 2004 transfers to Arie Genger, the Sagi Trust and the Orly Trust
            are void and continue to belong to TPR;

    iii.      that the 2008 purchase through the Stock Purchase Agreement is valid;
            and

    iv.      that the Irrevocable Proxies do not apply to the shares transferred pursuant
            to the Stock Purchase Agreement.

68.     On July 23, 2010, the Delaware Chancery Court  issued the written Opinion

attached here to and discussed above.

## FIRST CAUSE OF ACTION

**(For Declaratory Judgment Under CPLR 3001 as Against All Defendants)**

69.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 68.

70.     The Plaintiff Arie Genger is entitled to an order of this Court declaring that the

defendants Sagi Genger and TPR and each of them, and their respective agents, successors and

assigns have no right, directly or indirectly, to sell, transfer, assign, acquire, vote, hypothecate,

control or otherwise dispose of or interfere with the Arie Genger Shares.

818181.1

71.     The Plaintiff Orly Genger, individually and as the beneficiary of the Orly Trust, is entitled to an order of this Court declaring that the defendants Sagi Genger and TPR, and each of them, and their respective agents, successors and assigns have no right, directly or indirectly, to sell, transfer, assign, acquire, vote, hypothecate, control or otherwise dispose of, or interfere with the Orly Trust Shares.

72.     There is a justiciable controversy that exists between the parties.

73.     There is no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Claim for Permanent Injunction Against All Defendants)

74.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 73.

75.     The Plaintiff Arie Genger is entitled to the issuance of a permanent injunction enjoining and restraining all of the Defendants, and each of them, and their agents, successors and assigns from directly or indirectly, transferring, selling, acquiring, encumbering, hypothecating, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or interfering with the Arie Genger Shares.

76.     The Plaintiff Orly Genger, individually and as the beneficiary of the Orly Trust is entitled to the issuance of a permanent injunction enjoining and restraining all of the Defendants, and each of them, and their agents, successors and assigns from directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or certain shares of common stock in TPR and TRI that were originally acquired under the Stipulation of Settlement and Transaction Documents from directly or indirectly transferring, selling, acquiring,

21

hypothecating, pledging, assigning, diluting, voting, valuing, replacing, conveying, using,

removing from the jurisdiction, or otherwise interfering with disposing of, or disposing of the

Orly Trust Shares.

77.     The failure to grant such permanent injunction will result in irreparable injury to

the Plaintiff.

78.     There is no adequate remedy at law.

79.     As set forth above, Plaintiff has established a balancing of the equities in his

favor.

### THIRD CAUSE OF ACTION
**(Claim for Preliminary Injunction or Temporary Restraining Order Against TRI, the
Trump Faction and Sagi Genger Under CPLR 7109)**

80.     Plaintiffs repeats and reallege the allegations in paragraphs 1 through 79.

81.     The Arie Genger Shares are unique chattel.

82.     By virtue of the facts set forth above, Plaintiff Arie Genger is entitled to

possession of the Arie Genger Shares.

83.     The Arie Genger Shares are wrongfully being held, and encumbered by the

defendants.

84.     Plaintiff is entitled to a preliminary injunction or temporary restraining order,

under CPLR 7109, that the Arie Genger Shares shall not be removed from the

state, transferred, sold, pledged, assigned or otherwise disposed of until the further order of the

court.

85.     The  Orly Trust Shares are unique chattel.

818181.1

86.     By virtue of the facts set forth above, Plaintiff Orly Genger individually and as the beneficiary of the Orly Trust, is entitled to possession of the Orly Trust Shares.

87.     The Orly Trust Shares are wrongfully being held, and encumbered by the defendants.

88.     Plaintiffs is entitled to a preliminary injunction or temporary restraining order, under CPLR 7109, that the Orly Trust Shares shall not be removed from the state, transferred, sold, pledged, assigned or otherwise disposed of until the further order of the court.

**WHEREFORE,** Plaintiffs demands Judgment in favor of the Plaintiffs against the Defendants as follows:

(a) on the **First Cause of Action as against all Defendants**, that this Court find and declare in favor of: (1) the Plaintiff Arie Genger that the defendants Sagi Genger and TPR and each of them, and their respective agents, successors and assigns have no right, directly or indirectly, to sell, transfer, assign, acquire, vote, hypothecate, control or otherwise dispose of or interfere with the Arie Genger Shares; and (2) the Plaintiff Orly Genger, individually and as the beneficiary of the Orly Trust, is entitled to an order of this Court declaring that the defendants Sagi Genger and TPR, and each of them, and their respective agents, successors and assigns have no right, directly or indirectly, to sell, transfer, assign, acquire, vote, hypothecate, control or otherwise dispose of, or interfere with the Orly Trust Shares.

23

(b) on the **Second Cause of Action**, against all defendants, for a permanent injunction:

(i)  enjoining and restraining all of the Defendants, and each of them, and their agents, successors and assigns from directly or indirectly, transferring, selling, acquiring, encumbering, hypothecating, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or interfering with the Arie Genger Shares; and

(ii) enjoining and restraining all of the Defendants, and each of them, and their agents, successors and assigns from directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or certain shares of common stock in TPR and TRI that were originally acquired under the Stipulation of Settlement and Transaction Documents from directly or indirectly transferring, selling, acquiring, hypothecating,  pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise intefering with disposing of, or disposing of the Orly Trust Shares.


(c) On the **Third Cause of Action** for a Preliminary Injunction or Temporary Restraining Order against all defendants, and each of them, under CPLR 7109, providing that neither the Arie Genger Shares nor the Orly Trust Shares shall be removed from the state, transferred, sold, pledged, assigned or otherwise disposed by the defendants until the further order of the Court, and

24

(d) **On all causes of action set forth in this Complaint**, such other relief as this court may deem

just, together with the costs and disbursements incurred by Plaintiffs in this action and the

recovery of Plaintiffs' reasonable attorneys' fees.


DATED: New York, New York          MITCHELL SILBERBERG & KNUPP LLP
       July 25, 2010

                                 By: _____
                                    Lauren J. Wachtler
                                    Paul D. Montclare
                                    12 East 49th Street, 30th Floor
                                    New York, New York 10017-1028
                                    Telephone: (212) 509-3900
                                    Facsimile: (212) 509-7239

                                    Attorneys for Plaintiffs

## VERIFICATION

STATE OF NEW YORK          )
                           )          ss.:
COUNTY OF NEW YORK         )

I, ARIE GENGER, have read the foregoing **VERIFIED COMPLAINT,**

which is true to my own knowledge, except as to facts alleged on information and

belief, which I believe to be true.

**ARIE GENGER**

Sworn to before me this
23 day of July, 2010

NOTARY PUBLIC
RITA L. SETO-LAI
Notary Public, State of New York
No. 01SE6083338
Qualified in New York County
Commission Expires November 12, 2010

2812019.1

1