# EXHIBIT H

SUPREME COURT: NEW YORK COUNTY

| | |
|---|---|
| ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of the ORLY GENGER 1993 Trust,<br><br>                  Plaintiffs,<br><br>      -against-<br><br>SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST, ROCHELLE FANG, Individually and as Trustee of THE SAGI GENGER 1993 TRUST, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP and MARK HIRSCH,<br><br>                  Defendants. | Index No. 651089/10<br><br>(Justice Paul G. Feinman) |

## PLAINTIFF ORLY GENGER'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO ENJOIN DEFENDANT DALIA GENGER FROM PROSECUTING DUPLICATIVE LITIGATION IN DELAWARE CHANCERY COURT

**ZEICHNER ELLMAN & KRAUSE LLP**
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT .............................................................................1

STATEMENT OF FACTS .....................................................................................2

    The New York TRI Action ..............................................................................2

    The Delaware DJ Action.................................................................................4

    The Delaware Proceedings Before Chancellor Strine .........................................5

    Additional Reasons Why Ownership of the TRI Shares should be Decided
        in New York.......................................................................................7

ARGUMENT.......................................................................................................8

I.       THE COURT SHOULD ENJOIN DALIA FROM CONTINUING
         HER DUPLICATIVE DELAWARE LITIGATION...................................8

II.      THIS COURT SHOULD STOP DALIA FROM COLLATERALLY
         ATTACKING THIS COURT'S AUTHORITY AND
         IRREPARABLY HARMING ORLY THROUGH DUPLICATIVE
         LITIGATION..........................................................................................12

III.     THE COURT SHOULD ENJOIN DALIA FROM COMMENCING
         ANY FURTHER DUPLICATIVE ACTIONS.........................................14

CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**NEW YORK CASES**

Browne v. Browne,
    53 A.D.2d 134, 385 N.Y.S.2d 983 (4th Dept. 1976) ...........................................................9, 13

Bryan v. Bryan,
    275 A.D.2d 688, 713 N.Y.S.2d 348 (1st Dept. 2000)...........................................................9, 11

Fernandez v. Fernandez,
    39 Misc.2d 471, 240 N.Y.S.2d 926 (Sup. Ct. Bronx Cty. 1963) ...........................................10

Garvin v. Garvin,
    302 N.Y. 96, 96 N.E.2d 721 (1951)............................................................................................9

Hon v. Hon,
    164 Misc.2d 806, 624 N.Y.S.2d 553 (Sup. Ct. Queens Cty. 1995) .....................................9, 13

Interested Underwriters at Lloyd's v. H.D.I. III Associates,
    213 A.D.2d 246, 623 N.Y.S.2d 871 (1st Dept. 1995)...............................................................11

Jay Franco and Sons Inc. v. G Studios, LLC,
    34 A.D.3d 297, 825 N.Y.S.2d 20 (1st Dept. 2006)....................................................................9

Jay Franco and Sons Inc. v. G Studios, LLC,
    Index No. 602236/05, 2006 WL 5110770 (Sup. Ct. N.Y. Cty. June 14, 2006)....................8, 9

Lafferty v. Lafferty,
    243 A.D.2d 541, 663 N.Y.S.2d 108 (2d Dept. 1997) ..........................................................9, 13

Martin v. Martin,
    62 Misc.2d 703, 309 N.Y.S.2d 477 (Sup. Ct. Nassau Cty. 1970) .....................................10, 14

Palmer v. Palmer,
    268 A.D. 1010, 52 N.Y.S.2d 383 (3d Dept. 1944) ..............................................................9, 13

Pavlo v. Pavlo,
    137 Misc.2d 418, 520 N.Y.S.2d 991 (Sup. Ct. Kings Cty. 1987)...........................................10

Pereia v. Pereria,
    272 A.D. 281, 70 N.Y.S.2d 763 (1st Dept. 1947)................................................................9, 13

STATUTES AND RULES

8 Del. C. § 225 (2011) .................................................................................................5, 6

NY CPLR §3211(a)(10)...............................................................................................11

Court of Chancery Rule 12(b)(7)................................................................................11

Court of Chancery Rule 19(a).....................................................................................11

## PRELIMINARY STATEMENT

Orly Genger ("Orly") is the sole beneficiary of the Orly Genger 1993 Trust (the "Orly Trust"). On July 20, 2010, Orly began this action to determine the Orly Trust's ownership interest in the shares of a closely-held family company, Trans-Resources, Inc. ("TRI") (the "New York TRI Action"). On October 4, 2011, defendant Dalia Genger ("Dalia") commenced a declaratory judgment action in Delaware Chancery Court, purportedly seeking to determine the same issue: the Orly Trust's ownership interest in TRI (the "Delaware DJ Action"). To prevent forum shopping and conserve judicial resources, courts have not hesitated to enjoin a party's attempt to pursue duplicative litigation in other jurisdictions. The Court should issue such an injunction here.

