# EXHIBIT T

```
 1

 2       SUPREME COURT OF THE STATE OF NEW YORK
         COUNTY OF NEW YORK:  CIVIL TERM:  PART:  12
 3       ------------------------------------------X
         ARIE GENGER and ORLY GENGER, in her
 4       individual capacity and on behalf of
         THE ORLY GENGER 1993 TRUST,
 5
                            Plaintiff(s),
 6                                               INDEX NO.
                       -against-                 651089/10
 7
         SAGI GENGER, TPR INVESTMENT ASSOCIATES,
 8       INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST,
         ROCHELLE FANG, individually and as trustee
 9       of THE SAGI GENGER 1993 TRUST, GLENCLOVA
         INVESTMENT COMPANY, TR INVESTORS, LLC.,
10       NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
         JULES TRUMP, EDDIE TRUMP and MARK HIRSCH,
11
                            Defendant(s).
12       ------------------------------------------X
         SAGI GENGER, individually and as assignee of
13       THE SAGI GENGER 1993 TRUST, and TPR
         INVESTMENT ASSOCIATES, INC.,
14
                            Cross-Claimants, Counterclaimants
15                          and Third-Party Claimants,

16                     -against-

17       ARIE GENGER, ORLY GENGER,
         GLENCOVA INVESTMENT COMPANY,
18       TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
         NEW TR EQUITY II, LLC., JULES TRUMP,
19       EDDIE TRUMP, MARK HIRSCH,
         TRANS-RESOURCES, INC., WILLIAM
20       DOWD, and THE ORLY GENGER 1993 TRUST,

21                          Cross-Claim, Counterclaim and/or
                            Third-Party Defendants.
22       ------------------------------------------X
                            80 Centre Street
23                          New York, New York 10007
                            March 25, 2015
24
         B E F O R E:
25
         THE HONORABLE BARBARA JAFFE,
26                                    J U S T I C E
```

*Eric Allen*
*Official Court Reporter*

2

**A P P E A R A N C E S:**

MITCHELL, SILBERBERG & KNUPP, LLP
Attorneys for Arie Genger
12 East 49th Street
New York, New York 10017
BY:  PAUL D. MONTCLARE, ESQ.


ZEICHNER ELLMAN & KRAUSE, LLP
Attorneys for Plaintiff Orly Genger
1211 Avenue of The Americas
New York, New York 10036
BY:  YOAV M. GRIVER, ESQ.


JUDITH LISA BACHMAN, ESQ.
Attorney for Defendant Dalia Genger
254 South Main Street
New City, New York 10956


MORGAN, LEWIS & BOCKIUS, LLP
Attorneys for Defendant TPR Investments
101 Park Avenue
New York, New York 10178
BY:  JOHN DELLAPORTES

1

2          THE COURT:  So, this is your motion,

3   Ms. Bachman.

4          MS. BACHMAN:  It is, your Honor.

5          Good morning.

6          THE COURT:  Good morning.

7          MS. BACHMAN:  So, this motion has been pending

8   for a long time, so I want to make sure that the Court

9   is aware of sort of the context in which our --

10          THE COURT:  What happened in surrogates?

11   Nothing yet from --

12          MS. BACHMAN:  It has not -- Dalia is still the

13   trustee.  The court has required further proceedings

14   with regard to making sure that the Sagi Trust is

15   included in the matter, so it remains at the status quo

16   that Dalia is still the trustee.

17          THE COURT:  Do you know when -- is there any

18   clue as to when that case is going to be decided?

19          MS. BACHMAN:  I do not know, your Honor.

20          MR. GRIVER:  Your Honor, the only relevant

21   happening, I think, in the case, is that the surrogate

22   court appointed a guardian for the children who are the

23   remainder -- continuing remainderment for the Sagi

24   trust and he filed, I believe last week, position

25   papers saying that he agrees with our position that

26   Dalia should be removed as trustee and that she has

1

2      violated her obligations.

3            THE COURT:  Okay, but that's not part of the

4      record before me right now.

5            MR. GRIVER:  That is -- no.  The remainderment

6      for the -- excuse me.  The remainderment for the Orly

7      Trust.

8            THE COURT:  Yes.  That I understand.

9            MR. GRIVER:  We can certainly file it with the

10     Court.  We think it is a subsequent document that has

11     relevancy to these proceedings if your Honor thinks so.

12           MS. BACHMAN:  And, obviously, that issue hasn't

13     been adjudicated and, as the Court noted, is not part

14     of the record.

15           So, with that caveat in mind, I think it is

16     important to understand the context of what's happened

17     here.

