UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| RECOVERY EFFORT INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : |
| ZEICHNER ELLMAN & KRAUSE LLP, | : |
| WACHTEL MISSRY LLP, YOAV M. | : |
| GRIVER, and WILLIAM B. WACHTEL, | : |
| | : |
| Defendants. | : |

19 Civ. 5641 (VSB) (KHP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE MOTION OF DEFENDANTS
ZEICHNER ELLMAN & KRAUSE LLP AND YOAV M. GRIVER
<u>TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

**SULLIVAN & WORCESTER LLP**

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendants
Zeichner Ellman & Krause LLP and Yoav M. Griver*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT .......................................................................................1

OVERVIEW OF THE UNDERLYING LITIGATION ...................................................2

ARGUMENT ...................................................................................................................7

I      PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE
GRANTED ............................................................................................................7

      A.     PLAINTIFF TAKES CLAIMS SUBJECT TO THE SAME LIMITATIONS
TO WHICH THEY WERE SUBJECT WITH THE ORLY TRUST ......................8

      B.     PLAINTIFF'S MALPRACTICE AND OTHER TORT CLAIMS MUST BE
DISMISSED FOR LACK OF PRIVITY ................................................................8

      C.     IN PARTICULAR: PLAINTIFF'S NEW CONSTRUCTIVE FRAUD
CLAIM MUST BE DISMISSED ..........................................................................10

           1,     Plaintiff's claim fails because there is no fiduciary or special
relationship .............................................................................................11

           2.     Plaintiff fails to plead reasonable reliance .................................................12

           3.     Plaintiff's claim is duplicative .................................................................13

      D.     PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM MUST BE
DISMISSED .........................................................................................................14

           1.     Plaintiff's fiduciary duty claim must be dismissed as duplicative .............15

           2.     Plaintiff's Allegations of Misconduct and Damages Are Implausible
and Belied by the Documents and Record Upon Which it Relies .............15

      E.     PLAINTIFF'S AIDING AND ABETTING BREACH OF FIDUCIARY
DUTY CLAIM MUST BE DISMISSED ..............................................................16

      F.     PLAINTIFF'S AIDING AND ABETTING CONVERSION CLAIM MUST
BE DISMISSED ...................................................................................................17

      G.     PLAINTIFF'S BREACH OF CONTRACT CLAIM (INTENDED THIRD-
PARTY BENEFICIARY) MUST BE DISMISSED .............................................18

II      PLAINTIFF'S CLAIMS ARE BARRED BY THE RELEVANT STATUTES OF LIMITATIONS ................................................................................................................. 19

     A.     PLAINTIFF'S MALPRACTICE CLAIMS ARE UNTIMELY ............................ 19

     B.     ALL OF PLAINTIFF'S OTHER CLAIMS ARE ALSO UNTIMELY ................ 19

          1.     Plaintiff's breach of fiduciary duty and other torts are untimely ............... 19

          2.     Plaintiff's constructive fraud claim is untimely ......................................... 20

          3.     Plaintiff's breach of contract claim is untimely ......................................... 21

III.     PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL ................................................................................................ 21

CONCLUSION ...................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>[1]

**Cases**                                                                                     **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................7, 8

*Azzawi v. Int'l Ctr. for Dispute Resolution*,
    No. 16 Civ. 548 (KPF), 2016 WL 6775437, 2016 U.S. Dist. LEXIS 157712,
    (S.D.N.Y. Nov. 14, 2016).....................................................................................25

*Bastys v. Rothschild*,
    154 F. App'x 260 (2d Cir. 2005)..........................................................................19

*Berman v. Morgan Keegan & Co.*,
    No. 10 Civ. 5866 (PKC), 2011 WL 1002683
    2011 U.S. Dist. LEXIS 27867 (S.D.N.Y. Mar. 14, 2011).....................................17

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    No. 09 Civ. 9783 (RWS), 2013 WL 6484727,
    2013 U.S. Dist. LEXIS 174580 (S.D.N.Y. Dec. 9, 2013)......................................8

*Bronx Entm't LLC v. St. Paul's Mercury Ins. Co.*,
    265 F. Supp. 2d 359 (S.D.N.Y. 2003) ...................................................................8

*Caidor v. Chase Manhattan Bank*,
    No. 97 Civ. 0227 (KMW) (NRB),
    1998 U.S. Dist. LEXIS 4701 (S.D.N.Y. Jan. 30, 1998)..................................23, 25

*Carl v. Cohen*,
    55 A.D.3d 478, 868 N.Y.S.2d 7 (1st Dep't 2008)...........................................10, 14

*Chariot Plastics, Inc. v. United States*,
    28 F. Supp. 2d 874 (S.D.N.Y.1998) ....................................................................25

*Conestoga Title Ins. Co. v. ABM Title Servs.*,
    No. 10 Civ. 3017 (CM), 2012 WL 2376438,
    2012 U.S. Dist. LEXIS 86614 (S.D.N.Y. June 20, 2012) ......................................8

*Constantine v. Teachers Coll.*,
    448 F. App'x 92 (2d Cir. 2011)............................................................................22

*Corcoran v. N.Y. Power Auth.*,
    202 F.3d 530 (2d Cir. 1999) ................................................................................20

---

[1] Genger cases are indexed separately; Genger cases and unpublished cases are provided as courtesy copies.

*Daly v. Llanes*,
   30 F. Supp. 2d 407 (S.D.N.Y. 1998) ...................................................................................17

*Decker v. Nagel Rice LLC*,
   No. 09 Civ. 9878 (SAS), 2010 WL 2346608,
   2010 U.S. Dist. LEXIS 62042 (S.D.N.Y. May 28, 2010) .....................................................15

*E*Trade Fin. Corp. v. Deutsche Bank AG*,
   631 F. Supp. 2d 313 (S.D.N.Y. 2009) ...........................................................................11, 12

*Franzone v. Lask*,
   No. 14 Civ. 3043 (GHW), 2016 U.S. Dist. LEXIS 103366 (S.D.N.Y. Aug. 5, 2016)...........19

*Gordillo v. Bank of N.Y. Mellon Corp.*,
   No. 12 Civ. 0212 (DF), 2015 U.S. Dist. LEXIS 135664 (S.D.N.Y. Sep. 29, 2015)........19, 21

*Greenwich Life Settlements, Inc. v. Viasource Funding Grp., LLC*,
   742 F. Supp. 2d 446 (S.D.N.Y. 2010) ...............................................................................22

*Hanrahan v. Riverhead Nursing Home*,
   592 F.3d 367 (2d Cir. 2010) .............................................................................................22

*Hoffenberg v. Hoffman & Pollok*,
   248 F. Supp. 2d 303 (S.D.N.Y. 2003) ...............................................................................20

*Jiau v. Hendon*,
   No. 12 Civ. 7335 (PAE), 2014 U.S. Dist. LEXIS 18471 (S.D.N.Y. Feb. 12, 2014) .............10

*Johnson v. Priceline.com, Inc.*,
   711 F.3d 271 (2d Cir. 2013) ................................................................................................7

*Joyce v. Thompson Wigdor & Gilly LLP*,
   No. 06 Civ. 15315 (RLC) (GWG),
   2008 U.S. Dist. LEXIS 43210 (S.D.N.Y. June 3, 2008) ................................................13, 18

*Kotler v. Donelli*,
   528 F. App'x 10 (2d Cir. 2013) .........................................................................................22

*Latin Am. Fin. Grp., Inc. v. Pareja*,
   266 F. App'x 61 (2d Cir. 2008) ...........................................................................................9

*Manchanda v. Google*,
   No. 16 Civ. 3350 (JPO), 2016 U.S. Dist. LEXIS 158458 (S.D.N.Y. Nov. 16, 2016) .....22, 23

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.*,
   693 F. Supp. 2d 387 (S.D.N.Y. 2010) ...............................................................................20

*Matsumura v. Benihana Nat'l Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008) ..........................................................................11, 12

*Mazzaro de Abreu v. Bank of Am. Corp.*,
    525 F. Supp. 2d 381 (S.D.N.Y. 2007) ...................................................................................16

*McGriff v. Keyser*,
    No. 17 Civ. 8619 (KMK), 2019 WL 1417126,
    2019 U.S. Dist. LEXIS 54427 (S.D.N.Y. Mar. 29, 2019) ....................................................25