An injunction enjoining the Delaware DJ Action is particularly appropriate given that Dalia's only real purpose in commencing the Delaware DJ Action is to help defendants Sagi Genger ("Sagi"), TPR Investment Associates, Inc. ("TPR"), and the Trump Group loot the TRI Shares. By now, the Court is well-aware of Dalia's myriad efforts to pauperize Orly and how, since becoming Trustee, Dalia has misused her position to dissipate all of the Orly Trust's assets. To strip away the Orly Trust's indirect interest in TPR, Dalia permitted Sagi to enforce a Note Dalia and Sagi had successfully argued in a prior legal proceeding was never intended to be enforced. To strip away the Orly Trust's interest in TPR, Dalia granted Sagi the unfettered right to sell the Orly Trust's TRI Shares for a fraction of its true price, while releasing him in advance from all potential claims. The Delaware DJ Action is just another transparent attempt by Dalia to misuse her Trusteeship to harm Orly and the Orly Trust.

No valid reason exists for the Delaware DJ Action. Dalia resides in New York; Orly resides in New York; the Orly Trust is governed by New York law; and the question raised

by the Delaware DJ Action is already before this Court. The only reason Dalia filed her action in Delaware is to provide the Delaware Chancery Court with personal jurisdiction over the Orly Trust. Specifically, in the course of a limited *in rem* proceeding to decide voting rights, Chancellor Strine of the Delaware Chancery Court purported to hold that the TRI Shares do <u>not</u> belong to the Orly Trust, but to TPR (and through TPR to the Trump Group). That holding was overturned, the Delaware Supreme Court ruling the lower court lacked, in that limited *in rem* proceeding, the personal jurisdiction over the Orly Trust necessary to decide beneficial ownership of the TRI Shares. By bringing her action, Dalia deliberately has given the Delaware Chancery Court the personal jurisdiction it lacked. Little wonder then that, at a recent hearing before this Court, Thomas J. Allingham II, the Trump Group's attorney, welcomed the filing of Dalia's new Delaware DJ Action.

Over fifteen months ago, Orly chose this Court as her desired forum for deciding who beneficially owns the TRI Shares, and it is this Court that should decide that issue. The Court should not allow Dalia to strip that choice from Orly, as she has stripped Orly of so many other things. Nor should Dalia be permitted to spark an unnecessary and unhelpful race to judgment between New York and Delaware. Instead, during the pendency of this action, the Court should enjoin Dalia from continuing the Delaware DJ Action, or commencing any other duplicative litigation.

## STATEMENT OF FACTS[1]

### The New York TRI Action

On July 20, 2010, Orly, on behalf of herself and the Orly Trust, and together with

---

[1] The Statement of Facts is supported by the Affidavit of plaintiff Orly Genger ("Orly Aff.") and exhibits attached thereto; the Attorney's Statement of Bryan D. Leinbach ("Leinbach Decl.") and exhibits attached thereto; and the Attorney's Statement of Judith Siegel-Baum ("Siegel-Baum Decl.") and exhibits attached thereto.

her father Arie Genger ("Arie"), commenced the instant New York TRI Action.  Leinbach Decl.
¶ 2; Orly Aff. ¶ 2.  The New York TRI Action seeks reformation of a Stipulation and Agreement
of Settlement between Arie and Dalia in consummation of their divorce proceedings (the
"Stipulation"), and a final determination of who beneficially owns the shares of TRI purportedly
transferred to Arie, the Orly Trust, and the Sagi Genger 1993 Trust ("Sagi Trust") pursuant to
that Stipulation. Complaint ¶¶ 32-173.[2]

   The Stipulation provides, *inter alia*, that defendant TPR would transfer a 13.99%
interest in TRI to Arie Genger (the "Arie TRI Shares") and 19.43% interests to the Orly Trust
(the "Orly Trust TRI Shares") and Sagi Trust (the "Sagi Trust TRI Shares").  Complaint ¶ 34.
The Stipulation also provided that Arie would transfer his 51% interest in TPR to Dalia. Id.  In
the event that any of the transfers contemplated by the Stipulation were found unenforceable for
any reason, the Stipulation contained a reformation provision, stating:

> If any provision of this Agreement, for any reason whatsoever, be
> declared ... unenforceable by any Court of competent jurisdiction
> ... the remainder of this Agreement and the application of such
> provision to any person or situations, other than those as to which
> such provision may have been held invalid or unenforceable shall
> not be affected thereby and shall continue to be enforced to the
> fullest extent that such severance of the invalid portions is possible
> without vitiating the original intent and purposes and economic
> intentions of the parties (the "Original Intent"), as herein set forth
> ....  **In the event a provision is superseded under this Article
> XVI, either party may seek reformation of the affected
> provision in any court of competent jurisdiction, which shall be
> empowered to revise the provision to reflect the parties'
> Original Intent to the greatest extent possible, consistent with
> New York law.**  It is the intention of the parties hereto that the
> provisions may be enforced in equity in addition to, and not to the
> exclusion of any other remedies which may be available to the
> parties.

---

[2] "Complaint" means the New York TRI Action's Third Amended and Supplemental Complaint
dated September 20, 2011.  For the Court's convenience, a copy of the Complaint, without
exhibits, is attached as Exhibit R to the Leinbach Decl.

Stipulation, pp. 47-48 (emphasis added) (Complaint ¶ 38 and attached Ex. A).

Moreover, to effectuate the Genger family's wishes concerning ownership of the Genger's families TRI shares, defendant Sagi Genger, as CEO of defendant TPR Investment Associates, Inc., and David Parnes, as trustee of the Orly and Sagi Trusts, entered into an October 29, 2004 agreement (the "October 2004 Agreement"), stating:

> In case, at any time hereafter, any further action is necessary or desirable to carry out the purpose of this Letter Agreement, **each of the parties hereto shall take or cause to be taken all necessary action**, including, without limitation, the execution and delivery of such further instruments and documents **as may be reasonably requested by any party for such purpose or otherwise to complete or perfect the transactions contemplated hereby.**

October 2004 Agreement (emphases added) (Complaint ¶ 50 and attached Ex. B).[3]

**The Delaware DJ Action**

On October 4, 2011, Dalia commenced a declaratory judgment action in Delaware Chancery Court entitled *Dalia Genger as Trustee of the Orly Genger 1993 Trust v. TR Investors LLC et al.* (Orly Aff. ¶ 5 and Ex. A (Delaware DJ Action Complaint)).[4]  Like the New York TRI Action, the Delaware DJ Action seeks a judicial determination regarding beneficial ownership of the Orly Trust TRI Shares.  Id.  However, unlike the New York TRI Action, Dalia's Chancery Court proceeding fails to include either Arie or the Sagi Trust as parties or take into account the reformation provision in the Stipulation.  Orly Aff. ¶¶ 5-8; Leinbach Decl. ¶ 4.

---

[3] In addition, Arie was granted an irrevocable proxy and a backup proxy agreement to vote the two trust's TRI shares during his lifetime, thus maintaining the Genger family's majority voting control over TRI.  Complaint ¶¶ 50-55 and attached Exs. B-E.

[4] Dalia's Delaware counsel is Jeremy Anderson, a former associate to Trump Group lawyer Allingham II.  See Leinbach Decl. ¶ 6.

**The Delaware Proceedings Before Chancellor Strine**

In filing the Delaware DJ Action, Dalia deliberately seeks to have her case placed before a Court and Judge (Chancellor Strine) who already has determined the Orly Trust does not own the TRI Shares (a determination reversed by the Delaware Supreme Court on jurisdictional grounds).  Orly Aff. ¶¶ 9-13 and Exs. D and E.

Chancellor Strine ruled on the issue as part of a limited action under 8 Del. C. § 225 between various members of the "Trump Group" and Arie Genger (Orly's father) to determine which stockholder group possessed majority voting interest and was entitled to elect the TRI board of directors.   As part of that proceeding, in an August 29, 2010 Opinion (the "Side Letter Opinion"), the Chancery Court attempted to opine regarding who owned the TRI Shares.[5]  (Orly Aff. ¶ 10 and Ex. D).  In that Side Letter Opinion, the Chancellor expressly acknowledged the Orly Trust "was not formally before the Court" in any capacity. Side Letter Opinion at 1 (Orly Aff., Ex. D).   The Chancellor nevertheless went on to determine that the Orly Trust did not beneficially own the TRI Shares.  Rather, the Chancellor held that the TRI Shares are owned by TPR (and pursuant to the Side Letter Agreement between TPR and the Trump Group could be purchased by the Trump Group). Side Letter Opinion at 3; see also Final Judgment Order at ¶ 8 (Orly Aff., Ex. E) ("TPR is the record and beneficial owner of all [TRI] shares not presently owned by the Trump Group").