18           When we brought this motion, I think, back in

19     August of last year, we had not yet seen the settlement

20     agreement and the Federal Court had not yet opined on

21     the effect that they believed that the settlement

22     agreement had on what Orly gained from the Orly trust

23     shares.  So, as part of this motion, I have included

24     Judge Keenan's two decisions which opine and conclude

25     that the settlement agreement is a monetization of

26     Orly's -- the Orly Trust shares.  Essentially, she

1

2          traded the trust shares as part of the settlement and

3          acknowledged that the Trump Group is the owner --

4               THE COURT:  Was it in Keenan's decision or was

5          it Forest's?

6               MS. BACHMAN:  I apologize, thank you.  Yes,

7          Forest.  I could tell by your face that I had gone

8          astray, so I appreciate it.

9               Judge Keenan's decision --

10              THE COURT:  No, Judge Forest.

11              MS. BACHMAN:  Sorry, Judge Forest's decision.

12         Delete Keenan from the record.

13              So, based on that decision, it is now our

14         understanding with that decision that the settlement

15         agreement was basically the exchange:  The Orly Trust

16         interest in the shares for a whole bunch of money.

17              The Trump Group had been consistent before this

18         Court in acknowledging that they viewed the settlement

19         as the settlement of the interest of the Orly Trust

20         shares and that it was an exchange of money for those

21         shares.  They effectuated that and acknowledged that by

22         encouraging and asking the Delaware chancery court to

23         dismiss and acknowledge that the shares now belonged to

24         the Trumps.

25              Orly's attorneys have taken somewhat interesting

26         turns along the way.  Before this Court, when this

 1

 2      Court was hearing the issue of whether it should so

 3      order the settlement, Mr. Griver, I believe, argued

 4      that, no, we are not settling the trust claims and, in

 5      fact, quote, "Dalia can pick up the cudgel."

 6              The Court said in it's decision, look, I can't

 7      tell whether the trust shares -- whether the trust

 8      claims are dismissed or not as part of the settlement

 9      and until I get clarification, you accurately stated, I

10      believe, I cannot tell who the settlement proceeds

11      belonged to.  I can't tell whether they belong to the

12      trust or to Orly individually.  So, the Court invited

13      the parties to clarify who they viewed as the settling

14      parties and whether the trust had dismissed its claims

15      or not.

16              None of the settling parties acceded to the

17      Court's invitation and with that ambiguity, we were

18      left to protect the interests of the trust.  We brought

19      this motion seeking first for Dalia to be substituted

20      in if claims remained since Orly has stepped back and

21      said that she is no longer prosecuting the case as a

22      derivative plaintiff.  And under well-settled New York

23      law, if a derivative plaintiff is no longer prosecuting

24      the action on behalf of the principal, then it is

25      appropriate for a party to be substituted who has an

26      actual interest in protecting that principal.  That

1

2      would be, obviously, the trustee of the trust.

3              Likewise, as a second branch and perhaps now

4      more importantly, we simultaneously moved for the

5      settlement proceeds to be paid into court pending an

6      allocation and determination of who that money belongs

7      to and that's why we are before you today.

8              We now have seen the settlement agreement and it

9      seems to confirm and be consistent with the Trump

10     Group's position that they intended to and did settle

11     all of the claims including, most importantly, the

12     trust claims and at the end of the day that's what they

13     bought and paid for:  The trust shares.  And if they

14     bought and paid for the trust shares, the money belongs

15     to the trust.

16             Thank you.

17             MR. ALLINGHAM:  Your Honor, I don't know who

18     should speak next, but I think it would be helpful I

19     should speak next to make clear submissions.

20             MR. GRIVER:  No objection.

21             MR. ALLINGHAM:  Tom Allingham for the Trump

22     Group.

23             The settlement agreement settles claims.  It

24     doesn't buy shares.  The shares had already been

25     purchased as the Delaware court has found, pursuant to

26     an agreement that was entered into back in 2008 and the

 1

 2        closing on those shares was 2012 or '13, '11, whenever.

 3        Those shares had been purchased a long time ago.  There

 4        remained claims of the Orly trust against the Trump

 5        Group and that's what was settled in the settlement

 6        agreement.  We paid money for a release of claims that

 7        Arie, Orly and the Orly Trust had against the Trump

 8        Group and that's what we paid the money for, so that's

 9        point number 1.

10        Point number 2:  I think this is an unusual

11        situation, at least in my experience.  The moving party

12        now agrees with the position that we've taken since the

13        settlement agreement was entered into in June of 2013

14        that among the claims that we purchased a release of,

15        among the claims that we settled were the claims of the

16        Orly Trust and so the relief that is sought -- there

17        were two forms of relief sought in the motion, as

18        Ms. Bachman said.  One was, "I want to intervene to

19        pursue these claims."  That form of relief we oppose.

20        Because those claims have now, as conceded, I think, by

21        everybody -- everybody agrees that they were released,

22        there are no claims currently pending and, in fact,

23        there are no claims that could be pending into which

24        Dalia could intervene.  So, the motion --

25        THE COURT:  There is nothing to --

26        MR. ALLINGHAM:  Correct.  There is nothing

1

2      there, nothing to intervene in, so the motion to

3      intervene should be denied.