*Meskunas v. Auerbach*,
    No. 17 CV 9129 (VB), 2019 WL 719514,
    2019 U.S. Dist. LEXIS 26531 (S.D.N.Y. Feb. 19, 2019) ...............................................14, 17

*Murphy v. Morlitz*,
    No. 15 Civ. 7256 (VSB), 2017 U.S. Dist. LEXIS 154440................................................7, 20

*New York v. Mt. Tobacco Co.*,
    942 F.3d 536 (2d Cir. 2019) ............................................................................................ 22-23

*Nordwind v. Rowland*,
    584 F.3d 420 (2d Cir. 2009) .............................................................................................10, 15

*Petedge, Inc. v. Garg*,
    234 F. Supp. 3d 47 (S.D.N.Y. 2017) ............................................................................... 14-15

*Petrello v. White*,
    412 F. Supp. 2d 215 (E.D.N.Y. 2006) ...................................................................................13

*Roy v. Law Offices of B. Alan Seidler, P.C.*,
    284 F. Supp. 3d 454 (S.D.N.Y. 2018) ...................................................................................18

*Russell-Stanley Holdings, Inc. v. Buonanno*,
    327 F. Supp. 2d 252 (S.D.N.Y. 2002) ...................................................................................13

*Salichs v. Tortorelli*,
    No. 01 Civ. 7288 (DAB) (THK), 2004 WL 602784,
    2002 U.S. Dist. LEXIS 27238 (S.D.N.Y. Oct. 8, 2002)................................................. 13-14

*Senior Health Ins. Co. v. Beechwood Re Ltd.*,
    345 F. Supp. 3d 515 (S.D.N.Y. 2018) .............................................................................10, 11

*Stone v. Sutton View Capital, LLC*,
    No. 17 Civ. 1574 (VEC), 2017 U.S. Dist. LEXIS 202778 (S.D.N.Y. Dec. 8, 2017)............13

*Stuart v. American Cyanamid Co.*,
    158 F.3d 622, 626 (2d Cir. 1998) ..........................................................................................19

*Utts v. Bristol-Myers Squibb Co.*,
    226 F. Supp. 3d 166 (S.D.N.Y. 2016) ...................................................................8

*Wilson v. Dantas*,
    No. 12 Civ. 3238 (GBD), 2013 U.S. Dist. LEXIS 3475 (S.D.N.Y. Jan. 4, 2013) ................11

**Genger Cases**

*Genger v. Genger*,
    2013 NY Slip Op 50091(U), 38 Misc. 3d 1213(A),
    966 N.Y.S.2d 346, 2013 WL 221485 (Sup. Ct. NY County, January 3, 2013) ...............2, 3, 5

*Genger v. Genger*,
    120 A.D.3d 1102, 993 N.Y.S.2d 297 (1st Dep't 2014).........................................................6

*Genger v. Genger*,
    76 F. Supp. 3d 488 (S.D.N.Y. 2015) .....................................................................................2

*Genger v. Genger*,
    144 A.D.3d 581, 41 N.Y.S.3d 414 (1st Dep't 2016) .............................................................7

*Glenclova Inv. Co. v. Trans-Resources, Inc.*,
    874 F. Supp. 2d 292 (S.D.N.Y. 2012) ..............................................................................2, 3

*Genger v. TR Investors, LLC*,
    26 A.3d 180 (Del. 2011)....................................................................................................3, 5

*Genger v. TR Investors, LLC*,
    No. 6906-CS, 2013 Del. Ch. LEXIS 355 (Del. Ch. Aug. 30, 2013) .......................................7

*TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP*,
    No. 13 Civ. 8243 (JFK), 2014 U.S. Dist. LEXIS 67116 (S.D.N.Y. May 15, 2014). ..............1

*TR Investors, LLC v. Genger*, C.A.
    No. 3994-VCS, 2010 WL 2901704,
    2010 Del. Ch. LEXIS 153 (Del. Ch. July 23, 2010) ............................................................4

*TR Investors, LLC v. Genger,*
    C.A. No. 3994-VCS, 2010 WL 3279385,
    2010 Del. Ch. LEXIS 170 (Del. Ch. Aug. 9, 2010), ......................................................2, 3, 4

**Rules**

CPLR § 214(6)...........................................................................................................19, 20, 21

Fed. R. Civ. P. 9(b) ...........................................................................................................11, 17

Fed. R. Civ. P. 12(b)(6)............................................................................................................7

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff's initial Complaint misled by omission; its First Amended Complaint ("FAC")
misleads by selection. Plaintiff adds scores of irrelevant and distracting allegations to the FAC
but still fails to plead a cognizable claim. Moreover, each claim is still barred by the applicable
statute of limitations and the doctrine of collateral estoppel.

Stripped of verbosity, the core allegations of the FAC are these:

1.   Orly[2] commenced two proceedings in the Supreme Court of New York, which
     plaintiff defines as the 2009 and 2010 Actions (FAC ¶ 19),[3] on behalf of herself
     individually and as a derivative plaintiff for the Orly Trust, i.e., plaintiff's
     assignor (FAC ¶ 20);

2.   The ZEK Defendants purported to represent Orly and the Orly Trust in both
     actions (FAC ¶¶ 21-22);

3.   During hearings and in written submissions in the 2010 Action, the ZEK
     Defendants purported to represent the Orly Trust and/or the Orly Trust's interests
     (FAC ¶¶ 23-26);[4]

4.   Represented by the ZEK Defendants, Orly entered into a partial settlement
     agreement of the 2010 Action with other litigants (but not Dalia, then the trustee
     of the Orly Trust), the proceeds of which "truly" represented settlement of
     derivative claims properly belonging to the Orly Trust, all of which was part of a
     "brazen scheme" (FAC ¶¶ 1, 29, 33, 44);

5.   The ZEK Defendants argued in the 2010 Action that the partial settlement
     represented a settlement of Orly's individual claims, not any derivative claims
     (FAC ¶¶ 40, 49); and

6.   All of the claims that Orly prosecuted in the 2010 Action, including derivative
     claims, were subsequently dismissed (FAC ¶¶ 41-42).

Plaintiff's (amended) case is that the foregoing renders the ZEK Defendants liable for:

(1) constructive fraud; (2) malpractice; (3) breach of fiduciary duty; (4) aiding and abetting

---

[2] Orly refers to Orly Genger; Arie refers to Arie Genger, Orly's father; Sagi refers to Sagi Genger, Orly's brother;
and Dalia refers to Dalia Genger, Orly and Sagi's mother and Arie's former wife. In most of the Genger family
litigation, Sagi aligned with Dalia and Orly aligned with Arie. *See*, e.g., *TPR Inv. Assocs., Inc. v. Pedowitz &
Meister LLP*, No. 13 Civ. 8243 (JFK), 2014 U.S. Dist. LEXIS 67116, at *2 (S.D.N.Y. May 15, 2014).
[3] *Genger v. Genger,* Index No. 109749/2009 (Sup. Ct. NY County) ("2009 Action") and *Genger v. Genger,* Index
No. 651089/2010 (Sup. Ct. NY County) ("2010 Action").
[4] The FAC does not allege specific wrongdoing with respect to the 2009 Action.

breach of fiduciary duty; (5) aiding and abetting conversion; and (6) breach of contract.  *See*

FAC ¶¶ 64-119.  As set forth below, plaintiff has no claim.

**OVERVIEW OF THE UNDERLYING LITIGATION**

The Genger litigation saga is discussed at length in multiple published decisions such as

*Genger v. Genger*, 76 F. Supp. 3d 488 (S.D.N.Y. 2015), *aff'd*, 663 F. App'x 44 (2d Cir. 2016),[5]

and in some of the documents upon which the FAC relies.  One focus of the seemingly endless

dispute is the family's former majority ownership of Trans Resources, Inc. ("TRI").  *See*

*Glenclova Inv. Co. v. Trans-Resources, Inc.*, 874 F. Supp. 2d 292, 296 (S.D.N.Y. 2012)

("*Glenclova*").[6]  Until 2004, the Genger family housed their TRI shares in TPR Investors, Inc.