On July 18, 2011, the Delaware Supreme Court affirmed in part and reversed in part the decision of the Delaware Chancery Court.  See Delaware Supreme Court Opinion (Orly Aff., Ex. C).  Specifically, the Delaware Supreme Court held that, because the Delaware Court of

---

[5] The August 29 Opinion is referred to as the "Side Letter Opinion" because it purports to apply a "side letter" where TPR's CEO, Sagi Genger, contracted to sell TRI Shares to the Trump Group.  Notably, TPR claims the right to sell the Orly Trust's TRI Shares because Dalia -- in derogation of her fiduciary duties as Trustee – purported to give Sagi (for no apparent consideration) the unfettered right the sell, transfer, and otherwise dispose of, the TRI Shares. See Orly Aff. ¶ 10 n. 1; see also Meeting Agreement ¶¶ 3, 11 (Siegel-Baum Decl. Ex. I).

Chancery was deciding a Section 225 *in rem* proceeding (as opposed to a plenary proceeding), it

exceeded its jurisdiction in deciding the Trump Group's right to buy, and TPR's right to sell, the

Orly Trust TRI Shares. Del. Sup. Ct. Op. at 35-44.  The Delaware Supreme Court concluded:

> To summarize, the trial court lacked personal jurisdiction over
> either the Orly Trust or TPR, which was required for a binding
> adjudication of the beneficial ownership of their respective stock
> ownership interests.  Without personal jurisdiction over these
> entities, the Court of Chancery lacked the power to augment TPR's
> beneficial ownership interest, or diminish the Orly Trust's
> beneficial ownership interest, in Trans-Resources by adjudicating
> that TPR beneficially owned the Genger Shares and Orly Trust
> Shares.  Therefore, the beneficial ownership determinations that
> flow from the Court of Chancery's August 9, 2010 Side Letter
> Opinion and its August 18, 2010 Final Judgment Order must be
> reversed.

Id. at 44.  Notably, the Delaware Supreme Court also suggested that the adjudication of beneficial

ownership take place in the New York Courts.  Id. at 44, n.98.

Rather than follow the Delaware Supreme Court's advice and bring an action in

New York, or conserve its resources by litigating the matter in the existing New York TRI

Action, Dalia deliberately chose the worst possible option – to bring a plenary action in

Delaware Chancery Court where the matter already has been decided adverse to the Orly Trust.

Orly Aff. ¶ 12.  By bringing her Delaware DJ Action, Dalia is attempting to cure the

jurisdictional defect that protected the Orly Trust, plainly intending to obtain from Chancellor

Strine the same erroneous findings adverse to the Orly Trust he had made previously (even

though Orly, the Orly Trust, and TPR were not parties to that prior proceeding).  Id.  Little

wonder then that, at a recent hearing before this Court, Mr. Allingham II, the Trump Group's

attorney, welcomed Dalia's filing of her new Delaware DJ Action.  See October 11, 2011

Hearing Transcript at 28:3-8 (Leinbach Decl., Ex. V).

Dalia's use of the Delaware DJ Action to harm Orly and the Orly Trust is of a

piece with her many other efforts to financially damage Orly and the Orly Trust, in collusion with her son, Sagi. <u>See</u> Siegel-Baum Decl. ¶¶ 4-14 and Exs. G-M; Orly Aff. ¶¶ 2-4. For this reason, Orly has brought a proceeding in Surrogate Court to remove Dalia as Trustee of the Orly Trust. <u>See</u> *In the Matter of the Application of Orly Genger, as a person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust pursuant to SPCA § 711(11)*, Index 0017/2008. The Surrogate action is still pending before the Surrogate Court. Siegel-Baum Decl. ¶ 19.