4            THE COURT:   It's a motion to be substituted.

5            MR. ALLINGHAM:   To be substituted.   I think of

6      it as an intervention motion, but, yes, your Honor.

7            And I don't think that if you look at the

8      papers, anybody really disputes that.   In Dalia's

9      brief, she says it has now been definitively revealed

10     that Orly settled the Orly Trust's claims against the

11     Trump Group.   In the Sagi submission, not a brief but

12     an affirmation from Mr. DellaPortas, it's the same

13     thing:   "Having finally seen the settlement agreement,

14     it is eminently clear that there is no cudgel for Dalia

15     to pick up.   The claims" -- and these are the claims of

16     the Orly Trust -- "were released, as Mr. Allingham had

17     correctly told the Court in his June 2013 letter."

18            So, where does that leave us?   That leaves us

19     with the second form of relief, which is should any

20     form of relief be entered against the settlement

21     proceeds that have either -- that have either been paid

22     or may in the future be paid pursuant to the settlement

23     agreement.

24            With respect to the 18 or so million dollars --

25     I think it's actually 17 and a quarter million dollars,

26     but the money that's already been paid in cash, we

1

2      don't have it.  We have no claim to it.  We take no

3      position on that money.  The Court may or may not have

4      jurisdiction to enter relief against whoever has got

5      that money, but we don't know who it is.  We know who

6      we paid it to, but we don't know who has the money now.

7           With respect to the remaining settlement

8      proceeds that may be paid in the future, that is in the

9      form of two notes; each in the principal amount of 7

10     and a half million dollars.

11          There are a number of conditions that may affect

12     the maturity date of those notes.  They have a nominal

13     maturity date of June of 2016 and June of 2017, but

14     they could be accelerated or extended.

15          Also, we have a contractual right to set off any

16     unpaid indemnification amounts under the settlement

17     agreement.  In the settlement agreement, we paid not

18     only for releases from Arie, Orly and the Orly Trust,

19     but we also paid -- so that's peace from those three

20     parties -- but we also paid for an indemnification from

21     Arie, Orly and the Orly Trust against any defense

22     costs, settlement payments or judgments in a broad

23     array of actions that could be brought by any Genger

24     family member.  So although we couldn't buy complete

25     peace, we tried to buy an insurance policy against the

26     peace that remained out there.

1

2          So, we have a setoff right against -- we have a

3     contractual obligation to pay on those notes.  When

4     that will come due is determined by a lot of factors.

5     When they come due, we have a contractual right of

6     setoff against the $15 million face amount of those

7     notes.

8          And so, with respect to the future payments,

9     what I would say is this:  No payment is due now, so I

10    think any relief on the future payment would be

11    premature.

12         To the extent any relief were to be entered now

13    as to these future payments, it shouldn't be entered

14    against the Trump Group which has a contractual

15    obligation to pay the payee.  It should either be

16    entered in the nature of an in rem remedy against the

17    notes themselves, deliver them to you or whatever, or

18    it should be entered and directed at the payee that

19    we're contractually obligated to pay, rather than to

20    direct it to the Trump Group which would abrogate our

21    contractual obligation to pay under the note.

22         So that's our position.

23              THE COURT:  Thank you.

24              MR. ALLINGHAM:  Thank you, your Honor?

25              THE COURT:  Who is next?  You don't have to

26    stand, Mr. Griver.

1

2          MR. GRIVER:  Thank you, your Honor.  I am

3     sometimes better when I stand.

4          A lot of times, this case has become somewhat

5     surreal, but I think this motion takes the cake.  There

6     is a museum in Cairo, Egypt called the October War

7     Museum that is dedicated to the proposition that Egypt

8     won the 1973 Yom Kippur war.  It looks like a museum.

9     You go in, there are exhibits on the second floor, you

10    can watch a film on the third floor.  There is a

11    diorama -- it's really nice.  It is a moving diorama,

12    360 degrees, all dedicated to the idea that Egypt won

13    that war; right?  Only problem is it's not true.

14          So, you go to someone who is at the museum, you

15    know, a guide and you say, well -- but Egypt lost the

16    war.  And he says, no, no, but look at that piece of

17    paper, look at that newspaper article where it says it

18    won.  Look at this piece of shrapnel.  Look at this

19    tank we captured from the Israelis; all of this proves

20    that we won; right?  And you can buy T-shirts and

21    everything and it looks real until you really look at

22    it and you realize that they are only talking about the

23    first day of the war and they completely ignore 99

24    percent of what happened; okay?

25          Mr. Allingham gets up here and says, oh, well,

26    we settled with the Trump -- we settled with the Orly

1

2          Trust; right?  Well, you know what?  You have to look

3          at the language of the CSA because the Orly Trust is

4          expressly excluded from the settling parties.