("TPR"), of which Arie was the sole shareholder.  *Id.* at 295; FAC ¶ 14.  In 2004, as part of his

divorce settlement with Dalia, Arie arranged to redistribute those shares:  Arie himself received

about 14% of TRI's outstanding shares ("Arie Shares") and the Orly Trust and its sibling Sagi

Genger 1993 Trust ("Sagi Trust") each received about 19.5% ("Orly Shares" and "Sagi Shares,"

respectively, and together with the Arie Shares, "2004 TRI Transfers").  *See* FAC ¶ 15; Sullivan

Decl. Ex. B at ****2 (*Genger v. Genger*, 2013 NY Slip Op 50091(U), 38 Misc. 3d 1213(A), 966

N.Y.S.2d 346, 2013 WL 221485 (Sup. Ct. NY County, January 3, 2013) ("January 3, 2013

Order")) (referenced in FAC ¶ 27).  TPR itself, the original repository of the family's TRI shares,

was transferred to Dalia.  *See Glenclova*, 874 F. Supp. 2d. at 296.

The 2004 TRI Transfers, however, contravened a 2001 shareholders agreement ("2001

Shareholders Agreement") with a group of outside investors in TRI ("Trump Group").[7]  *Id.* at

296; FAC ¶¶ 14, 16.  This rendered the 2004 Transfers void and activated certain option rights

---

[5] A schedule of various published *Genger* decisions is annexed to this memorandum.

[6] Dalia, as trustee of the Orly Trust, was a party to this action.

[7] The Trump Group's investment and the 2001 Shareholders Agreement are discussed at length in a number of court opinions, including *TR Investors, LLC v. Genger*, C.A. No. 3994-VCS, 2010 WL 3279385, 2010 Del. Ch. LEXIS 170 (Del. Ch. Aug. 9, 2010), *aff'd in part, rev'd in part, Genger v. TR Investors, LLC*, 26 A.3d 180 (Del. 2011).

for the Trump Group to acquire the improperly transferred shares. *Glenclova*, 874 F. Supp. 2d. at 296; FAC ¶ 17.

When negotiations between the Trump Group and Arie failed, litigation ensued in the form of the *Glenclova* case. On or about August 22, 2008, the Trump Group struck a separate peace with Sagi and Dalia consisting of two parts: first, the Sagi Trust, of which Dalia was the trustee, purported to sell the Sagi Shares (1,102.8 shares) to the Trump Group for approximately $27 million. Sullivan Decl. Ex. B at ****3 (January 3, 2013 Order); *Glenclova*, 874 F. Supp. 2d. at 296. As a backstop, this agreement also provided that TPR, then controlled by Sagi, would be deemed to have sold the Sagi Shares to the Trump Group if a court later voided the 2004 TRI Transfers. With this arrangement, the Trump Group immediately obtained control of TRI. *See Glenclova*, 874 F. Supp. 2d at 296. Second, in a "side letter," TPR provided the Trump Group with the option to buy both the Orly Shares (also 1,102.8 shares) for approximately $10.3 million and the Arie Shares for approximately $7.4 million if a court voided the 2004 TRI transfers ("Option Agreement").[8] *Id.* at 297*;* FAC ¶ 16. The Trump Group next started a separate proceeding in Delaware Chancery Court to void the 2004 TRI Transfers, among other things.[9]

In 2009, Orly learned that Sagi and Dalia were wrongfully attempting to terminate Orly's indirect interest in TPR. This was significant because the Orly and Arie Shares would likely revert to TPR if a court voided the 2004 TRI Transfers. If that occurred, TPR stood to receive the significant proceeds from those shares' onward sale to the Trump Group. Orly thus initiated the 2009 Action against Dalia and Sagi, among others, to preserve her interest in TPR. *See*

---

[8] As the court in the 2010 Action noted, the agreed purchase price for the Orly and Arie Shares provided in the Side Letter was "less than 60% of the per share price paid by Trump Group for the Sagi" Shares. Sullivan Decl. Ex. B (January 3, 2013 Order).

[9] *TR Investors,* C.A. No. 3994-VCS, 2010 WL 3279385, 2010 Del. Ch. LEXIS 170 (Del. Ch. Aug. 9, 2010), *aff'd in part, rev'd in part, Genger v. TR Investors, LLC,* 26 A.3d 180 (Del. 2011). The earlier commenced *Glenclova* action was stayed in favor of the Chancery court proceeding. *See Glenclova,* 874 F. Supp. 2d at 314.

Sullivan Decl. Ex. C. Dalia, expressly in her role as trustee of the Orly Trust, appeared and contested. *See* Sullivan Decl. Ex. D.

In July 2010, the Delaware Chancery Court ruled that the Trump Group controlled TRI (based on its ownership of the Sagi Shares) but initially declined to determine the beneficial ownership of the Arie and Orly Shares.[10] Days later, Arie and Orly, then jointly represented by counsel other than the ZEK Defendants, initiated the 2010 Action seeking, among other things, an injunction preventing Sagi or TPR from transferring the Orly or Arie Shares. *See* Sullivan Decl. Ex. E (2010 Action Compl. ¶ 76).

In August 2010, the ZEK Defendants appeared as counsel for Orly in the 2010 Action, a principal focus of which became determining the beneficial ownership of the Orly (and Arie) Shares and the right to any sale proceeds. In addition to the Gengers, the Trump Group and others, including Dalia as trustee of the Orly Trust, became parties. *See* Sullivan Decl. Ex. F. The 2010 Action thus became the single action in which all parties interested in the Orly Shares appeared.

In an agreement dated as of September 1, 2010, all interested parties, including the Orly Trust (by Dalia) and Orly "as beneficiary of" the Orly Trust, agreed to escrow the earlier agreed purchase price for the Orly Shares, $10,314,005, pending determination of ownership. *See Glenclova*, 874 F. Supp. 2d. at 297.

In February 2011, the Trump Group exercised its option to buy the Arie Shares, with the funds remaining in escrow to abide resolution of Arie's ownership challenge. In July 2011, Delaware's Supreme Court reversed that part of the Chancery Court decision that authorized the

---

[10] *TR Investors, LLC v. Genger*, C.A. No. 3994-VCS, 2010 WL 2901704, 2010 Del. Ch. LEXIS 153 (Del. Ch. July 23, 2010). In August 2010, the Delaware Chancery Court expanded its earlier ruling to hold that the Trump Group was entitled to exercise its rights under the "side letter" and purchase the Orly (and Arie) Shares. *See TR Investors*, C.A. No. 3994-VCS, 2010 WL 3279385, 2010 Del. Ch. LEXIS 170 (Del. Ch. Aug. 9, 2010).

Trump Group to buy the Orly (and Arie) Shares, thereby leaving unresolved the question of their beneficial ownership.[11]  This question remained at issue in the 2010 Action.[12]

In October 2011, despite the pendency of the 2010 Action in which she was a party, Dalia, as trustee of the Orly Trust, initiated her own Chancery Court proceeding against the Trump Group in which she claimed ownership of the Orly Shares.  *See Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC.,* C.A. No. 6906 (Del. Ch.), Sullivan Decl. Ex. G.  Convinced that Dalia was attempting to circumvent the 2010 Action and "paper over" her effort to sell the Orly Shares to Orly's detriment, on October 26, 2011 and November 6, 2011, Orly (with Arie) obtained temporary restraining orders in the 2010 Action against further proceedings in Delaware.  *See* Sullivan Decl. Exs. H, I, and K.  On April 9, 2012, the court continued those TROs.  *See* Sullivan Decl. Ex. L.  Plaintiff claims these events were wrongful. *See* FAC ¶ 70.

On January 3, 2013, the court in the 2010 Action granted in part and denied in part the Trump Group's motion to dismiss Arie and Orly's complaint.  *See* FAC ¶ 27; Sullivan Decl. Ex. B.  The court dismissed outright six of the eight claims asserted against the Trump Group.  *See* Sullivan Decl. Ex. B at **** 5-6 and 19-20 (January 3, 2013 Order).  It also dismissed in part the remaining two claims asserted by Orly against the Trump Group: (i) the conspiracy portion of the breach of fiduciary duty claim; and (ii) the claim for rescission as a remedy for unjust enrichment.  *See* Sullivan Decl. Ex. B at **** 11-12 and 19-20.

On June 16, 2013, Orly, Arie, the Trump Group, and others (but not Dalia or Sagi) ("Settling Parties") settled the 2010 Action as related to them.  *See* FAC ¶ 29.  A copy of the resulting settlement agreement ("Settlement Agreement") is attached as Sullivan Decl. Ex. M.