On July 1, 2009, the Surrogate Court imposed certain protective restraints upon Dalia to preserve the status quo (the "Restraints"):

> ORDERED that, <u>during the pendency of his proceeding, Respondent and/or her counsel are required to give notice by overnight mail to Petitioner's counsel of any</u> (1) offer to purchase the Orly Trust's 19.3% interest in TRI within 10 days of receiving such offer and (2) <u>act by Respondent, her agents and all other persons acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell or otherwise alter the Orly Trust's interest in TRI at least 10 days prior to such act.</u>

July 1, 2009 Order at 2 (emphases added) (Siegel-Baum Decl. Ex. N); <u>accord</u> September 8, 2010 Stipulation (Siegel-Baum Decl. Ex. O) (stipulating to same restraints). Dalia did not provide Orly or her counsel with any notice before filing the Delaware DJ Action. (Siegel-Baum Decl. ¶ 18).

**<u>Additional Reasons Why Ownership of the TRI Shares should be Decided in New York</u>**

Any determination regarding the Orly Trust should be made in New York, not Delaware. Orly, the sole beneficiary of the Orly Trust, is a resident of New York and has chosen this Court as her forum of choice. (Orly Aff. ¶ 6). Dalia, the present Trustee of the Orly Trust, is a resident of New York. <u>Id.</u> The Trust Agreement creating the Orly Trust specifically states that "This Trust Agreement and the trusts hereby created shall be governed by the Law of the State of New York." <u>See</u> Trust Agreement, Article Sixth (Governing Law) (Orly Aff., Ex. B).

7

More generally, every party necessary to determination of who owns the TRI Shares are parties to, and have appeared in, the New York TRI Action. (Orly Aff. ¶ 7). Further, the New York Court has jurisdiction to decide all necessary issues, including issues touching upon the dissolution of Arie and Dalia Genger's marriage and reformation of the Stipulation of Settlement arising therefrom. <u>Id</u>. Thus, it is not surprising that the Delaware Supreme Court recognized in its opinion that ownership of the TRI Shares should be decided in New York. <u>See</u> Del. Sup. Ct. Op. at 44, n.98 (Orly Aff., Ex. C).

Finally, this Court is already familiar with many of the issues in this case, having presided over extensive motion practice in the New York TRI Action, and in the related action before this Court, titled *Orly Genger v. Dalia Genger et al.,* Index No. 109749/09 (the "New York TPR Action"). Orly Aff. ¶ 8; Leinbach Decl. ¶ 3. For example, this Court already has recognized that both the TPR and TRI Shares are "unique" and should "be protected from transfer, sale or assignment until this litigation is ultimately decided." <u>See</u> July 28, 2010 Amended Decision and Order in New York TPR Action (Leinbach Decl., Ex. T); February 17, 2011 Decision and Order in New York TRI Action (Leinbach Decl., Ex. V).

## <u>ARGUMENT</u>

## I.   THE COURT SHOULD ENJOIN DALIA FROM CONTINUING HER DUPLICATIVE DELAWARE LITIGATION

This Court has broad powers to prevent a defendant like Dalia from prosecuting foreign legal proceedings that duplicate litigation currently pending before it. For example, in <u>Jay Franco and Sons Inc. v. G Studios, LLC</u>, Index No. 602236/05, 2006 WL 5110770 (Sup. Ct. N.Y. Cty. June 14, 2006), plaintiff filed an action in New York seeking the return of a $70,000 deposit paid to defendant, after the parties failed to complete and enter a trademark licensing agreement. Ten months later, defendant commenced a fraud action in California, contending the

licensing agreement had failed due to plaintiff's fraud and the deposit did not have to be returned. Id. Although defendant contended the actions were not duplicative,[6] the New York Supreme Court disagreed and enjoined the California action. Id. (citing Matter of the Adoption of Baby Girl S., 181 Misc. 2d 117, 130 (Surr. Ct. Westchester Cty. 1999) ("the court has the authority to grant injunctive relief in order to protect the integrity of its jurisdiction and to prevent the parties from engaging in duplicative litigation")).

The First Department affirmed, holding that, although the legal claims differed, the operative facts and "underlying issue in both cases is the [same]," and the injunction was proper:

> In the interest of preventing duplicative litigation that might lead to conflicting results, and to prevent the waste of judicial resources and unnecessary legal expenses, the court did not improvidently exercise its discretion by invoking its equity power to enjoin defendant from prosecuting [an action the defendant filed in California].