5          Mr. Allingham tried to get the trust claims included

6          and the Orly Trust included --

7               THE COURT:  Which Orly entities settled?  There

8          is three in all, I take it?

9               MR. GRIVER:  No.  There is the AG Group settled

10         so the Brosers settled, Arie settled --

11              THE COURT:  I don't consider them -- the Orly

12         people are Orly individually, Orly as beneficiary of

13         the trust and the Orly Trust; is that right?

14              MR. GRIVER:  Orly settled and it says it right

15         there:  Orly Genger in her individual capacity and in

16         her capacity as beneficiary of the Orly Genger 1993

17         trust.

18              THE COURT:  And as beneficiary.

19              MR. GRIVER:  And as beneficiary.

20              But the Orly Trust itself is expressly excluded

21         from the A.G. Group settling parties and is expressly

22         defined as a member of the nonsettling Sagi Group.

23              THE COURT:  Is that your understanding,

24         Mr. Allingham?

25              MR. GRIVER:  That is Page 3, by the way.

26              MR. ALLINGHAM:  It is, your Honor.  That is the

1

2      way the agreement reads.

3            When Justice Feinman in --

4            THE COURT:  That's the end of it.  So the Orly

5      Trust is not settled.

6            MR. GRIVER:  That is the language that he signed

7      in exchange.

8            MR. ALLINGHAM:  It's more complex than that.

9            MR. GRIVER:  You know what else is in that?  Any

10     changes to that have to be in writing, agreed to by all

11     the parties, and we don't agree and there is no

12     writing.  He is talking about what he wanted and there

13     is also a -- where everything, all prior agreements, et

14     cetera, are merged.  There is a merger clause in there,

15     as well.

16           THE COURT:  Oh, no, do I perceive another action

17     or motion?

18           MR. GRIVER:  No, I don't believe so, your Honor,

19     because here's what also happened.  There was a second

20     amended stipulation of dismissal where we crossed out,

21     by hand, because it was mistakenly put in -- crossed

22     out by hand and your Honor was concerned about it and

23     that's why it became the second amended stipulation of

24     dismissal because that language was taken out.  And the

25     language that was taken out was any idea that the Orly

26     Trust settled the claims as part of that confidential

1

2      settlement agreement, the Orly Trust was removed and,

3      indeed, the Orly Trust remained -- the claims of the

4      Orly Trust remained, specifically in that second

5      amended stipulation of dismissal, which allowed the two

6      injunctions -- the injunctions against the Trump Group

7      and the injunctions against everybody else, including

8      Dalia Genger -- to pursue her claims in Delaware --

9              THE COURT:  So you agree with Ms. Bachman on

10     that; that the Orly Trust claims remain and --

11             MR. GRIVER:  The Orly Trust claims remain --

12             THE COURT:  So the only issue remains, of

13     course, whether Dalia should be substituted, which I

14     take it -- but you say the trust claims remained --

15     does everybody agree?

16             MR. GRIVER:  No, it remained.  The second

17     amended stipulation of dismissal, which dismissed

18     Orly's claims as an individual and as a beneficiary is

19     what happened in this court.  As part of that

20     stipulation, the claims of the Orly Trust were not

21     settled -- were not dismissed and Ms. Bachman and Dalia

22     were permitted to reinvigorate a lawsuit in Delaware

23     that they had commenced claiming the right to the

24     shares and go moving against the Trump Group and TPR,

25     et cetera; right?

26             We had gotten those stayed previously because

1

2      our concern was that Dalia would not vigorously pursue

3      those claims on behalf of the Orly Trust.

4           Dalia went down to Delaware, immediately settled

5      with TPR and with the Trump Group.  Now, if her claims

6      had already been settled two months before, then what

7      was she doing down in Delaware?  But she went down to

8      Delaware.  She didn't come in at the time and say, hey,

9      wait a second, wait a second, I want my moneys.  No.

10     She went down to Delaware, settled with everybody else,

11     TPR and the Trump Group, and it was that settlement

12     that caused the 1st Department to dismiss the claims

13     here because they said there is nothing left because of

14     the Delaware stipulation.

15          So, Dalia has already taken care of it and

16     because of that there are no claims left.  The Court of

17     Appeals has so ruled, the 1st Department has so ruled

18     that the fact that we are here arguing about her

19     attempt to substitute herself in when she settled

20     already as a trustee -- she gets one chance to settle.

21     We gave you the Delaware stipulation.  That's what she

22     says.  She makes findings of fact that are -- that help

23     Sagi.  She makes statements that help Sagi and then

24     finally she settles all of her claims on behalf of the

25     trust claiming to properly represent the trust.