---

[11] *Genger v. TR Investors, LLC,* 26 A.3d 180, 203 (Del. 2011).  *See* FAC ¶¶ 17-18.
[12] The partial reversal was based on the limited in rem nature of the Chancery Court decision.  *Genger,* 26 A.3d at 201-202.

The Settlement Agreement expressly provided that Orly was executing only "individually and as beneficiary of" the Orly Trust, rather than on behalf of the Orly Trust.

Orly also executed the corresponding stipulation of discontinuance ("Stipulation of Discontinuance") "individually and as a beneficiary," not on behalf of the Orly Trust. Sullivan Decl. Ex. N; *see* FAC ¶ 40. The Settling Parties, on notice to Dalia and others, submitted the Stipulation of Discontinuance which the court entered only after extensive discussion confirming the limited capacity in which Orly executed. *See* Sullivan Decl. Ex. O at 5.

Dalia, as trustee, and Sagi then began to assert the same claims that plaintiff seeks to advance now—that somehow, someway, the Settlement Agreement compromised claims that properly belong to the Orly Trust to which Dalia, as trustee, was entitled. The court rejected Dalia's (and Sagi's) protests, noting that "[i]n the settlement agreement, Orly stops short of releasing derivative claims." Sullivan Decl. Ex. O at 4. The court also denigrated Dalia's approach:

> Dalia Genger, trustee of the Orly Trust, neither filed nor joined in the instant motion [to prevent the settlement]. Instead, she signed an affidavit, dated June 28, 2013, asserting that "an analysis of the claims [filed by Orly against the Trump Group] shows that they are entirely claims of the Orly Trust and that she has no individual rights separate therefrom' [internal citations omitted]. Dalia's assertion is not supported or accompanied by any analysis of the subject claims, and is fatally conclusory.[13]

Sullivan Decl. Exs. O at 3, P.

Confirming her true understanding of the limited scope of the Settlement Agreement, Dalia, as trustee, promptly resumed the Delaware Chancery Court case against the Trump Group. By August 30, 2013, Dalia, as trustee, reached a separate settlement with the Trump Group and

---

[13] The court noted dryly that the Appellate Division had already determined that Dalia, in connection with part of the activity at issue in the 2009 Action, had breached her fiduciary duty to the Orly Trust. *See Genger v. Genger*, 120 A.D.3d 1102, 1104, 993 N.Y.S.2d 297, 300 (1st Dep't 2014).

others respecting the Orly Shares. *See Genger v. TR Investors, LLC*, No. 6906-CS, 2013 Del. Ch. LEXIS 355 (Del. Ch. Aug. 30, 2013); Sullivan Ex. N ¶ 4.

Dalia, as trustee, then pursued a course of conduct that, by reason of the doctrine of issue preclusion, bars plaintiff's current effort. Dalia sought (a) to substitute herself for Orly; (b) to compel payment of any settlement proceeds into the court to abide the resolution of her claims against those proceeds; and (c) to challenge the dismissal of claims that Orly and Arie had pled. She was unsuccessful in all these efforts. *See Genger v. Genger*, 144 A.D.3d 581, 581, 41 N.Y.S.3d 414, 414-15 (1st Dep't 2016) (noting the failure of Dalia "as Trustee" to articulate any objection to the court's order dismissing claims) (internal citation omitted); Sullivan Decl. Ex. Q (Decision and Order, entered on February 19, 2019 in the 2010 Action; NYSCEF No. 1520).

## ARGUMENT[14]

### I.     PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Rule 12(b)(6) mandates dismissal unless a complaint contains sufficient factual allegations to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted); *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (a "complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action, and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Murphy v. Morlitz*, No. 15 Civ. 7256 (VSB), 2017 U.S. Dist. LEXIS 154440, at *10 (quoting *L-7 Designs, Inc. v.*

---

[14] In addition to the arguments set forth herein, the ZEK Defendants join the legal arguments in the Wachtel Defendants' motion to dismiss to the extent applicable to the ZEK Defendants. Plaintiff has abandoned its claim based on New York State Judiciary Law § 487. And plaintiff's Fourth Cause of Action for breach of fiduciary duty is only alleged against the Wachtel Defendants and not discussed herein.

*Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)). While the Court must accept "well-pleaded factual allegations" as true, it cannot accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678-79. A complaint is legally insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding a motion to dismiss, the court considers any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 175 (S.D.N.Y. 2016) (internal citations and quotation marks omitted).

## A. PLAINTIFF TAKES CLAIMS SUBJECT TO THE SAME LIMITATIONS TO WHICH THEY WERE SUBJECT WITH THE ORLY TRUST

As a preliminary matter, plaintiff, as assignee, has no greater claim of right to relief than its assignor, the Orly Trust. "It is elementary ancient law that an assignee never stands in any better position than his assignor." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 Civ. 9783 (RWS), 2013 WL 6484727, 2013 U.S. Dist. LEXIS 174580, at *9 (S.D.N.Y. Dec. 9, 2013) (quoting *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126, 325 N.E.2d 137, 139 (1975)). "[A]n assignee of a claim takes with it whatever limitations it had in the hands of the assignor." *Bronx Entm't LLC v. St. Paul's Mercury Ins. Co.*, 265 F. Supp. 2d 359, 361 (S.D.N.Y. 2003). Consequently, any arguments or defenses based on, for example, trustee Dalia's conduct, knowledge, or reasonable reliance, all apply with equal force against plaintiff.

## B. PLAINTIFF'S MALPRACTICE AND OTHER TORT CLAIMS MUST BE DISMISSED FOR LACK OF PRIVITY

New York is a strict privity jurisdiction: a claim for attorney malpractice requires the plaintiff to have been in privity with the defendant lawyer. *Conestoga Title Ins. Co. v. ABM Title*

*Servs.*, No. 10 Civ. 3017 (CM), 2012 WL 2376438, 2012 U.S. Dist. LEXIS 86614, at *12 (S.D.N.Y. June 20, 2012) ("New York courts impose a strict privity requirement to claims of legal malpractice; an attorney is not liable to a third party for negligence in performing services on behalf of his client.") (internal citations omitted); *Latin Am. Fin. Grp., Inc. v. Pareja*, 266 F. App'x 61, 62 n.1 (2d Cir. 2008) (affirming dismissal because the "absence of an attorney-client relationship is fatal to plaintiffs' malpractice and breach of contract claims"). Privity is established when a client engages a lawyer. Plaintiff admits that "the Orly Trust did not hire the Defendants as counsel." FAC ¶ 78.

Plaintiff inverts this legal construct: because the Orly Trust was allegedly harmed by the ZEK Defendants, plaintiff was in privity with the ZEK Defendants. This is logically absurd: injury to the plaintiff does not establish privity. Rather, in this setting "injury" is irrelevant without privity.[15]

The established, irrefutable facts are these: plaintiff's assignor, the Orly Trust, was personified by Dalia. Dalia, in that role, was relentless in her opposition to Orly, the ZEK Defendants' client. Dalia, in that role, contested Orly in both the 2009 and 2010 Actions (*see* Sullivan Decl. Exs. D and J), opposed Orly and Arie's settlement with the Trump Defendants (*see* Sullivan Decl. Exs. O and P), and initiated her own separate proceedings against the Trump Group in Delaware where she, as trustee of the Orly Trust, reached her own separate settlement (*see Genger*, No. 6906-CS, 2013 Del. Ch. LEXIS 355). *See supra* at 6-7.

In sum, plaintiff does not and cannot plead an attorney-client relationship or other form of privity with the ZEK Defendants. Plaintiff's malpractice claim must be dismissed.