Jay Franco and Sons Inc. v. G Studios, LLC, 34 A.D.3d 297, 825 N.Y.S.2d 20, 21 (1st Dept. 2006); see also Bryan v. Bryan, 275 A.D.2d 688, 713 N.Y.S.2d 348 (1st Dept. 2000) (affirming decision enjoining defendant from prosecuting duplicative action filed in Texas); Lafferty v. Lafferty, 243 A.D.2d 541, 663 N.Y.S.2d 108, 109 (2d Dept. 1997) (affirming decision enjoining defendant from prosecuting duplicative action filed in Connecticut).[7] The same result, enjoining

---

[6] Indeed, defendant's California attorneys submitted a certification in California stating that the California action was "not related to another action or proceeding pending in any state." Jay Franco and Sons, Inc., 2006 WL 5110770, at *1.

[7] See also Garvin v. Garvin, 302 N.Y. 96, 103, 96 N.E.2d 721 (1951) (affirming lower court's decision to enjoin defendant from prosecuting a subsequent action in the Virgin Islands); Pereia v. Pereria, 272 A.D. 281, 70 N.Y.S.2d 763 (1st Dept. 1947) (reversing lower court's decision and enjoining defendant from prosecuting a subsequent action in Nevada); Palmer v. Palmer, 268 A.D. 1010, 52 N.Y.S.2d 383 (3d Dept. 1944) (affirming lower court's decision to enjoin defendant from prosecuting a subsequent action in Nevada); Browne v. Browne, 53 A.D.2d 134, 385 N.Y.S.2d 983, 987 (4th Dept. 1976) (affirming Supreme Court's decision to enjoin defendant from prosecuting action in Texas); Hon v. Hon, 164 Misc.2d 806, 624 N.Y.S.2d 553,

Dalia from prosecuting the Delaware DJ Action, is called for here.

The Delaware DJ Action was commenced over <u>fifteen months</u> after the New York TRI Action, and seeks the same relief: a judgment affirming the Orly Trust's beneficial ownership to the Orly Trust TRI Shares. <u>Compare</u> First Cause of Action in New York TRI Complaint, at ¶¶ 174-189 (Leinbach Decl., Ex. R) <u>with</u> Count One of Delaware DJ Action Complaint, at ¶¶ 37-43 (Orly Aff., Ex. A). This Court has spent countess hours over the past year and a half familiarizing itself with the facts of the case and making substantive ruling regarding the property at issue in this case. Indeed, there are already over 100 entries on the Court's docket for this case. <u>See</u> E-filing docket (Leinbach Decl. ¶ 3 and Ex. S).

Allowing Dalia to prosecute the Delaware Action would only duplicate this Court's efforts in a state with no connection to the New York Stipulation that gave rise to the Genger family's division of wealth, and no connection to Dalia, Orly, or the Orly Trust. Indeed, while this Court has already addressed the issue of reformation of the Stipulation pursuant to the Genger family's original intent, the Delaware Chancery Court never addressed such issues in the prior special 225 proceeding before it, which was an *in rem* proceeding narrowly focused on the parties' relative rights to appoint board members to TRI's board of directors. Orly was not a party to these prior Delaware proceedings and had no opportunity to raise the New York Stipulation or related issues with the Delaware Court. <u>See</u> Del. Sup. Ct. Op. at 44; <u>see also</u> Orly Aff. ¶¶ 6-8, 14-16. For this reason alone, the Court should enjoin or stay the Delaware DJ Action. <u>See, e.g.</u>, <u>Interested Underwriters at Lloyd's v. H.D.I. III Associates</u>, 213 A.D.2d 246,

---

554 (Sup. Ct. Queens Cty. 1995) (enjoining plaintiff from prosecuting subsequent proceeding in Connecticut after commencing an action in New York); <u>Pavlo v. Pavlo</u>, 137 Misc.2d 418, 520 N.Y.S.2d 991, 994 (Sup. Ct. Kings Cty. 1987) (enjoining defendant from prosecuting subsequent action in New Jersey); <u>Fernandez v. Fernandez</u>, 39 Misc.2d 471, 240 N.Y.S.2d 926, 927 (Sup. Ct. Bronx Cty. 1963) (enjoining defendant from prosecuting subsequent action in Mexico); <u>Martin v. Martin</u>, 62 Misc.2d 703, 309 N.Y.S.2d 477, 480 (Sup. Ct. Nassau Cty. 1970)

247, 623 N.Y.S.2d 871, 873 (1st Dept. 1995) (affirming order staying Colorado action where "New York action was properly placed, ... a contrary decision in Colorado would interfere with the New York court's ability to resolve the issues before it, ... the facts indicate that the defendant may have engaged in forum-shopping ... [and] significant New York contacts existed") (internal citations omitted); Bryan v. Bryan, 275 A.D.2d 688, 689, 713 N.Y.S.2d 348, 349 (1st Dept. 2000) (enjoining action where "New York has the greater interest in and contacts with the ... litigation" because "most, if not all, of the marital property is located in New York; the antenuptial agreement was entered into in New York; the parties lived together in New York as husband and wife ... and the wife continues to reside in New York").