26          Now, that's something that we are going to raise

1

2          up in the surrogate's court.  That is another example

3          of Dalia misusing her power as trustee, but that has no

4          bearing on this.  There are no claims left because the

5          Orly trust settled her claims in Delaware and Orly

6          individually and as beneficiary settled the claims with

7          the Trumps in the confidential settlement agreement.

8               The money that they are trying to get now is

9          above the $10 million that the Delaware settlement

10         caused to be given to TPR and that's the Keenan

11         decision.  The Keenan decision was, well, now that the

12         Delaware stipulation exists and the Orly Trust is

13         decided, that everything's okay with the Orly Trust,

14         well, then the sale of the shares back in 2008, the

15         proceeds go to TPR.  It's in our papers.

16              THE COURT:  I am shaking my head nodding just to

17         the extent that I understand what you are saying.

18              MR. GRIVER:  Right, okay.

19              Very simply, Orly settled with the Trumps in

20         June.  The Orly Trust settled with the Trumps in

21         August, two months later.

22              Now, we go to -- and the main point, your Honor

23         is there are no claims left and since there are no

24         claims left, her substitution motion just fails.  It's

25         that simple.

26              Then we go to the second part of her claim,

1

2       which is CPLR 2701.  She wants the proceeds of Orly's

3       settlement with the Trumps to be paid into court and

4       she just can't do that.  Most attorneys, I think, would

5       simply read the language of the statute to determine

6       that the language of the statute bars their ability to

7       bring a motion and stop right there, but that's not

8       what happened here.  What happened here is that they

9       proceeded nonetheless.  And the motion to have the

10      proceeds paid in court doesn't work because under CPLR

11      2701, that CPLR provision, your Honor, is designed very

12      narrowly to take care and protect moneys that are the

13      subject of an action.  And there are three sub parts.

14           First of all, it has to be the subject of an

15      action.  The moneys that are the settlement with the

16      A.G. Group but not the Orly Trust are not part of the

17      2010 case which, in any event, no longer exists.

18           But you can go and look at each one of the

19      individual subparagraphs and see that it doesn't work.

20           The fourth one is if a third party is a trustee

21      and is holding the money, like the comptroller of the

22      -- the State comptroller.  The State comptroller has,

23      let's say, death benefits.  The person has died.  It is

24      claimed both by the beneficiary of the will and by the

25      ex-wife who is named in the policy for the death

26      benefits.  They are fighting over that specific sum of

1

2          money and the comptroller has to pay it to somebody so

3          he pays it into court on a monthly basis until the

4          court rules does widow A get it or widow B get it.

5          That's clearly not the situation here.

6                  The second one is where there are special

7          circumstances that make it desirable that payment be

8          made to -- that payment be made into the court instead

9          of two the parties.  Well, as Mr. Allingham correctly

10         noted, some of the money has already been paid, some of

11         the money will be paid and there are no special

12         circumstances here that should delay any of that.

13         There is no evidence that they have come in that said

14         that there is a special circumstance that requires the

15         court to protect the moneys.  There is not even a claim

16         against those moneys in a court of law.

17                 Third is the situation where ownership of the

18         property will depend on the outcome of the pending

19         action.  That also is inapplicable here.  There is no

20         pending action, number one.  And, number two, even if

21         there was, you can look at all the counterclaims, all

22         of the cross-claims, all of the original claims, none

23         of it has to do with the confidential settlement

24         agreement so it simply does not apply.

25                 And it can't serve as a legal basis for what

26         Dalia is attempting to do.  She made her own decision

1

2    to settle and she settled it as she saw fit; in a way

3    that was destructive to Orly and we'll take care of

4    that later, but in a way that she decided to settle

5    those claims.  There is a stipulation in Delaware and

6    they ignore that.  They ignore the second amended

7    stipulation of dismissal in this court and what

8    happened -- the fact that they went ahead and then used

9    that stipulation to say, oh, there are still claims for

10   Orly Trust.  Now they are claiming that the Orly Trust

11   claims didn't even exist at the time that they went

12   into Delaware and how is that possible?  And

13   Mr. Allingham chooses to ignore the actual language of

14   the confidential settlement agreement which he cannot

15   do because he negotiated that language, he chose to

16   have his client sign that language and for him to come

17   in and say well let me explain to you how the language

18   should be ignored is improper, entirely so.

19           So, I am going to sit down and say nothing else.

20   Thank you.

21           MR. MONTCLARE:  Thank you, your Honor.  Paul

22   Montclare for Arie Genger.

23           I have just a few things to say.  I have to say

24   I agree with everything that Mr. Griver said.  It's not

25   to have him back in the courtroom.

26           It seems to me that we can address this really

1

2          pretty simply.  There is no action for her to

3          substitute into.  I mean, how can you substitute into

4          an action that's been completely dismissed, has been

5          completely affirmed, there is now no leave-to-appeal

6          motion pending to the Court of Appeals.  She is going

7          to be substituted in for Orly who lost the case against

8          the Trumps who are no longer in the case.  I mean, that

9          should end the whole analysis.  I don't understand why

10         we need to go past that.