The absence of privity dooms plaintiff's other tort claims, too. Under New York law, a claim against an attorney arising out of the attorney's provision of legal services "sounds in legal

---

[15] Plaintiff refers to "derivative privity" (FAC ¶ 78). The term has no meaning in Federal or New York law.

malpractice," regardless of the name of the cause of action asserted by plaintiff. *Jiau v. Hendon*, No. 12 Civ. 7335 (PAE), 2014 U.S. Dist. LEXIS 18471, at *18-19 (S.D.N.Y. Feb. 12, 2014) ("[Plaintiff] cannot avoid her duty to adequately plead the elements of a legal malpractice claim by packaging her claim as a different cause of action . . ."). In particular, claims which assert the same facts and seek the same relief, regardless of whether they are labelled as claims for negligence, fraud, breach of fiduciary duty or other torts, are deemed to be duplicative of a claim for legal malpractice. *See Nordwind v. Rowland*, 584 F.3d 420 (2d Cir. 2009); *Carl v. Cohen*, 55 A.D.3d 478, 478-79, 868 N.Y.S.2d 7 (1st Dep't 2008) (dismissing fraud claim as duplicative of a malpractice claim since it was "not based on an allegation of independent, intentionally tortious conduct" and "failed to allege separate and distinct damages"). All of plaintiff's claims against the ZEK Defendants are based upon the legal services they allegedly provided to the Orly Trust. Accordingly, all those claims sound in legal malpractice, are subsumed under the malpractice claim, and are subject to the same privity requirement. Consequently, the Court should dismiss all of plaintiff's tort claims for want of privity.

### C. IN PARTICULAR: PLAINTIFF'S  NEW CONSTRUCTIVE FRAUD CLAIM MUST BE DISMISSED

Under New York law, a "'constructive fraud claim modifies the claim for actual fraud by replacing the scienter requirement with the requirement that Defendants maintained either a fiduciary or confidential relationship with Plaintiff.'" *Senior Health Ins. Co. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 529 (S.D.N.Y. 2018) (quoting *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 524 (S.D.N.Y. 2014)). To state a claim for constructive fraud, therefore, a plaintiff must allege that "'(1) a representation was made, (2) the representation dealt with a material fact, (3) the representation was false, (4) the representation was made with the intent to make the other party rely upon it, (5) the other party did, in fact, rely on the

representation without knowledge of its falsity, (6) injury resulted and (7) the parties are in a fiduciary or confidential relationship.'" *Wilson v. Dantas*, No. 12 Civ. 3238 (GBD), 2013 U.S. Dist. LEXIS 3475, at *20 (S.D.N.Y. Jan. 4, 2013) (quoting *Del Vecchio v. Nassau Co.*, 118 A.D.2d 615, 499 N.Y.S.2d 765, 768 (2d Dep't 1986)).

Constructive fraud claims are subject to Rule 9(b)'s heightened pleading requirements. *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252 (S.D.N.Y. 2008) ("It is beyond cavil that plaintiffs' fraud in the inducement, constructive fraud, and negligent misrepresentation claims are subject to the rigors of Rule 9(b)."); *Senior Health Ins.*, 345 F. Supp. 3d at 529-30 (applying Rule 9(b) to a constructive fraud claim).

Plaintiff's new constructive fraud claim fails for at least four reasons.[16]

### 1. Plaintiff's claim fails because there is no fiduciary or special relationship

"In order to sustain a claim for . . . constructive fraud . . . a plaintiff must allege the existence of a fiduciary or special relationship with the defendant." *Matsumura,* 542 F. Supp. 2d at 258 (internal citations omitted). Such relationship is one "'warranting the trusting party to repose his confidence in the defendant and therefore relax the care and vigilance that he would normally exercise in the circumstances.'" *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 631 F. Supp. 2d 313, 387-88 (S.D.N.Y. 2009) (quoting *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (2d Dep't 1980)). "A party's 'unilateral belief' that he is represented by counsel 'does not confer upon him the status of client unless there is a reasonable basis for his belief.'" *Matsumura,* 542 F. Supp. 2d at 258 (quoting *Knigge ex rel. Corvese v. Corvese*, No. 01 Civ. 5743, 2001 U.S. Dist. LEXIS 17484, 2001 WL 830669, at *3 (S.D.N.Y. July 23, 2001)). "The reasonableness of a belief that an attorney-client or fiduciary relationship has been formed often turns on whether the plaintiff was explicitly instructed to obtain outside counsel." *Id.*

---

[16] In addition, it is also untimely, as further discussed below, Section II.B.

Plaintiff fails to plausibly allege a fiduciary or special relationship with the ZEK Defendants. Rather, "plaintiff['s] argument conveniently downplays the facts that plaintiff[] had engaged [its] own counsel." *Cf. Matsumura*, 542 F. Supp. 2d at 254 n.12. Downplays, indeed. Dalia, as trustee, was the litigation adversary of the ZEK Defendants' client, Orly. To put it mildly, plaintiff cannot allege that Dalia, as trustee, ever accepted that Orly or her lawyers were working in the interest of the Orly Trust. Instead, Dalia, as trustee, assisted by her own array of lawyers, actively and consistently opposed the efforts of the ZEK Defendants. Thus, even assuming the ZEK Defendants ever purported to represent or act on behalf of the Orly Trust, such would not, and clearly did not, create a relationship "warranting the [Orly Trust] to repose [its] confidence in the [ZEK Defendants] and therefore relax the care and vigilance that [it] would normally exercise." *E*Trade Fin.*, 631 F. Supp. 2d at 387-88.

2. <u>Plaintiff fails to plead reasonable reliance</u>

"A plaintiff must prove reasonable reliance to recover on a claim for . . . constructive fraud." *Matsumura*, 542 F. Supp. 2d at 256 (internal citations omitted). "In evaluating whether the plaintiffs' reliance was reasonable, the entire context of the transaction is considered 'including factors such as its complexity and magnitude, the sophistication of the parties, and the contents of any agreements between them.'" *Matsumura*, 542 F. Supp. 2d at 257 (quoting *Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003)). "Skepticism of fraud claims [] is obviously compounded when the plaintiff alleges reliance on opposing counsel's opinion or advice, and not a representation of fact. Courts have routinely held that it is unreasonable for a party to rely on the advice of adversary counsel [] when both parties are aware that adverse interests are being pursued." *Id.* (citing *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993); *I.L.G.W.U. Nat'l Ret. Fund v. Cuddlecoat, Inc.*, No. 01 Civ. 4019, 2004 U.S. Dist. LEXIS 3764, 2004 WL 444071, *3 (S.D.N.Y. Mar. 11, 2004);

*Petrello v. White*, 412 F. Supp. 2d 215, 227 (E.D.N.Y. 2006); *Russell—Stanley Holdings, Inc. v. Buonanno*, 327 F. Supp. 2d 252, 257 (S.D.N.Y. 2002)) (internal quotation marks omitted). "In other words, a 'plaintiff cannot properly plead reasonable reliance on the representations of another party's counsel . . . to support her claim of fraud.'" *Stone v. Sutton View Capital, LLC*, No. 17 Civ. 1574 (VEC), 2017 U.S. Dist. LEXIS 202778, at *7 (S.D.N.Y. Dec. 8, 2017) (quoting *Cascardo v. Stacchini*, 100 A.D.3d 675, 676, 954 N.Y.S.2d 177 (2d Dep't 2012) and citing *Mann v Rusk*, 14 A.D.3d 909, 909-910, 788 N.Y.S.2d 686 (3d Dep't 2005)).

Simply put, plaintiff cannot plausibly plead reliance on the ZEK Defendants. Throughout the 2009 and 2010 Actions and the separate Delaware Chancery Court proceeding, Dalia, as trustee of the Orly Trust, was represented by her own competent counsel[17] with whose assistance Dalia consistently opposed the litigation efforts of Orly and her counsel, the ZEK Defendants. Dalia pursued her own agenda, including initiating and prosecuting her own lawsuit against the Trump Group. The very documents which the FAC cites as well as her extraordinary number of court submissions establish this reality and bar any claim of reasonable reliance.

### 3. Plaintiff's claim is duplicative

"Under New York law, where claims of . . . fraudulent misrepresentation are premised on the same facts and seek identical relief as a claim for legal malpractice, those claims are duplicative and must be dismissed." *Joyce v. Thompson Wigdor & Gilly LLP*, No. 06 Civ. 15315 (RLC) (GWG), 2008 U.S. Dist. LEXIS 43210, at *40-41 (S.D.N.Y. June 3, 2008) (dismissing claims for breach of contract, breach of fiduciary duty, negligent and fraudulent misrepresentation because they were duplicative of the malpractice claim); *see* also *Salichs v.*

---

[17] Trustee Dalia's counsel included: Robert Meister and Marisa Warren Sternstein, Pedowitz & Meister LLP, 2009 Action (*e.g.* NYSCEF 441) and 2010 Action (*e.g.* NYSCEF 100 and 129-2); Judith Bachman, The Bachman Law Firm PLLC, 2009 Action (*e.g.* NYSCEF 1647) and 2010 Action (*e.g.* NYSCEF 1098 and 1100); Carmen Beauchamp Ciparick, Greenberg Traurig LLP, 2009 Action (*e.g.* NYSCEF 1650); Jeremy Anderson and Joseph Warden, Fish & Richardson P.C., Delaware Chancery Court action (*see Genger*, No. 6906-CS, 2013 Del. Ch. LEXIS 355).