Both the Delaware and New York courts recognize a party's right to move to dismiss a complaint due to the plaintiff's failure to name all necessary parties.  NY CPLR 3211(a)(10); Court of Chancery Rule 12(b)(7), 19(a).  The New York TRI Action includes all necessary parties for an adjudication of the Orly Trust's beneficial ownership to the Orly Trust TRI Shares: Orly, Arie, the Orly Trust,[8] Dalia, Sagi, TPR, the Sagi Trust, and the Trump Group. In contrast, Dalia's newly minted Delaware DJ Action only names TPR and the Trump Group as defendants.  See Delaware DJ Action Complaint at 1.

In this regard, Dalia's decision to exclude Orly as a party is telling.  As a non-party, Orly cannot move the Delaware Court to dismiss the Delaware DJ Action, despite the fact that Dalia's prosecution of the Delaware DJ Action would rob Orly of her right to prosecute her

_____

(enjoining defendant from commencing subsequent proceeding in Nevada).

[8] Dalia's contention that the Orly Trust is not a party to this action (see Dalia Brief in support of Motion to Dismiss) is meritless.  Orly is prosecuting this action on behalf of the Orly Trust, a trust formed in and under the laws of New York, precisely because Dalia is acting against the interests of Orly and the Orly Trust, despite Orly's requests that Dalia fulfill her fiduciary duties to Orly and the Orly Trust.  See Statement of Facts; Orly Aff. ¶¶ 2-13; Siegel-Baum Decl. ¶¶ 2-19.

case in her chosen forum before contrary rulings in Delaware make relief in this Court meaningless. Only this Court can provide Orly with the relief she seeks and deserves. Orly Aff. ¶ 16. For this additional reason, the Court should immediate enjoin Dalia from continuing her Delaware DJ Action.

Finally, Dalia should not be able to prosecute the Delaware DJ Action because Dalia should not be permitted to act against beneficiary Orly's interest while an action for Dalia's removal is pending. See Surrogate Court Petition (Siegel-Baum Decl., Ex. M). Indeed, to restrain Dalia during the pendency of the Surrogate Court proceeding, the Surrogate Court issued restraints preventing Dalia from taking any action to "affect the Orly Trust's interest in" the Orly Trust TRI Shares without giving Orly at least ten (10) days advanced notice of any such action. See Siegel-Baum Decl. Ex. N (signed Order to Show Cause), Ex. O (signed stipulation). Not only did Dalia fail to give Orly any notice of her plans to commence the Delaware Action, but Dalia continues to ignore Orly's express instruction to Dalia protect the Orly Trust's interest in the Orly Trust TRI Shares. See Siegel-Baum Decl. ¶¶ 5-11 and Ex. J (January 10, 2009 Letter). Allowing Dalia to prosecute the Delaware Action only further undermines the very Orders and Restraints meant to protect Orly from such misfeasance by Dalia. For this reason too, Dalia should be enjoined from prosecuting the Delaware Action.

## II.    THIS COURT SHOULD STOP DALIA FROM COLLATERALLY ATTACKING THIS COURT'S AUTHORITY AND IRREPARABLY HARMING ORLY THROUGH DUPLICATIVE LITIGATION

New York courts have the power to enjoin a defendant from prosecuting a foreign proceeding to protect the authority and dignity of the New York Courts:

> The plaintiff evidently expects to engage the defendant in an unseemly race to judgment in the two courts. What is being challenged here, therefore, is not the dignity and authority of the Connecticut Court, but of this Court."