11              The issue with respect to the confidential

12         settlement agreement, on behalf of Arie Genger, we were

13         a party to that agreement and they want to come in and

14         interfere with our property rights by just saying, oh,

15         we want it paid into court.  What action is there to

16         deprive us of our property rights being brought by --

17              THE COURT:  Well, I think what Mr. Griver

18         mentioned in his list of subdivisions of 2701, the only

19         one that piqued any interest was special circumstances,

20         so what about that?

21              MR. MONTCLARE:  But there are no -- there has to

22         be an existing action, your Honor.  There is no

23         existing action.

24              THE COURT:  So that -- you still need an

25         existing action for there to be special circumstances.

26              MR. MONTCLARE:  Yes.  Otherwise what do we just

1

2          have people walking in off the street and into court

3          and asking for an application to pay it into court?

4               THE COURT:  It happens all the time.

5               MR. MONTCLARE:  They could have early on tried

6          to get an attachment of that.  They could have done a

7          lot of things but the procedural mechanism they have

8          chosen is a little unusual.

9               But it's not grounded in anything.  I think --

10         and also, it proceeds from a false assumption of what

11         their -- what they conceded in Delaware, which I am not

12         going to repeat; why we settled with Mr. Allingham's

13         clients in Delaware at a time when there are open

14         issues that made settlement possibility.  Much to my

15         great disappointment, that is no longer the case.  That

16         case is over against the Trumps.  It's over.

17              And the reason she wants to substitute in is to

18         basically to sue the Trumps.  And that makes no sense

19         at all to me.

20              THE COURT:  Okay, thank you.

21              I think --

22              MR. DELLAPORTAS:  Very briefly, your Honor.

23              Three quick points:

24              Number 1, Orly Genger brought claims in this

25         case on behalf of the Orly Genger 1993 Trust.

26              Number 2, Orly Genger and her father got or are

1

2          going to get $32.3 million in settlement of those

3          claims and, number 3, those claims are no more and we

4          join in Ms. Genger's -- Mrs. Dalia Genger's position

5          that the money should be paid into court.

6                  Subject to that, we respectfully disagree with

7          the comments of Mr. Montclare and Mr. Griver, except to

8          the extent that Mr. Griver described the Cairo museum,

9          which I have been to as well and I think it is an

10         accurate description of it.

11                 And with that, we rest on our papers.

12                 THE COURT:  Thank you.

13                 MS. BACHMAN:  May I add something, your Honor?

14                 THE COURT:  Sure.

15                 MS. BACHMAN:  With regard to, I think, the

16         Court's very pointed question to Mr. Griver and

17         Mr. Allingham, who were the settling parties?  And I

18         think the Court described, at least conceptually, three

19         possibilities:  Orly as beneficiary and Orly

20         individually --

21                 THE COURT:  Those were settled.

22                 MS. BACHMAN:  Apparently.  Apparently that's

23         what Mr. Griver is saying.

24                 THE COURT:  Signed, sealed, delivered.  You saw

25         the agreement.

26                 MS. BACHMAN:  I have now seen the agreement.

1

2          The mystery party is what happened to the Orly

3     Trust.

4          THE COURT:  And that was in Delaware.  Kaputski

5     (phonetic) in Delaware; no?

6          MS. BACHMAN:  As I understand it, this case was

7     a derivative case presently pending today.  That's what

8     Orly described in her complaint, her claims to be.  She

9     is bringing this action, quote, "on behalf of the Orly

10    Trust as beneficiary of the Orly Trust to protect her

11    interest thereunder."  Her claim, as I understand it --

12    and unfortunately you have had a longer tenure in this

13    than I have -- but as I understand, it were purely

14    derivative claims.  I understand that she said in the

15    caption Orly Genger individually and on behalf of the

16    Orly Trust but the real claims were with regard to what

17    was done with the Orly Trust shares.  For them to say

18    she settled as a beneficiary and somehow that's

19    different than the trust is a distinction without a

20    difference.  If you are a beneficiary, you are, I

21    believe, saying I have a derivative right to sue

22    because the trust is not protecting my interest as the

23    beneficiary.

24          I don't understand how you can split that

25    difference and say, no, the beneficiary is something

26    different than the trust.  They have to be merged and

1

2          that's what she did in her complaint.

3                And the entire settlement agreement is replete

4          with all of those references.

5                It says, in defining who the A.G. Group is, that

6          Orly Trust, in quote, "all her capacities."  It doesn't

7          say in her individual capacity --

8                THE COURT:  What about the second agreement?

9          Are you focusing on the second?

10               MS. BACHMAN:  I am looking at what I believe to

11         be the actual -- the CSA.