*Tortorelli*, No. 01 Civ. 7288 (DAB) (THK), 2004 WL 602784, 2002 U.S. Dist. LEXIS 27238, at

*30 (S.D.N.Y. Oct. 8, 2002) ("Where a fraud claim is based upon the 'same acts of

nondisclosures and misrepresentations' as plaintiff's legal malpractice claim, it is duplicative and

may be dismissed") (quoting *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 698 (S.D.N.Y. 2002));

*Meskunas v. Auerbach*, No. 17 CV 9129 (VB), 2019 WL 719514, 2019 U.S. Dist. LEXIS 26531,

at *9 (S.D.N.Y. Feb. 19, 2019) ("[A] cause of action must be dismissed as duplicative of a

malpractice claim if both are premised on the same facts and seek identical relief") (internal

quotations omitted); *Carl v. Cohen*, 55 A.D.3d 478, 478-79 (1st Dep't 2008) (explaining that

fraud claim may be dismissed as duplicative of malpractice claim if it is not based on an

allegation of independent, intentionally tortious conduct and fails to allege separate and distinct

damages) (internal quotations and citations omitted).

For its new fraud claim, plaintiff merely recycles its malpractice, breach of fiduciary

duty, and other tort claims. For example, plaintiff alleges that the ZEK Defendants'

representation of Orly to pursue derivative claims created a fiduciary relationship between the

ZEK Defendants and the Orly Trust (FAC at ¶¶ 65 and 78) and that the ZEK Defendants'

"fraudulent [mis]conduct" caused injury to the Orly Trust (FAC at ¶¶ 66 and 78). Further,

plaintiff seeks identical relief under its malpractice and constructive fraud theories, namely

damages "believed to be no less than $32 million." FAC at ¶¶ 75 and 84. Plaintiff's

constructive fraud claim is clearly duplicative of its malpractice claim and must be dismissed.

### D. PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED

"To state a claim for damages for breach of fiduciary duty under New York law, a

plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the

defendant, and (3) damages directly caused by the defendant's misconduct." *Petedge, Inc. v.*

*Garg*, 234 F. Supp. 3d 477, 497 (S.D.N.Y. 2017) (internal quotation marks omitted). Here, plaintiff's fiduciary duty claim should be dismissed for at least two independent reasons.

### 1. Plaintiff's fiduciary duty claim must be dismissed as duplicative

As discussed above, the breach of fiduciary duty claim should be dismissed as duplicative because it is premised on the same facts and seeks identical relief as the alleged malpractice claim. *See Nordwind*, 584 F.3d at 432-33 (affirming district court's dismissal of fiduciary duty claim as duplicative of plaintiff's legal malpractice claim because it was premised on the same facts and seeking the identical relief as a claim for legal malpractice); *Decker v. Nagel Rice LLC*, No. 09 Civ. 9878 (SAS), 2010 WL 2346608, 2010 U.S. Dist. LEXIS 62042, at *29 (S.D.N.Y. May 28, 2010) ("Each of Plaintiffs' remaining causes of action for negligence, breach of fiduciary duty, breach of contract, and conflict of interest arise from the same set of facts as the claim for attorney malpractice and request identical relief. As a result, they are duplicative and are dismissed.").

### 2. Plaintiff's Allegations of Misconduct and Damages Are Implausible and Belied by the Documents and Record Upon Which They Rely

Plaintiff complains that defendants "aided a fraudulent scheme to enter into a secret settlement agreement" and then "aided a fraudulent scheme to steal the settlement funds and divert them to Arie Genger and Arnold and David Broser." FAC ¶¶ 89-90.

As long known, the "secret" settlement did not affect claims of the Orly Trust because (a) the Settlement Agreement itself provides that Orly was settling "individually and as beneficiary" of the Orly Trust; (b) the Supreme Court concluded that "Orly stops short of releasing derivative claims" (Sullivan Decl. Ex. O at 3); and (c) Dalia, as trustee, resumed her claim over beneficial ownership of the TRI Shares in Delaware.[18]

---

[18] The Settlement Agreement was hardly a secret. *See* Sullivan Decl. Ex. N (Stipulation of Discontinuance). Its terms—beyond the fact of settlement and the capacity in which Orly executed—were confidential, as is certainly

Plaintiff's protests to the contrary are just noise. For example, plaintiff argues that Orly, as beneficiary, could not have individual claims but does not explain why. Plaintiff suggests that the Stipulation of Dismissal precluded the Orly Trust from prosecuting claims against the Trump Group. But plaintiff omits that (a) the court in the 2010 Action has already dismissed Orly's claims against the Trump Group, and more significantly (b) Dalia, as trustee, resumed (and subsequently settled) her own action against the Trump Group in Delaware (*see* FAC ¶ 58 n.5).

With no plausible claim of damages from the Settlement Agreement, plaintiff's fiduciary duty claim must be dismissed.

### E. PLAINTIFF'S AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED

"To state a claim for aiding and abetting breach of fiduciary duty under New York law, a plaintiff must allege: (1) breach by a fiduciary of obligations to another; (2) actual knowing participation by the defendant in the fiduciary's breach of obligations; and (3) damages to the plaintiff." *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 392 (S.D.N.Y. 2007).

Plaintiff's aiding and abetting breach of fiduciary duty claim fails for the same reasons as its primary claim: the absence of a fiduciary relationship. It is irrelevant whether plaintiff lays the alleged duty on the ZEK Defendants or on Orly. Orly, individually and as a beneficiary, was logically (and legally) entitled to settle whatever claims she had individually and as a beneficiary. Logically and legally, such did not and could not affect whatever claim Dalia, as trustee, might properly pursue. Definitive proof to that effect is established by Dalia, herself: she, as trustee, pursued separate claims against the Trump Group in Delaware. *Cf.* FAC 70.

Plaintiff's aiding and abetting breach of fiduciary duty claim must be dismissed.

---

common. It is worthy of note that Dalia, as trustee, ineffectively challenged confidentially in the 2010 Action. *See* Sullivan Decl. Exs. O at 3, P.

## F. PLAINTIFF'S AIDING AND ABETTING CONVERSION CLAIM MUST BE DISMISSED

"In order to state a claim for aiding and abetting conversion under New York law, plaintiffs must allege (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Berman v. Morgan Keegan & Co.*, No. 10 Civ. 5866 (PKC), 2011 WL 1002683, 2011 U.S. Dist. LEXIS 27867, at *38 (S.D.N.Y. Mar. 14, 2011). "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. Where, as here, the conversion claim is premised on fraud, courts apply Fed. R. Civ. P. 9(b)." *Id.*; *Daly v. Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (dismissing conversion claim for failure to comport with Rule 9(b)).

Plaintiff's aiding and abetting conversion claim against the ZEK Defendants fails for two reasons. First, it fails under Rule 9(b) because the FAC makes no particularized allegations about how the ZEK Defendants "substantially assisted" Tedco, Inc. and AGA, LLC in their alleged fraudulent conversion of the Orly Trust's assets. The FAC alleges only that the ZEK Defendants represented Orly in entering into the Settlement Agreement. Every specific allegation about what allegedly occurred thereafter, including any alleged asset transfers, relates to the Wachtel Defendants. *See, e.g.*, FAC ¶ 106. Without any particularized allegations against the ZEK Defendants, the claim against them must be dismissed.

Second, the aiding and abetting conversion claim fails for the same reasons as the fiduciary duty claims. The allegations in the FAC and the documents that it references refute and render implausible the allegation that the Settlement Agreement was improper or adversely

affect the Orly Trust.  As a result, how and to whom the consideration from the settlement was paid is not properly the subject of a conversion claim.