12

Hon, 624 N.Y.S.2d at 554 (emphasis added).  This power to enjoin also exists as a matter of

equity to protect the rights of its litigants where a subsequently filed action would damage a

plaintiff's rights in the earlier filed action:

> In our opinion there is a sufficient and immediate necessity for
> equitable intervention by our courts to protect the marital status of
> the wife domiciled in New York. The failure of equity to act at the
> earliest opportunity when called upon to do so might result in
> irreparable harm to the domiciliary party who invokes its
> protection. Certainly there is every reason for a wife in plaintiff's
> position to fear the result of a foreign divorce proceeding
> prosecuted by the husband. It is difficult for her to determine
> whether she should go to Nevada, if possessed of means to do so,
> and there contest the *bona fides* of her husband's claim of
> domicile. Such procedure would entail the risk of acquiescing in
> the jurisdiction of the Nevada courts. The alternative risk in
> staying quiescent at home involves the possible inability to procure
> later the proof she now has to establish the husband's lack of bona
> fide domicile in the foreign jurisdiction.

Pereia, 70 N.Y.S.2d at 768 (emphasis added); see also Browne, 385 N.Y.S.2d at 986 (preventing

defendant from prosecuting action in Texas where a Texas judgment would prejudice plaintiff's

rights in New York proceeding); Lafferty, 663 N.Y.S.2d at 109 (preventing defendant from

seeking a sister state ruling that would make New York decision ineffectual); Palmer, 52

N.Y.S.2d at 383 (same).  Indeed, the Delaware Chancery Court did not hesitate to impose an

anti-litigation injunction against Orly, to prevent any duplication of effort and challenge to its

authority in the New York Courts.  See Orly Aff. ¶¶ 14-16.  This Court should adopt the same

precaution, and stop Dalia's transparent attempt to forum-shop these matters from New York.

By filing the Delaware DJ Action, Dalia improperly seeks to "engage [Orly] in an

unseemly race to judgment in the two courts" (Hon, 624 N.Y.S.2d at 554) and irreparably and

prejudice her rights in this proceeding (Pereia, 70 N.Y.S.2d at 768).  Dalia's Delaware DJ Action

seeks to preempt this Court's determination of who owns the TRI Shares, and prevent this

Court's reformation of the Stipulation of Settlement or consideration of TPR's prior agreement

to do all that is necessary to effectuate the transfer of the TRI Shares to the Orly Trust, the Sagi Trust, and Arie.  See October 2004 Agreement (New York TRI Action Complaint ¶ 50 and attached Ex. B).  As a matter of equity, the Court need not wait until Orly is actually foreclosed, in whole or in part, from prosecuting her action in this Court, but may (and should) act now and enjoin Dalia's Delaware DJ Action.

**III.   THE COURT SHOULD ENJOIN DALIA FROM COMMENCING ANY FURTHER DUPLICATIVE ACTIONS**

Not only does the Court have the power to enjoin Dalia from prosecuting the Delaware DJ Action, it also has the power to prevent Dalia from commencing new actions:

> Granting the preliminary injunction requested by the wife would do no more than maintain the status quo of the parties until the bona fides of the husband's alleged foreign domicile are determined in the main action.  To permit the husband to institute divorce proceedings in Nevada would place his wife in an unfair position of imminent peril….she would then be placed on the horns of a dilemma, have the option of either sitting idly by while her marriage is purportedly dissolved in Nevada, keeping for herself what may be an illusory right to attack the decree at a later time, or of appearing in Nevada, at great expense, and placing all her marital rights at the mercy of a court ostensibly foreign to every aspect of their marital domicile and relationship.
>
> Under the circumstances, a preliminary injunction is proper and plaintiff may maintain her action for a permanent injunction.  This is true, despite the fact that there is no matrimonial action pending presently between the parties.

Martin, 309 N.Y.S.2d at 479-80 (internal citations omitted).  Pending a final determination by this Court in the New York TRI Action, Dalia should be enjoined from commencing any new actions as Trustee of the Orly Trust addressing the same subject-matter.

14

## **CONCLUSION**

For each and every one of the foregoing reasons, this Court should grant Orly's motion for an Order: (i) enjoining Dalia from prosecuting the Delaware Action; and (ii) enjoining Dalia from commencing any new actions as Trustee of the Orly Trust concerning the subject-matter of the operative Complaint in this action.  Plaintiff Orly Genger also respectfully requests that the Court grant her such further and different relief as the Court deems just and proper.

Dated:   New York, New York
        October 25, 2011

Respectfully submitted,

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
     Yoav M. Griver
     Bryan D. Leinbach
     Attorneys for plaintiff Orly Genger
     575 Lexington Avenue
     New York, New York 10022
     (212) 223-0400

Of Counsel
William B. Wachtel
Wachtel & Masyr LLP
One Dag Hammarskjold Plaza
885 Second Avenue
New York, New York 10017
(212)909-9595

15