12               THE COURT:  The one where there is a writing, "I

13         wrote in" or something.

14               MS. BACHMAN:  Correct.

15               THE COURT:  I'm on Page 1 of that.

16               MS. BACHMAN:  I am actually looking at the

17         settlement agreement itself, what she actually did.  On

18         Page 1 of that settlement agreement, it says -- it

19         defines Orly as "Orly Genger in all capacities."

20               So, while they may be playing convenient word

21         games here -- I hope they are not -- but the settlement

22         agreement itself belies what I believe Mr. Griver is

23         trying to convince this Court of; that somehow there is

24         this distinction, this magical distinction that he is

25         now conveniently drawing which they weren't drawing in

26         the settlement agreement itself.

1

2          THE COURT:  Even assuming you are right, which I

3     am not sure you are, but assuming you are right, so

4     what?  If it was all settled, if two of the entities

5     settled in one way or the other and then Dalia went

6     down and settled with the Trump Group and TPR in

7     Delaware, what's left and why is there something left?

8     That's what I want to know.

9          MS. BACHMAN:  At least as I understand the

10    context of the Delaware settlement, it was motivated --

11    and if you look at the confidential settlement

12    agreement, it calls for the settlement of that Delaware

13    case.  It says go settle that case.  Orly --

14         THE COURT:  It doesn't say go settle it.  It

15    says something else; right?

16         MR. MONTCLARE:  Cooperate.

17         MR. GRIVER:  Cooperate.

18         MS. BACHMAN:  It says Orly will cause.

19         THE COURT:  Cause.

20         MR. GRIVER:  No, Orly will take efforts to

21    cause.

22         THE COURT:  Something like that.  It's a little

23    squishy.

24         MS. BACHMAN:  A little squishy, but the concept

25    is clearly there.  If he wants to look at the words,

26    which I think he had a part in drafting, that was idea.

1

2          The idea was we're buying peace, as Mr. Allingham said.

3          We're doing the best we can.  We don't want to hear

4          from you again.  Go away and make sure, as best you

5          can, this all goes away.

6                    THE COURT:  So why is something left?  That's

7          what I don't understand.

8                    MS. BACHMAN:  A, it's unclear if something is

9          left or not.  But even if it's not, fine, they settled

10         those cases.  They settled those claims and they got

11         paid for it.  If she brought this case as a derivative

12         plaintiff and she got paid for her derivative claims,

13         it is black letter law that that money, those

14         settlement proceeds on behalf of the derivative

15         plaintiff go to the principal.  They don't belong to

16         the individual.

17                   THE COURT:  Aren't you too late?

18                   MS. BACHMAN:  How so?

19                   THE COURT:  It settled.

20                   MS. BACHMAN:  But the payment hasn't been made

21         yet.

22                   THE COURT:  I don't know.  It sounded like it

23         was.  And does it matter?  Does it matter that it

24         hasn't been paid?  Even if it hasn't been, the

25         agreement has been entered, it's -- is there a judgment

26         or something?

1

2          MR. ALLINGHAM:  Your Honor entered a stipulation

3     of dismissal and we have paid $17.25 million plus

4     interest and we are obligated on two more notes.

5          THE COURT:  As he said, it sounds like that ship

6     has sailed.

7          MS. BACHMAN:  There is $15 million that they owe

8     to the settling parties.  If you want to call that

9     spare change, I will take that change.  That's fine.

10          Mr. Griver talked about the fact that these --

11     the cases that I cited talk about a future stream of

12     payment; right?  He is talking about widows and orphans

13     getting paid in the future.  That is, by definition,

14     what this is.  We are talking about a future stream of

15     payment for claims that were settled.  Yes, the claims

16     were settled.  Mr. Allingham said repeatedly that he

17     bought peace.  The Orly Trust settled its claims under

18     the settlement agreement.  Otherwise, if -- as I

19     understand the Court's concern, if they settled the

20     claims, took all the money and we were not a party to

21     it, then they shouldn't have been in power to settle in

22     the first place.  They can't have it both ways.  They

23     can't settle the claims and take the money and then say

24     it's too late.  Either they settled the derivative

25     claims and money belongs to the trust or they didn't

26     settle the claims and those claims are out there and we

1

2          have the right to pursue them.

3                    THE COURT:  I'll read your papers because I am

4          not quite sure I get it.

5                    MR. GRIVER:  Your Honor, just very quickly.

6          Notice that she talks about the complaint.  She does

7          not talk about what happened in the settlement and she

8          misquotes the CSA.  The CSA is executed by the A.G.

9          Group and the Trump Group.  That's on Page 1.

10                    Two defined groups:  The A.G. group is

11          specifically defined to be Orly Genger in her

12          individual capacity and in her capacity as beneficiary

13          of the Orly Genger 1993 trust.  The Orly Trust is

14          expressly excluded and on Page 3 is included with a

15          group called the Sagi Group which identifies the

16          nonsettling parties.  It's very simple.  There is an

17          entire agreement clause.  We have to amend it only by a

18          writing signed by all of the parties, so that language

19          is what controls; not the complaint but the language of

20          the settlement.