### G. PLAINTIFF'S BREACH OF CONTRACT CLAIM (INTENDED THIRD-PARTY BENEFICIARY) MUST BE DISMISSED

Plaintiff alleges that a retainer agreement between the ZEK Defendants and Orly stipulated for the ZEK Defendants to bring derivative claims on behalf of the Orly Trust which made the Orly Trust an intended third-party beneficiary of the retainer agreement.  FAC ¶¶ 111-112.  Even assuming this were true, plaintiff's contract claim must be dismissed because it is duplicative of plaintiff's malpractice and other claims.

"Under New York law, where claims of . . . breach of contract . . . are premised on the same facts and seek identical relief as a claim for legal malpractice, those claims are duplicative and must be dismissed."  *Joyce*, 2008 U.S. Dist. LEXIS 43210, at *40-41 (collecting cases);  *see also Meskunas v. Auerbach*, No. 17 CV 9129 (VB), 2019 WL 719514, 2019 U.S. Dist. LEXIS 26531, at *9 (S.D.N.Y. Feb. 19, 2019) ("[A] cause of action must be dismissed as duplicative of a malpractice claim if both are premised on the same facts and seek identical relief") (internal quotations omitted));  *Roy v. Law Offices of B. Alan Seidler, P.C.*, 284 F. Supp. 3d 454, 457-58 (S.D.N.Y. 2018) (citations omitted) (dismissing duplicative breach of contract claim).

Plaintiff's breach of contract claim "stems from the same general legal malpractice claims already alleged."  *Cf. Roy,* 284 F. Supp. 3d at 457.  In fact, plaintiff relies on the same factual allegations and seeks the same relief as in its malpractice claim to support the breach of contract claim, namely that the proceeds of the Settlement Agreement should have been paid to the Orly Trust.  *See* FAC ¶¶ 84 and 115.  Therefore, plaintiff's breach of contract claim is redundant of its malpractice claim and must be dismissed.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY THE RELEVANT STATUTES OF LIMITATIONS

### A. PLAINTIFF'S MALPRACTICE CLAIMS ARE UNTIMELY

Legal malpractice claims in New York are subject to a three-year statute of limitations. CPLR 214; *see Bastys v. Rothschild*, 154 F. App'x 260, 262 (2d Cir. 2005) ("[P]laintiff's malpractice claim is subject to New York's three-year statute of limitations"); *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) ("[A] federal court sitting in New York must apply the New York . . . statutes of limitations."). "'An action to recover damages for legal malpractice accrues when the malpractice is committed.'" *Franzone v. Lask*, No. 14 Civ. 3043 (GHW), 2016 U.S. Dist. LEXIS 103366, at *13-14 (S.D.N.Y. Aug. 5, 2016) (quoting *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166, 750 N.E.2d 67, 69 (2001) (noting importance of when malpractice was committed, not when client discovers it)). As such, claims predicated on events occurring *prior to June 19, 2016*—three years before plaintiff filed the instant action—are time barred. While still inherently vague, the FAC alleges certain misrepresentations by the ZEK Defendants. The FAC's latest allegation as to the ZEK Defendants is a "stipulation dated June 19, 2013." *See* FAC ¶ 67. Therefore, the three-year statute of limitations period for malpractice claims has long been expired before plaintiff filed its Complaint in June 2019.

### B. ALL OF PLAINTIFF'S OTHER CLAIMS ARE ALSO UNTIMELY

#### 1. Plaintiff's breach of fiduciary duty and other torts are untimely

Fiduciary duty or other tort claims "'based on the same alleged conduct amounting to legal malpractice,' [are] necessarily subject to the three-year statute of limitations period set forth in CPLR § 214(6)." *Gordillo v. Bank of N.Y. Mellon Corp.*, No. 12 Civ. 0212 (DF), 2015 U.S. Dist. LEXIS 135664, at *62-63 (S.D.N.Y. Sep. 29, 2015) ("[T]he Bank cannot escape the three-year limitations period by casting, this time in tort, a claim that arises from the core attorney-client relationship.") (quoting *Dozier v. Willkie Farr & Gallagher LLP*, No. 09 Civ. 9865

(LMM), 2011 WL 1886397, 2011 U.S. Dist. LEXIS 50687, at *4 (S.D.N.Y. May 9, 2011)

("[T]here is no allegation of any breach of fiduciary duty separate and distinct from the alleged

legal malpractice.")); *see also Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 310

(S.D.N.Y. 2003) ("Claims of breach of fiduciary duty are also governed by a three-year statute of

limitations.") (internal citations omitted); CPLR § 214(6) (three-year statute of limitations for

"an action to recover damages for malpractice . . . regardless of whether the underlying theory is

based in contract or tort").  Plaintiff's fiduciary duty and aiding and abetting claims are thus

barred under the applicable three-year statute of limitations.

### 2.  Plaintiff's constructive fraud claim is untimely

"Generally, the statute of limitations period for constructive fraud is six years, which

accrues upon breach." *Murphy v. Morlitz*, No. 15 Civ. 7256 (VSB), 2017 U.S. Dist. LEXIS

154440, at *19 (S.D.N.Y. Sep. 21, 2017) (citing *Christine Falls Corp. v. U.S. Bank Nat. Ass'n*,

546 F. App'x 13, 16 (2d Cir. 2013)).  "However, 'a fraud-based claim will be barred by a shorter

statute of limitations if the fraud allegation is merely incidental to a claim with a shorter

limitations period.'" *Id*. (quoting *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F.

Supp. 2d 387, 394 (S.D.N.Y. 2010)); *see also Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 545

(2d Cir. 1999) ("When a fraud claim is incidental to another asserted claim, the claim does not

sound in fraud for purposes of taking advantage of the longer limitations period.").  "Often

courts look to the relief requested in making this determination, finding fraud claims incidental

where the measure of the requested relief is the same for both types of claims and seems to take

its substance from the non-fraud claim." *Marketxt*, 693 F. Supp. 2d at 395.

Plaintiff's malpractice and constructive fraud claims are not "independently viable." *See*

*Marketxt,* 693 F. Supp. 2d at 395.  Rather the constructive fraud claim takes its substance from

the malpractice claim and includes the same requested relief.  *See supra* Section I.C.3.  The

applicable three-year statute of limitations for malpractice claims has expired.

### 3.   Plaintiff's breach of contract claim is untimely

The statute of limitations for legal malpractice claims is three years "regardless of

whether the underlying theory is based in *contract* or tort."  CPLR § 214(6) (emphasis added).

"The case law is clear that a party cannot avoid the more restrictive limitations period applicable

to legal malpractice claims merely by casting the underlying claim in contract."  *Gordillo*, 2015

U.S. Dist. LEXIS 135664, at *59 (citing *Marcia Rafter y. Jeffrey Liddle*, 704 F. Supp. 2d 370,

376-77 (S.D.N.Y. 2010)).  "Thus, even where the client seeks to rely on a contract theory, where

its claim against its attorney arises out of a retainer agreement, that claim will be found to be

governed by the statute of limitations for an action to recover damages for legal malpractice."

*Id*.; *see also Dozier*, 2011 U.S. Dist. LEXIS 50687, at *4 (holding that, when a claim is "based

on the same alleged conduct amounting to legal malpractice," the three-year statute of limitations

applies).  Plaintiff's contract claim is based on an alleged retainer agreement between Orly and

the ZEK Defendants.  As discussed above (Section I.G.), plaintiff's breach of contract claim

relies on the same factual allegations and seeks the same relief as its malpractice claim.

Therefore, plaintiff cannot avoid the more restrictive limitations period applicable to legal

malpractice claims and, consequently, its breach of contract claim is untimely as well.

## III.   **PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL**

The core issue of plaintiff's claim are the allegations that the Settlement Agreement

settled claims of the Orly Trust and that the Orly Trust is entitled to any settlement proceeds.

Both issues have been extensively litigated and already decided.  The doctrine of issue preclusion bars plaintiff's second attempt.[19]

The doctrine of issue preclusion—or collateral estoppel—provides that "an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies."  *Constantine v. Teachers Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)).  "In New York,[20] collateral estoppel has two essential elements.  First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination."  *Id.* (quoting *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007)) (internal quotation marks omitted); *see also **Kotler v. Donelli***, 528 F. App'x 10, 12-13 (2d Cir. 2013) (holding the same).