21                    The second amended stipulation of dismissal,

22          Ms. Bachman wasn't here jumping up and down and saying,

23          hey, I have to be part of this because it's settling

24          the Orly Trust shares.  Instead, the Orly Trust was

25          specifically careted out and, in fact, Dalia, on behalf

26          of the Orly Trust, supposedly as the trustee, then

1

2          later went down to Delaware.  And she didn't say, hey,

3          you know what?  Good news.  All of my claims in this

4          case have been settled so see you later.  Bye.  She

5          went to the court and she said there is an existing

6          case, I have existing claims and here is the

7          settlement.  And when Orly went down and tried to get

8          involved in that settlement, then Dalia and her counsel

9          said, no, didn't listen to what Orly had to say and

10         then settled it against Orly's desires.

11              So for her to say, well, there is a provision

12         that says that Orly should attempt to get the Orly

13         Trust to settle, Orly wasn't involved in the

14         settlement.  She didn't cause the settlement in any

15         way, shape or form.

16              Please look at our papers and -- because our

17         papers are the only ones, the only ones to talk about

18         what actually happened; okay?  The rest of it, what

19         Ms. Bachman is talking about, she is talking about the

20         first day of the Yom Kippur war.  She knows the next

21         two weeks.  They may win this case in Egypt.  They will

22         not win in case before this Court.

23              MR. ALLINGHAM:  Your Honor, may I?

24              THE COURT:  If it's something you haven't

25         said --

26              MR. ALLINGHAM:  It's not something I have not

1
2      said.
3              What emerges from all of the arguments is that
4      everyone agrees that no claims remain for Dalia to pick
5      up, so the motion for substitution should be denied.
6              I agree with Mr. Griver that the Orly Trust
7      settled with the Trumps at some point.  He and I have a
8      disagreement about at what point.  Actually, we don't
9      even have a disagreement about at what point.  I
10     believe that the Orly Trust settled with the Trumps in
11     June in the settlement agreement.  I believe that the
12     Orly Trust settled with the Trumps in August in
13     Delaware --
14             THE COURT:  How can they do it twice?
15             MR. ALLINGHAM:  Your Honor, if you were in my
16     position and you had been involved in this litigation
17     as long as --
18             THE COURT:  I understand.
19             MR. ALLINGHAM:  I was looking for the
20     Delaware --
21             THE COURT:  It's belts and suspenders.
22             MR. ALLINGHAM:  -- the Delaware guarantee with
23     respect to title.  I was looking for whatever
24     protection I could get.
25             THE COURT:  Okay.
26             MR. ALLINGHAM:  Now, as to whether Orly could

1

2          settle as a beneficiary of the Orly Trust or

3          derivatively on behalf of the Orly Trust, Justice

4          Feinman, on January 3rd, 2013, found that Orly had

5          derivative standing to bring claims on behalf of the

6          Orly Trust.  I argued that she didn't.  I lost.

7          Justice Feinman found that she did and that ruling is

8          law of the case.

9                Orly had derivative standing to bring claims on

10         behalf of the Orly Trust, according to Justice Feinman.

11         In what capacity?  I can't think of any other -- there

12         may be someone, but I can't think of any other capacity

13         than as the beneficiary.  So I believed in June that

14         when we said she is settling individually and as

15         beneficiary of the Orly Trust, I got a release of the

16         claims that were made against me derivatively by the

17         Orly Trust.  But, as Mr. Griver says, in August we got

18         a release and dismissal from the Orly Trust in

19         Delaware.

20                THE COURT:  Thank you.

21                MR. ALLINGHAM:  What is clear, though, is that

22         we have a release and a dismissal of the Orly Trust

23         claims.  Everyone seems to agree to that and there are

24         no claims pending here to substitute it.

25                THE COURT:  So it seems, but I will read your

26         papers and I will keep an open mind and I will issue a

1

2          decision.

3                    It's your motion, so you will upload this

4          transcript in the E-Filing system.  I see I have a nice

5          file here.  If I don't have hard copies of memos,

6          affirmations, affidavits, I need them all due on or

7          before April 8th.  Exhibits can remain E-Filed.

8                    Thank you.

9                    MR. ALLINGHAM:  Thank you, your Honor.

10                   MR. DELLAPORTAS:  Thank you, your Honor.

11                        ***************

12   CERTIFIED THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
     OF THE ORIGINAL STENOGRAPHIC MINUTES IN THIS CASE.

13

14

15                    _____
                             ERIC ALLEN
16                      SENIOR COURT REPORTER

17

18

19

20

21

22

23

24

25

26