New York's preclusion law is based on the transactional analysis approach—if a cause of action arises from the "same transaction" or "same foundation facts," it is barred even when a different legal theory is advanced.  *Rochester v. Fortune Soc'y*, No. 16 Civ. 9423 (PGG), 2018 U.S. Dist. LEXIS 152239, at *15-17 (S.D.N.Y. Sep. 4, 2018) (collecting cases); *see also New York v. Mt. Tobacco Co*., 942 F.3d 536, 543 (2d Cir. 2019) ("New York's transactional approach to res judicata" bars "a later claim arising out of the same factual grouping as an earlier litigated

---

[19] "Dismissal based on res judicata is appropriate where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiffs' claims are barred."  *Greenwich Life Settlements, Inc. v. Viasource Funding Grp., LLC*, 742 F. Supp. 2d 446, 452 (S.D.N.Y. 2010) (internal quotations omitted).

[20] "To determine the preclusive effect of state court judgments, federal courts turn to the law of the state in which the judgment was rendered."  *Manchanda v. Google*, No. 16 Civ. 3350 (JPO), 2016 U.S. Dist. LEXIS 158458, at *18 (S.D.N.Y. Nov. 16, 2016) (internal citations omitted); *see also Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010) ("'In considering the preclusive effect of a state court judgment on a subsequent federal action, . . . we usually consult the preclusion laws of the state in which the judgment was issued.'") (quoting *Nestor v. Pratt & Whitney*, 466 F.3d 65, 71 (2d Cir. 2006)).

claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.") (internal citations omitted).

"In the context of defensive collateral estoppel, 'as long as the plaintiff had an opportunity to fully and fairly litigate an issue and lost, then even third parties unrelated to the original action can bar the [plaintiff] from relitigating that same issue in a subsequent suit.'" *Manchanda v. Google*, No. 16 Civ. 3350 (JPO), 2016 U.S. Dist. LEXIS 158458, at *18-19 (S.D.N.Y. Nov. 16, 2016) (quoting *Muhammad v. Maduekwe*, No. 13 Civ. 6026, 2016 U.S. Dist. LEXIS 25826, 2016 WL 829740, at *6 (S.D.N.Y. Feb. 29, 2016)) (internal quotation marks omitted); *see also Caidor v. Chase Manhattan Bank*, No. 97 Civ. 0227 (KMW) (NRB), 1998 U.S. Dist. LEXIS 4701, at *26-27 (S.D.N.Y. Jan. 30, 1998) ("[A] stranger to a judgment may . . . collaterally estop the same plaintiff if the former judgment conclusively establishes in the stranger's favor an issue which is also a necessary element of the plaintiff's subsequent case.").

Here, plaintiff claims that the Settlement Agreement settled derivative claims of the Orly Trust and that the settlement proceeds should have been paid into the Orly Trust. *See* FAC ¶ 4, 43-46, passim. Plaintiff's assignor, through its trustee Dalia, litigated the very same issue in the 2010 Action. On August 11, 2014, Dalia, as trustee, filed a "motion to substitute for plaintiff Orly Genger on her derivative claims against the Trump Group and for an order directing settlement proceeds to be paid into the court." Sullivan Decl. Ex. R. In this motion, Dalia— acting for the Orly Trust—argued that "Orly has deliberately manufactured confusion as to whether or not she settled the Orly Trust derivative claims against the Trump Group" and "payment only to Orly, and not the Orly Trust, is improper." *Id.* at p. 7.[21]

---

[21] With that motion, Dalia, as trustee, continued her earlier intimated challenge to the Settlement Agreement, begun in June 2013. *See* page 6, above.

In her reply memorandum, Dalia again argued that "[b]ecause it has been definitely revealed that Orly settled the Orly Trust's claims against the Trump Group, the principal relief sought by this Motion is the payment into Court of the $32.3 million in proceeds from the settlement of the Orly Trust's claims." Sullivan Decl. Ex. S at p. 3 (Dalia Genger's February 20, 2015 Reply Memorandum of Law).

In the 2010 Action, counsel for Dalia as trustee continued to seek the settlement proceeds: "we . . . moved for the settlement proceeds to be paid into the court pending an allocation and determination of who that money belongs to and that's why we are before you today." Sullivan Decl. Ex. T at 7:4-7 (transcript of oral argument on March 25, 2015). Dalia's lawyers argued that Orly made "purely derivative claims" (*id*. at 24:13-14), that "they [Orly and her lawyers] were playing convenient word games . . . but the settlement agreement itself belies what I believe Mr. Griver is trying to convince this Court of . . ." (*id*. at 25:20-26) and that "[t]hey settled those claims and they got paid for it. If she brought this case as a derivative plaintiff and she got paid for her derivative claims, it is black letter law that that money, those settlement proceeds on behalf of the derivative plaintiff go to the principal. They don't belong to the individual." *Id*. at 27:10-16. Dalia, as trustee, failed in this effort.

Indeed, the court in the 2010 Action made its doubts about Dalia's argument clear:

| | |
|---|---|
| Ms. Bachman | [Dalia's counsel]: . . . those settlement proceeds on behalf of the derivative plaintiff go to the principal. They don't belong to the individual. |
| The Court: | Aren't't you too late? |
| Ms. Bachman: | How so? |
| The Court: | It settled. |
| Ms. Bachman: | But the payment hasn't been made yet. |
| The Court: | I don't know. It sounded like it was. And does it matter? Does it matter that it hasn't been paid? Even if it hasn't been, the agree-ment has been entered, its' – is there a judgment or something? |
| Mr. Allingham: | Your Honor entered a stipulation of dismissal and we have paid $17.25 million plus interest and we are obligated on two more notes. |
| The Court: | As he said, it sounds like that ship has sailed. |

Sullivan Dec. Ex. T at 27:14-26-28:1-6.

In fact, the court denied Dalia's motion on February 19, 2019. Sullivan Decl. Ex. Q. The issue (whether derivative claims were settled and whether the settlement proceeds should have been paid into the Orly Trust) were necessarily decided and material to the decision. Collateral estoppel precludes plaintiff from contesting the issue again.[22]

## CONCLUSION

For the foregoing reasons, defendants Zeichner Ellman & Krause LLP and Yoav M. Griver respectfully request that the Court dismiss plaintiff's First Amended Complaint with prejudice and grant such other and further relief as is just and appropriate.

Dated: New York, New York        **SULLIVAN & WORCESTER LLP**
       March 30, 2020

                               By: /s/ Michael T. Sullivan
                                   Michael T. Sullivan
                                   Clark A. Freeman
                                   Anna Lea Setz
                         1633 Broadway
                         New York, New York 10019
                         Telephone: (212) 660-3000
                         Facsimile: (212) 660-3001
                         msullivan@sullivanlaw.com
                         cfreeman@sullivanlaw.com
                         asetz@sullivanlaw.com

                         *Attorneys for Defendants Zeichner Ellman &*
                         *Krause LLP and Yoav M. Griver*

---

[22] The fact that defendants were not parties to the 2010 Action is irrelevant. *See Caidor*, 1998 U.S. Dist. LEXIS 4701, at *26-27 ("[a] stranger to a judgment may thus collaterally estop the same plaintiff if the former judgment conclusively establishes in the stranger's favor an issue which is also a necessary element of the plaintiff's subsequent case."). Similarly, it is irrelevant that Dalia, as trustee, is appealing the decision in the 2010 Action. Sullivan Decl. Ex. U. "[R]es judicata and collateral estoppel apply once final judgment is entered in a case, even while an appeal from that judgment is pending." *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998); *see also McGriff v. Keyser*, No. 17 Civ. 8619 (KMK), 2019 WL 1417126, 2019 U.S. Dist. LEXIS 54427, at *15-16 (S.D.N.Y. Mar. 29, 2019) ("[T]he filing of the appeal is of no consequence in evaluating the collateral estoppel effect of the . . . decision."); *Azzawi v. Int'l Ctr. for Dispute Resolution*, No. 16 Civ. 548 (KPF), 2016 WL 6775437, 2016 U.S. Dist. LEXIS 157712 at *14 n.5 (S.D.N.Y. Nov. 14, 2016) (dismissing claim with prejudice because "the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided" and "[a] pending appeal does not change the Court's conclusion that collateral estoppel bars [the claim].").