UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECOVERY EFFORT INC.,

                                    Plaintiff,

                    - against -

ZEICHNER ELLMAN & KRAUSE LLP, WACHTEL
MISSRY LLP, YOAV M. GRIVER and WILLIAM B.
WACHTEL,

                                    Defendants.

19 CIV. 5641 (VSB) (KHP)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
(212) 337-5361
*Attorneys for Plaintiff*

## Table of Contents

INTRODUCTION ...................................................................................................1

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS .....................................................................................2

    I.     The Genger Divorce and Related Litigation .........................................2

    II.    New York State Court Litigation ..........................................................5

    III.   The 2013 Resolution of the Derivative Claims ....................................7

    IV.   Dalia attempted to protect the Orly Trust's interests, but the state courts never ruled on the merits of her applications. .................................................10

    V.    The 2013 Settlement was a collusive payment for the derivative claims. ............12

STANDARD ........................................................................................................14

ARGUMENT .......................................................................................................14

    I.     Derivative Litigation Background .......................................................14

    II.    Each of Plaintiff's claims is well-pleaded and states a cause of action. .................16

        A.   Plaintiff has adequately pled malpractice. .................................16

            i.     The allegations satisfy each element of a malpractice claim. ........16

            ii.    Privity is not required where the allegations include fraud, collusion, malicious acts, or other special circumstances...............17

            iii.   Defendants are estopped from denying privity where they claimed to represent Plaintiff. .........................................................19

        B.   Plaintiff has adequately pled fraud. ...........................................20

            i.     Orly Genger and Defendants owed fiduciary duties to the Trust. 21

            ii.    Plaintiff has adequately pled reasonable reliance. .........................22

            iii.   Plaintiff's fraud claim is not duplicative of its malpractice claim, and, in any event, would not require dismissal............................23

        C.   Plaintiff has adequately pled breach of fiduciary duty (as to third cause of action). .................................................................................25

        D.   Plaintiff has adequately pled breach of fiduciary duty (as to fourth cause of action—with respect to Wachtel Defendants). ......................26

E.     Plaintiff has adequately pled aiding and abetting breach of fiduciary duty. .................................................................................................28

F.     Plaintiff has adequately pled aiding and abetting conversion ...................29

G.     Plaintiff has adequately pled its breach of contract claim. .......................30

III.     Plaintiff's claims are not barred by the statute of limitations.................................31

A.     Plaintiff's fraud claim is timely.................................................................32

B.     Plaintiff's malpractice claim is timely........................................................33

C.     Plaintiff's breach of fiduciary duty claim is timely....................................34

D.     Plaintiff's conversion claim is timely. ........................................................34

E.     Plaintiff's breach of contract claim is timely. ............................................35

IV.     Plaintiff's claims are not barred by collateral estoppel. .........................................35

CONCLUSION............................................................................................................40

# Table of Authorities

## Cases

*AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co.,*
  5 N.Y.3d 582 (2005) ...............................................................................18, 21

*Aranki v. Goldman & Assocs., LLP,*
  34 A.D.3d 510 (2d Dep't 2006) ..............................................................18

*ARB Upstate Commc'ns LLC v. R.J. Reuter, L.L.C.,*
  93 A.D.3d 929 (3d Dep't 2012) ...............................................................25

*Avilon Auto. Grp. v. Leontiev,*
  168 A.D.3d 78 (1st Dep't 2019)...........................................................36, 38

*Bansbach v. Zinn,*
  1 N.Y.3d 1 (2003) ....................................................................................22

*Baratta v. ABF Real Estate Co.,*
  215 A.D.2d 518 (2d Dep't 1995) ..............................................................32

*Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC,*
  692 F.3d 42 (2d Cir. 2012) ......................................................................30

*Bd. of Educ. v. Long Island Power Auth.,*
  130 A.D.3d 953 (2d Dep't 2015) ..............................................................30

*Birnbaum v. Birrell,*
  17 F.R.D. 409 (S.D.N.Y. 1955) ...............................................................15

*Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,*
  369 F.3d 212 (2d Cir. 2004) ......................................................................2

*Brean Murray, Carret & Co. v. Morrison & Foerster LLP,*
  165 A.D.3d 582 (1st Dep't 2018)..............................................................24

*Burke, Albright, Harter & Rzepka, LLP v. Sills,*
  83 A.D.3d 1413 (4th Dep't 2011) .............................................................26

*Calcutti v. SBU, Inc.,*
  224 F. Supp. 2d 691 (S.D.N.Y. 2002).................................................25, 31

*Cascardo v. Dratel,*
  171 A.D.3d 561 (1st Dep't 2019)..............................................................24

*Cent. Tr. Co., Rochester v. Goldman,*
  70 A.D.2d 767 (4th Dep't 1979) ...............................................................33

*Cerniglia v. Ambach,*
  145 A.D.2d 893 (3rd Dep't 1988)..............................................................38

*Certain-Teed Prod. Corp. v. Topping,*
    171 F.2d 241 (2d Cir. 1948) ...................................................................... 15

*Cherry Hill Mkt. Corp. v. Cozen O'Connor P.C.,*
    118 A.D.3d 514 (1st Dep't 2014) .............................................................. 26

*Childers v. New York & Presbyterian Hosp.,*
    36 F. Supp. 3d 292 (S.D.N.Y. 2014) ..................................................... 20, 21

*City of Oneida v. Chassin,*
    229 A.D.2d 855 (3d Dep't 1996) ............................................................... 38

*Clarke v. Greenberg,*
    296 N.Y. 146 (1947) ................................................................................. 15

*Crossland Sav. FSB v. Rockwood Ins. Co.,*
    700 F. Supp. 1274 (S.D.N.Y. 1988) ...................................................... 18, 22

*Cusimano v. Schnurr,*
    137 A.D.3d 527 (1st Dep't 2016) .............................................................. 34

*Dabney v. Levy,*
    191 F.2d 201 (2d Cir. 1951) ..................................................................... 15

*Dalia Genger v. TR Investors, LLC,*
    Case No. 6906-CS (Del. Ch. Ct.) ............................................................... 8

*Di Benedetto v. Pan Am World Serv., Inc.,*
    359 F.3d 627 (2d Cir. 2004) ..................................................................... 26

*Donohue Candy & Tobacco Co. v. Consumer Prod. Distributors, Inc.,*
    422 F. Supp. 3d 637 (E.D.N.Y. 2019) ....................................................... 37

*EBC I, Inc. v. Goldman, Sachs & Co.,*
    5 N.Y.3d 11 (2005) ............................................................................. 15, 25

*Estate of Schneider v. Finmann,*
    15 N.Y.3d 306 (2010) .......................................................................... 16, 17

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
    12 N.Y.3d 553 (2009) .......................................................................... 21, 22

*Fin. Servs. Vehicle Tr. v. Saad,*
    72 A.D.3d 1019 (1st Dep't 2010) .............................................................. 25

*Fishman by Fishman v. Delta Air Lines, Inc.,*
    132 F.3d 138 (2d Cir. 1998) ..................................................................... 31

*Genger v. Genger ("Genger 1"),*
    966 N.Y.S.2d 346 (Sup. Ct. 2013) .............................................................. 7

*Genger v. Genger* ("*Genger 2*"),
121 A.D.3d 270 (1st Dep't 2014)..................................................................................2, 3, 4, 7

*Genger v. Genger* ("*Genger 3*"),
76 F. Supp. 3d 488 (S.D.N.Y. 2015)...........................................................................3, 4, 12, 29

*Genger v. Genger,*
144 A.D.3d 581 (1st Dep't 2016).........................................................................................11

*Genger v. TR Inv'rs, LLC,*
26 A.3d 180 (Del. 2011)...................................................................................................5, 8

*Ginsburg Dev. Companies, LLC v. Carbone,*
85 A.D.3d 1110 (2d Dep't 2011) ...............................................................................18, 19, 25

*Glamm v. Allen,*
57 N.Y.2d 87 (1982) ..........................................................................................................33

*Glenclova Inv. Co. v. Trans-Res., Inc.,*
874 F. Supp. 2d 292 (S.D.N.Y. 2012)......................................................................................3

*Good Old Days Tavern, Inc. v. Zwirn,*
259 A.D.2d 300 (1st Dep't 1999)..........................................................................................18

*Gutierrez v. Fox,*
141 F.3d 425 (2d Cir. 1998) ...............................................................................................38

*Harris v. TD Ameritrade Inc.,*
338 F. Supp. 3d 170 (S.D.N.Y. 2018).......................................................................................2

*Hell's Kitchen Neighborhood Ass'n v. Bloomberg,*
2007 WL 3254393 (S.D.N.Y. Nov. 1, 2007) ...........................................................................38

*Hirsch v. Rehs Galleries, Inc.,*
2020 WL 917213 (S.D.N.Y. Feb. 26, 2020) ...........................................................................31

*Hoffman v. RSM U.S. LLP,*
169 A.D.3d 522 (1st Dep't 2019)..........................................................................................24

*Hutton v. Klabal,*
726 F. Supp. 67 (S.D.N.Y. 1989)..........................................................................................14

*IDT Corp. v. Morgan Stanley Dean Witter & Co.,*
12 N.Y.3d 132 (2009) ........................................................................................................34

*In re Cohen,*
370 F. Supp. 1166 (S.D.N.Y. 1973).......................................................................................23

*In re Ginzburg,*
89 A.D.3d 938 (2d Dep't 2011) ...........................................................................................28

*In re Kulcsar*,
   2011 WL 1202168 (S.D.N.Y. Mar. 24, 2011) ........................................................26

*In re Refco Inc. Sec. Litig.*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2011)..................................................................21

*In re Sharp Int'l Corp.*,
   403 F.3d 43 (2d Cir. 2005) ............................................................................28, 29

*In re Vebeliunas*,
   332 F.3d 85 (2d Cir. 2003) ............................................................................19, 20

*Jacobs v. Cartalemi*,
   156 A.D.3d 605 (2d Dep't 2017) ........................................................................15

*Johnson v. Proskauer Rose LLP*,
   129 A.D.3d 59 (1st Dep't 2015).........................................................................24

*Kaplan v. Bennett*,
   465 F. Supp. 555 (S.D.N.Y. 1979).....................................................................14

*Kaufman v. Cohen*,
   307 A.D.2d 113, (1st Dep't 2003).........................................................20, 28, 34

*Kaufman v. Eli Lilly & Co.*,
   65 N.Y.2d 449 (1985) ...................................................................................36, 37

*Klein v. Gutman*,
   12 A.D.3d 417 (2d Dep't 2004) ..........................................................................34

*Lauder v. Goldhamer*,
   122 A.D.3d 908 (2d Dep't 2014) ........................................................................26

*Lawlor v. Nat'l Screen Serv. Corp.*,
   349 U.S. 322 (1955).............................................................................................39

*Lemon v. Hollinger*,
   2018 WL 3231665 (S.D.N.Y. May 14, 2018)....................................................19

*Luv N' Care, Ltd. v. Shiboleth LLP*,
   2017 WL 3671039 (S.D.N.Y. Aug. 8, 2017) .....................................................24

*Manhattan Telecommunications Corp. v. H & A Locksmith, Inc.*,
   21 N.Y.3d 200 (2013) .........................................................................................38

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280 (2d Cir. 2002) ...............................................................................37

*Matsumura v. Benihana Nat'l Corp.*,
   542 F. Supp. 2d 245 (S.D.N.Y. 2008).................................................................22

*Matter of Estate of Kraus,*
    208 A.D.2d 728 (2d Dep't 1994) ...................................................................35

*Mendel v. Henry Phipps Plaza W., Inc.,*
    6 N.Y.3d 783 (2006) ...................................................................................30

*Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia,*
    23 F. Supp. 2d 439 (S.D.N.Y. 1998)..........................................................32

*Mitschele v. Schultz,*
    36 A.D.3d 249 (1st Dep't 2006)..................................................................25

*Mokhiber on Behalf of Ford Motor Co. v. Cohn,*
    783 F.2d 26 (2d Cir. 1986) .................................................15, 21, 26, 29

*Motrade v. Rizkozaan, Inc.,*
    1998 WL 108013 (S.D.N.Y. Mar. 11, 1998) ............................................39

*Mr. San, LLC v. Zucker & Kwestel, LLP,*
    112 A.D.3d 796 (2d Dep't 2013) ...............................................................18

*Nassau Tr. Co. v. Montrose Concrete Prod. Corp.,*
    56 N.Y.2d 175 (1982) .................................................................................19

*Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn,*
    165 Misc. 2d 539 (Sup. Ct., N.Y. Cty. 1994) ...........................................27

*Newman & Schwartz v. Asplundh Tree Expert Co.,*
    102 F.3d 660 (2d Cir. 1996) ......................................................................30

*Oddo Asset Mgmt. v. Barclays Bank PLC,*
    19 N.Y.3d 584 (2012) .................................................................................21

*Oppenheim v. Simon,*
    57 A.D.2d 1006 (3d Dep't 1977) ...............................................................27

*Papilsky v. Berndt,*
    466 F.2d 251 (2d Cir. 1972) ......................................................................14

*Paramount Pictures Corp. v. Allianz Risk Transfer AG,*
    31 N.Y.3d 64 (2018) .............................................................................36, 37

*Petrou v. Karl Ehmer Int'l Foods, Inc.,*
    167 A.D.2d 338 (2d Dep't 1990) ...............................................................34

*Postiglione v. Castro,*
    119 A.D.3d 920 (2d Dep't 2014) ...............................................................24

*Rattenni v. Cerreta,*
    285 A.D.2d 636 (2d Dep't 2001) ...............................................................34

*Robinson v. Deutsche Bank Tr. Co. Americas,*
    572 F. Supp. 2d 319 (S.D.N.Y. 2008)......................................................................23

*Rosas v. Balter Sales Co. Inc.,*
    2015 WL 12915807 (S.D.N.Y. Mar. 30, 2015) ......................................................31

*Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer,*
    8 N.Y.3d 438 (2007) ......................................................................................16, 17

*Salichs v. Tortorelli,*
    2004 WL 602784 (S.D.N.Y. Mar. 29, 2004)..........................................................25

*Saul v. Cahan,*
    153 A.D.3d 947 (2d Dep't 2017) ...........................................................................21

*Schaeffer v. Kessler,*
    2013 WL 1155587 (S.D.N.Y. Mar. 20, 2013) .......................................................24

*Serino v. Lipper,*
    123 A.D.3d 34 (1st Dep't 2014).............................................................................14

*Simcuski v. Saeli,*
    44 N.Y.2d 442 (1978) ...........................................................................................33

*Simmons v. Trans Express Inc.,*
    955 F.3d 325 (2d Cir. 2020) ..................................................................................35

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC,*
    366 F. Supp. 3d 516 (S.D.N.Y. 2018)...................................................................14

*Spinelli v. Nat'l Football League,*
    903 F.3d 185 (2d Cir. 2018) ..................................................................................20

*Staehr v. Hartford Fin. Servs. Grp., Inc.,*
    547 F.3d 406 (2d Cir. 2008) ....................................................................................2

*Steinberg v. Steinberg,*
    434 N.Y.S.2d 877 (Sup. Ct., N.Y. Cty. 1980) ................................................15, 21

*Stern v. Consumer Equities Assocs.,*
    160 A.D.2d 993 (2d Dep't 1990) ...........................................................................17

*Stevens v. McGuireWoods LLP,*
    43 N.E.3d 923 (Ill. 2015) ......................................................................................18

*TR Inv'rs, LLC v. Genger,*
    2010 WL 2901704 (Del. Ch. July 23, 2010) ...........................................................4

*TR Inv'rs, LLC v. Genger,*
    2010 WL 3279385 (Del. Ch. Aug. 9, 2010).............................................................4

*TR Investors, LLC v. Genger*,
  2013 WL 603164 (Del. Ch. Feb. 18, 2013) ...........................................................................7

*United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*,
  865 F.3d 71 (2d Cir. 2017) ....................................................................................................14

*Velez v. Feinstein*,
  87 A.D.2d 309 (1st Dep't 1982) ...........................................................................................14

*Vermont Mut. Ins. Co. v. McCabe & Mack, LLP*,
  105 A.D.3d 837 (2d Dep't 2013) .........................................................................................23

*White of Lake George Inc. v. Bell*,
  251 A.D.2d 777 (3d Dep't 1998) .........................................................................................24

*William Doyle Galleries, Inc. v. Stettner*,
  167 A.D.3d 501 (1st Dep't 2018) .........................................................................................29

*Wu v. Jensen-Lewis Co.*,
  345 F. Supp. 3d 438 (S.D.N.Y. 2018) ..................................................................................38

**Rules**

CPLR 203 .......................................................................................................................................32

CPLR 213 .......................................................................................................................................32

CPLR 214 ...........................................................................................................................33, 34, 35

Fed. R. Civ. P. 9 ............................................................................................................................14

N.Y. Rules of Prof'l Conduct 1.15.............................................................................................26

## INTRODUCTION

Plaintiff Recovery Effort Inc. submits this memorandum of law in opposition to the motions to dismiss filed by Defendants Zeichner Ellman & Krause LLP and Yoav M. Griver (together, "Zeichner Defendants"), *see* No. 41 ("ZEK Br."), and Defendants Wachtel Missry LLP and William B. Wachtel (together, "Wachtel Defendants"), *see* No. 42 ("WAC Br.").

## PRELIMINARY STATEMENT

This action is about a collusive settlement ("2013 Settlement"). Defendants are law firms and lawyers who disloyally and deceptively claimed to represent the interests of the Orly Genger 1993 Trust ("Orly Trust" or "Plaintiff") in a derivative lawsuit.[1] In reality, Defendants conspired to misappropriate and divert tens of millions of dollars of the Orly Trust's property. Although Defendants repeatedly stood up in court and claimed to represent the interests of the Orly Trust, when money arrived in settlement, they secretly helped their clients and friends make off with the money, cutting out the real party in interest—the Orly Trust. The factual background is somewhat complicated, but Plaintiff's case is simple: Defendants are liable for their knowing participation in this fraudulent scheme to steal from the Orly Trust.

In their motions to dismiss, Defendants throw up a litany of procedural arguments and alternative facts. They argue that their collusive settlement was somehow judicially stamped—that they successfully facilitated a secret settlement only on behalf of Orly Genger *individually*, even though she had no real individual claims. But neither the court nor the settlement itself determined the rightful owner of the settlement proceeds. And nobody could deny that some—if not all—of those proceeds belonged to the Orly Trust.

---

[1] Recovery Effort Inc., as a wholly-owned subsidiary and the assignee of the rights of the Orly Trust, stands in the shoes of the Orly Trust and therefore references to the "Orly Trust" and "Plaintiff" are used interchangeably.

Defendants' motions to dismiss should be denied entirely. Plaintiff has adequately pled each and every one of its claims. None of its claims are duplicative of or merely incidental to malpractice. Defendants' core wrong sounds in fraud—Defendants tricked the Orly Trust, the court, and the group funding the settlement into believing that they were representing the interests of the Trust, so that they could defraud the Trust of its right to settlement proceeds.

Nor are any of Plaintiff's claims barred by any limitations period. The six-year fraud statute of limitations applies, or equitable tolling, to all of the tort claims. And the contract claim is plainly timely, given New York's six-year statute for breach of contract.

Finally, collateral estoppel does not bar any of Plaintiff's claims: No court has ever determined to whom the settlement proceeds belong or ruled on the fraudulent course of conduct committed by Defendants in reaching that settlement. Defendants' arguments to the contrary rest solely on a misreading of a long, complicated factual history.

## STATEMENT OF FACTS

The following facts are taken from Plaintiff's complaint and accepted as true for purposes of deciding Defendants' motions to dismiss.[2]

## I.    The Genger Divorce and Related Litigation

In 1985, Arie Genger founded Trans-Resource, Inc. ("TRI"), a company that produces and distributes fertilizer. *Genger v. Genger*, 121 A.D.3d 270, 274 (1st Dep't 2014) ("*Genger 2*"). Until 2001, TRI was a subsidiary of TPR Investment Associates, Inc. ("TPR"). *Id.* The Genger

---

[2] Defendants rely on a number of court decisions and filings to improperly litigate the *facts* underlying the FAC. Although the allegations in the FAC, which must be accepted as true for the purposes of Defendants' motions, adequately support each of Plaintiff's claims, this recitation of facts also draws on related court decisions and filings to provide the Court with a more complete understanding of the background of this litigation. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) ("[M]atters judicially noticed … are not considered matters outside the pleadings."); *Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("This court is entitled to take judicial notice of factual and legal determinations made by other courts."); *see also Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 187 (S.D.N.Y. 2018).

family—Arie, father, Dalia, mother, Orly, daughter, Sagi, son—each held an interest in TPR. Sagi and Orly held indirect interests in TPR through their respective trusts, the Sagi Genger 1993 Trust ("Sagi Trust") and the Orly Trust.[3] FAC ¶ 14.

In 2001, a group of investors ("Trump Group") purchased a minority stake in TRI. The Stockholders Agreement ("2001 Stockholders Agreement") governing that purchase placed restrictions on future transfers of TRI stock and provided a right of first refusal to the Trump Group. A transfer that violated those conditions would be void, the shares would revert to TPR, and the Trump Group would have a right to purchase the invalidly transferred shares at their fair market value as of the date of the voided transfer. FAC ¶¶ 13–15.

In October 2004, Aria and Dalia entered into a divorce settlement. As part of that settlement, TPR transferred the family's interests in TRI to (i) Arie, (ii) the Orly Trust and (iii) the Sagi Trust ("2004 Transfers"). FAC ¶ 15. The trusts received equal ownership interests.

In 2008, after a dispute between the Trump Group and TRI regarding additional financing, the Trump Group sued TPR in federal court claiming that the 2004 Transfers violated the 2001 Stockholders Agreement and triggered their right of first refusal. *Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 296 (S.D.N.Y. 2012); FAC ¶ 16.

While that litigation was pending, in 2008, TPR and the Sagi Trust reached a two-part settlement with the Trump Group. In the "Main Agreement," TPR and the Sagi Trust agreed to sell the TRI shares purportedly held by the Sagi Trust to the Trump Group for approximately $26.7 million, regardless of whether a court determined that the 2004 Transfers were void. *Genger 2*, 121 A.D.3d at 275; *see Genger v. Genger*, 76 F. Supp. 3d 488, 493 (S.D.N.Y. 2015)

---

[3] Dalia, the Sagi Trust, and the Orly Trust owned a minority stake in TPR through a limited partnership. Arie owned a majority stake in TPR directly.

("*Genger 3*"), *aff'd*, 663 F. App'x 44 (2d Cir. 2016). In the "Side Letter Agreement," TPR agreed

to give the Trump Group the option to buy whatever rights TPR held in the TRI shares

purportedly held by Arie and the Orly Trust for approximately $7.4 million and $10.3 million, or

60% less than the price the Trump Group paid for the Sagi Trust's TRI stock. *Genger 2*, 121

A.D.3d at 275; *see Genger 3*, 76 F. Supp. 3d at 493. This option would be trigged only if a court

determined that the 2004 Transfers were void, resulting in the legal and/or beneficial ownership

of the TRI shares reverting to TPR.

    Meanwhile, in 2008, after a dispute over control of TRI's board, the Trump Group filed

suit against Arie in Delaware Chancery Court to determine who controlled TRI. In July 2010,

the Chancery Court found that the 2004 Transfers *did* violate the 2001 Stockholders Agreement

and that the Trump Group had majority control through the Main Agreement with TPR and

the Sagi Trust. *TR Inv'rs, LLC v. Genger*, 2010 WL 2901704 (Del. Ch. July 23, 2010), *aff'd*, 26 A.3d

180 (Del. 2011). Then, in August 2010, the court also determined that the 2004 Transfers to Arie

and the Orly Trust were invalid and that the stock had reverted to TPR, triggering the Trump

Group's option to buy the stock under the Side Letter Agreement. *TR Inv'rs, LLC v. Genger*, 2010

WL 3279385 (Del. Ch. Aug. 9, 2010), *rev'd in part*, 26 A.3d 180 (Del. 2011); FAC ¶¶ 16–18.

    In 2011, the Delaware Supreme Court affirmed that the 2004 Transfers were invalid,

which meant that TPR held *record* ownership of the shares purportedly transferred to Arie and

the trusts as a result of the 2004 Transfers.[4] The court also found that Arie was personally bound

by the Chancery Court's ruling that the transfer out of TPR was legally void, as Arie was before

the court, but that it lacked the power to declare who owned the *beneficial* interests in the shares

---

[4] Of course, as a result of this, the Trump Group obtained record ownership under the 2008 agreements (the Main and Side Letter Agreements) with the Sagi Trust and TPR. *See Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 200 (Del. 2011).

transferred by TPR to the Orly Trust because it lacked personal jurisdiction over the Orly Trust and TPR. *Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 202 (Del. 2011); FAC ¶¶ 16–18, 28.

## II.   <u>New York State Court Litigation</u>

In 2009 and 2010, Orly and her father Arie jointly commenced two state court lawsuits: *Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust against Dalia Genger, et al.*, Supreme Court, New York County, No. 109749/2009 ("2009 Action"), and *Arie Genger and Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust against Sagi Genger, et al.*, Supreme Court, New York County, No. 651089/2010 ("2010 Action").[5] FAC ¶ 19.

The 2013 Settlement at issue here arose out of the 2010 Action. In that action, brought before the Delaware Supreme Court's decision in 2011, Arie and Orly (derivatively, on behalf of the Orly Trust) brought claims related to the ownership of the TRI shares and the Trump Group's allegedly unfair purchase price paid to TPR for the Orly Trust and Arie shares (i.e., the 60% discount compared to the price paid for the Sagi Trust's shares). Orly purported to bring her claims derivatively *and individually*, but because Orly never owned any shares in her individual capacity, her claims were *necessarily derivative* of the Orly Trust. In fact, at *no* point did Orly *ever* directly or indirectly own any shares of TRI *as an individual*. *See* FAC ¶¶ 19–21, 33.

Defendants represented Orly in the 2010 Action. They repeatedly acknowledged that Orly was acting in a derivative capacity on behalf of the Orly Trust and that they represented the interests of the Orly Trust.[6] FAC ¶¶ 23–26. The complaint lists several (non-exhaustive) examples:

---

[5] The 2009 Action is not directly relevant to this suit—the 2013 Settlement arose out of the *2010* Action—but it provides useful context: Defendants made many additional representations in the 2009 Action that they were representing the interests of the Orly Trust.

[6] The Wachtel Defendants disingenuously argue that they appeared on behalf of Orly *only* as an individual because the Orly Trust was not a party to the original complaints in the 2009 and 2010 Actions. *See* WAC Br. 2–3. But on

(continued…)

First, the Wachtel Defendants filed a brief on November 22, 2011, arguing that "as the beneficiary of the … Trust, [Orly] has a right to assert causes of action on behalf of the trust." *See* Orly Genger's Mem. of Law in Opposition to Motions to Dismiss at 1, *2010 Action* (No. 182) (citing *2009 Action*, (No. 71), slip. op. at 4 (June 28, 2010)); FAC ¶ 23.[7]

Second, at a motion hearing on March 13, 2012, Defendant Yoav Griver argued that Orly had the right to pursue derivative claims on behalf of the Orly Trust:

> [T]here's no question that the Orly Trust is represented. The caption of the case says that Orly is representing both herself and the Orly Trust. The Orly Trust interests are represented here. If the Court agrees with me, it's being represented by me. If the Court agrees with [the Trustee's counsel] Mr. Meister … it's being represented by Mr. Meister and [the Trustee]. Everyone here, every trustee, every beneficiary is right before the court.

Transcript of Proceedings at 109, *2010 Action* (No. 222); FAC ¶ 24. Mr. Griver later reassured the court that the lawsuit was indeed for the benefit of the Orly Trust:

> As far as the fact that Orly is trying to steal from the trust, if your Honor credits that, then honestly it has not [been] paying attention to the last two years of litigation. But I will draw the Court's attention to footnote 7 of page 10 of Orly Genger's second reply memorandum … where *Orly explains that Orly seeks the reformation of the stipulation of settlement, which would result in the Orly Trust continuing to have the same beneficial interest in its TRI shares that it was intended to have as a result of Arie and Dalia's divorce.*

Transcript of Proceedings at 131, *2010 Action* (No. 222) (emphasis added); FAC ¶ 25.

Third, Mr. Griver stated in a brief filed on February 26, 2013: "As the caption in this case clearly states, the Orly Trust remains a party [and] this Court has already ruled that Orly

---

every complaint in those actions, including the *operative*, amended complaints, Orly was appearing "on behalf of" the Orly Trust, as a derivative plaintiff, as stated in the caption. *See* Second Amended Verified Complaint, *2009 Action* (No. 83); Third Amended and Supplemental Complaint, *2010 Action* (No. 112).

[7] Significantly, parties in the 2010 Action had attempted to argue that Orly lacked standing to bring a derivative suit on behalf of the Orly Trust. *See* TPR's and Sagi Trust's Memorandum of Law in Support of Their Motion to Dismiss at 9, *2010 Action* (No. 135). The opposition papers filed by Defendants sought to *rebut* that argument.

has the right to prosecute actions on behalf of the Orly Trust."[8] FAC ¶ 26 (quoting Orly

Genger's Mem. of Law in Opposition to the Trump Group['s] Motion to Vacate or Modify

Temporary Restraining Order at 4, *2010 Action* (No. 341)).

In January 2013, the state court permitted the Orly Trust's and Arie's breach of fiduciary

duty and unjust enrichment claims to proceed. *Genger v. Genger*, 966 N.Y.S.2d 346 (Sup. Ct. 2013)

("*Genger 1*"). The state court rejected the Trump Group's argument that Orly did not have

standing to bring derivative claims on behalf of the Orly Trust. *See id.* On appeal, the First

Department did not disturb that finding. *Genger 2*, 121 A.D.3d at 281; *see* FAC ¶ 27.

## III.    The 2013 Resolution of the Derivative Claims

In February 2013, the Delaware Chancery Court indicated that it would hold a contempt

proceeding against Arie for continuing the 2010 Action in New York, in violation of the

Chancery Court's prior finding that the share transfers were void. *See TR Investors, LLC v. Genger*,

2013 WL 603164 (Del. Ch. Feb. 18, 2013). Then, in June 2013, with Arie days away from a

likely contempt citation, TRI, Orly, Arie, the Brosers and their related entities, and the Trump

Group entered into the secret, collusive 2013 Settlement. FAC ¶¶ 28–29.

This 2013 Settlement Agreement provided that the Trump Group would pay $32.3

million (comprised of $17.3 million in cash and two promissory notes of $7.5 million each) to

"resolve all issues, disputes and disagreements between the [parties]," including the "issue of

ownership of all [TRI] shares."[9] FAC ¶ 34. The Agreement said *nothing*, however, about how the

---

[8] As cited above, the 2010 Action caption was "*Arie Genger and Orly Genger in her individual capacity and **on behalf of The Orly Genger 1993 Trust** against Sagi Genger, et al.*" (Emphasis added).

[9] The two promissory notes are to be paid upon the happening of various events, some of which have not yet occurred. No payment has yet been made under either promissory note. The two promissory notes are currently held by Michael Bowen, a successor escrow agent under the 2013 Settlement Agreement (in place of William Wachtel, the agent named in the Agreement).

$32.3 million should be distributed. FAC ¶ 35. Of course, the then-trustee of the Orly Trust tried

to find out—or even simply see a copy of the 2013 Settlement Agreement—but Defendants

prevented her: The Trustee of the Orly Trust did not see a copy of Agreement until more than a

year later, in October 2014. FAC ¶ 29. And even then, it was impossible to determine where the

settlement proceeds had gone because the Agreement did not contain that information and

Defendants refused to provide it. FAC ¶ 35.

Despite providing no clear mechanism for payment to the Orly Trust, the Agreement

required the parties to "cause the Orly Genger 1993 Trust to release any and all claims against

the Trump Group." In other words, the signatories—facilitated by Defendants—took the Orly

Trust's money and then agreed to ensure that the Trust's claims would be extinguished.[10] FAC

¶ 58. By doing so, the signatories made clear that the purpose of the settlement—and the only

material consideration for the $32 million payment—was to release claims belonging to the *Orly

Trust*.[11] FAC ¶ 36. Although the 2013 Settlement Agreement provided no distribution terms, it

did provide that the Trump Group would deposit the proceeds with the Wachtel Missry law firm,

as counsel to the AG Group—to serve solely as an escrow agent. FAC ¶ 34.

---

[10] In 2011, the Trustee of the Orly Trust had brought an action in Delaware seeking to validate the Orly Trust's ownership of the TRI shares—a suit Orly then successfully had enjoined as "duplicative" of her earlier-filed derivative claims in the 2010 Action. *See Dalia Genger v. TR Investors, LLC*, Case No. 6906-CS (Del. Ch. Ct.). After the 2013 Settlement Agreement was executed, the Wachtel Defendants lobbied the Delaware court and the Orly Trust's Trustee, on Orly's behalf, to discontinue her declaratory judgment claim against the Trump Group, on the ground that the ownership issue had been conclusively resolved in New York by virtue of the 2013 Settlement Agreement. *See* Letter from William Wachtel to Chancellor Strone, Aug. 12, 2013 ("We wish to confirm … that Orly has indeed settled all disputes between her and the Trump Group. As part of that settlement, Orly has acknowledged individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust.") (available at S.D.N.Y. No. 13-cv-08243-JF (No. 21-10)). In reliance thereon, the Orly Trust's Trustee ultimately agreed to do so, dismissing the case by stipulation, but specifically carved out the right to maintain "claim[s] for monetary damages." *See Dalia Genger v. TR Investors, LLC*, Case No. 6906-CS (Del. Ch. Ct.), No. 38 (available at 2013 Del. Ch. LEXIS 355).

[11] Although some of the settlement value is *conceivably* attributable to Arie's purported TRI shares, the Delaware Supreme Court affirmed that Arie had no ownership interest in the TRI shares, and thus the value of his ownership claim was, at most, de minimis. *See Genger*, 26 A.3d 180.

On June 18, 2013, Arie's counsel informed the court of the settlement by letter: "Enclosed please find a Stipulation of Discontinuance with Prejudice ["First Stipulation"]…. Arie Genger and Orly Genger, in her individual capacity *and on behalf of the Orly Genger 1993 Trust*; … Arnold Broser, David Broser and [their entities]; and [the Trump Group], and [TRI] have entered into a confidential settlement agreement to resolve all issues among the stipulating parties." Letter to Judge, *2010 Action* (No. 465) (emphasis added); FAC ¶ 37. On the enclosed stipulation of dismissal, Defendant Yoav Griver signed for Orly Genger, "in her individual capacity and on behalf of the Orly Genger 1993 Trust." Letter to Judge, *2010 Action* (No. 465); FAC ¶ 38; *see also* Stipulation (Request to so Order), *2010 Action* (No. 466) (including "on behalf of" Orly Trust language).

TPR and the Sagi Trust (in its capacity as a remainderman beneficiary of the Orly Trust) responded to the First Stipulation with a proposal to carve out and preserve any derivative claims from the dismissal. FAC ¶ 39. But on June 28, 2013, the Trump Group (represented by Skadden Arps) submitted a joint letter to the state court collectively rejecting that proposal:

> I write on behalf of the parties to the [2013 Settlement], including Arie and Orly Genger and my clients, the Trump Group. A material term of the agreement among the settling parties was the dismissal of ***all*** claims presently pending against one another, in whatever capacity they were brought. Certain of Orly Genger's claims against the Trump Group in this action have been held by Justice Feinman to be derivative in nature, brought by Orly on behalf of the Orly Genger 1993 Trust.
>
> …
>
> The language that was drafted during yesterday's conference call as a potential "fix" for the issues raised by [counsel for the Sagi Trust] – that "nothing contained [in the Order] shall in any way affect any derivative claims presently before the Court" - would have the effect of ***not*** dismissing Orly Genger's derivative claims against the Trump Group, contrary to the agreement of the settling parties. <u>Excluding such claims from the claims that are to be dismissed is not what the Trump Group bargained and paid for in the settlement</u>, and as a consequence we cannot stipulate to the entry of an order that includes such carve-out language.

Letter to Judge, *2010 Action* (No. 485) (bold in original, underline added); FAC ¶ 39.

On June 26, 2013, a Second Amended Stipulation of Discontinuance with Prejudice ("Second Stipulation") was filed. This stipulation was amended to replace the phrase "on behalf of the [Orly Trust]" with the (notably ambiguous) phrase "as beneficiary of [the Orly Trust]" (sometimes by physically crossing out "on behalf of" and hand-writing "as beneficiary of," including in the signature line for ZEK Defendants). *2010 Action* (No. 471); FAC ¶ 40. On July 1, 2013, the Second Stipulation was so-ordered by the court with all instances of "on behalf of" physically crossed out and replaced with handwritten text stating "as beneficiary of." *2010 Action* (No. 487). The Second Stipulation made no mention of the disposition of the settlement proceeds or even that consideration was given. FAC ¶ 40.

## IV.   **Dalia attempted to protect the Orly Trust's interests, but the state courts never ruled on the merits of her applications.**

Prior to the Second Stipulation, TPR and the Sagi Trust (in its capacity as a remainderman beneficiary of the Orly Trust), without the benefit of seeing the actual agreement, filed motions to try to stop court approval of the 2013 Settlement and to compel production of the Agreement and any related payment records. *See* Motions dated June 26, 2013 and July 17, 2013, *2010 Action* (Nos. 472, 563); FAC ¶ 39.

The state court declined to compel production of the settlement agreement materials, *see* Order, Dec. 23, 2013, *2010 Action* (No. 700), and *declined* to decide to whom the monies were owed:

> The remaining issues raised in this motion are whether Orly settled derivative claims of the Orly Trust, and if so, whether she should be enjoined from taking and using proceeds of the settlement for her sole benefit. Movants allege that, although the stipulation specifies that Orly settled claims against the Trump Group in her individual capacity and as beneficiary of the Orly Trust, she actually settled derivative claims belonging to the Orly Trust. Thus, they argue that the settlement proceeds belong to the Orly Trust.

…

> In the settlement agreement, Orly stops short of releasing derivative claims.
> Rather, … she only agrees to "cooperate" and "cause" the Orly Trust to
> release any and all claims against the Trump Group. … I invite the parties
> to the settlement agreement to set forth the claims given up by Orly in her
> individual and beneficial capacities, and to explain why any derivative
> claims advanced in the complaint are not released by the agreement. *Unless
> and until the issue of derivative claims is resolved, I cannot determine whether some or all
> of the settlement proceeds with the Trump Group belong to Orly or the Orly Trust*,
> particularly when the Sagi Trust has asserted a contingent remainderman
> interest in the Orly Trust.

Decision & Order, Mar. 21, 2014, *2010 Action* (No. 925) (ECF no. 45-15); FAC ¶ 40.

With that invitation, the Orly Trust's Trustee moved to intervene. *See* Motion, Aug. 11,
2014, *2010 Action* (No. 1099). She argued that, because the derivative plaintiff (Orly) was clearly
no longer pursuing the Trust's interests, she should be allowed to intervene, and she sought to
have the 2013 Settlement proceeds deposited with the court so that it could decide the proper
disposition of the settlement. *See* Mem. of Law, Aug. 11, 2014, *2010 Action* (No. 1108); FAC ¶ 41.

The state court at first held the Trustee's motion "in abeyance" for several years on the
ground that Orly was simultaneously seeking removal of the Trustee in Surrogate's Court. *See*
Interim Order, May 7, 2015, *2010 Action* (No. 1279). Then, on February 19, 2019, the state court
declined to resolve the issue or address the merits of Dalia's position, denying the trustee's motion
to intervene as "moot" because, in the interim, the underlying claims of the 2010 Action had
been dismissed. *See* Decision & Order, Feb. 19, 2019, *2010 Action* (No. 1520).[12] But the issue of

---

[12] In addition, on November 25, 2014, the state court entered a separate order, confirming that the July 1, 2013 so-ordering of the Second Stipulation had indeed dismissed all of the claims against the Trump Group, including the derivative ones brought by Orly on behalf of the Orly Trust. *See* Order, Nov. 25, 2014, *2010 Action* (No. 1153).

The Trustee appealed the November 25, 2014 order to the Appellate Division. *See* Notice of Appeal, Dec. 15, 2014, *2010 Action* (No. 1155). The Appellate Division affirmed the denial, holding once again that all of the derivative claims had been already dismissed by the prior state court orders on January 3, 2013 and July 1, 2013. *See Genger v. Genger*, 144 A.D.3d 581, 581 (1st Dep't 2016) ("[The November 2014] order did not dismiss any claims; rather, it recognized that all claims had previously been dismissed or discontinued by prior court orders ….").

(continued…)

the proper owner of the settlement funds deriving from those claims to this day has never been adjudicated in any forum.

The state court, accordingly, *never* decided who should ultimately receive the proceeds from the derivative settlement—a matter which even the 2013 Settlement Agreement itself does not address. FAC ¶ 43.

## V.   __The 2013 Settlement was a collusive payment for the derivative claims.__

However the signatories to the 2013 Settlement Agreement chose to dispose of the settlement proceeds, there is one thing that is absolutely clear: The settlement proceeds represent—substantially, if not entirely—the monetization of the claims brought derivatively by Orly on behalf of the Orly Trust.[13] FAC ¶ 44; *see Genger 3*, 76 F. Supp. 3d at 491 ("Orly has effectively monetized an interest in the [TRI] shares she claims not to have received to the tune of $32.3 million."). Yet the Orly Trust never received a single penny from the $32 million settlement. FAC ¶¶ 46–47, 56–57.

Without question, the proceeds of a settlement between a derivative plaintiff and a defendant belong to the real party in interest. FAC ¶ 45. Indeed, in agreeing to pay $32 million, the Trump Group explicitly said that it had "bargained and paid for" the resolution of the Orly Trust derivative claims. Letter to Judge, *2010 Action* (No. 485); *see* FAC ¶ 39. Yet here, Defendants facilitated a secret, collusive arrangement whereby the settlement proceeds were diverted *away* from the real party in interest (the Orly Trust). FAC ¶ 46.

---

The Trustee also appealed the February 19, 2019 decision (which denied the motion as "moot") but was stopped by the automatic stay which arose from Orly's bankruptcy filing. *See 2010 Action* (No. 1538).

(The FAC makes an error in reporting these facts. It states that the Trustee of the Orly Trust's motion to was denied in 2014, leading to the First Department appeal. ¶ 42. The correct sequence of events is as listed in this footnote.)

[13] *See, supra*, note 11 and accompanying text.

Defendants also took conspicuous steps to paper over this obviously collusive settlement. As discussed above, Defendants struck out all references in the stipulations to Orly acting "on behalf of" the Trust to make it look like the settlement was made in Orly's individual capacity. FAC ¶ 40. But the words the parties used to paper the settlement cannot alter the fact that only the Orly Trust had any right to payments made to settle claims that belonged to it. By its own terms, the 2013 Settlement resolved claims relating to "*Orly Trust* shares"—and yet, the proceeds of that settlement went everywhere *but* the Orly Trust. FAC ¶¶ 31, 33, 36, 44, 56–57.

The Trump Group wired $17.3 million in cash to the IOLA account of the Wachtel Defendants, to be held "as attorneys for the AG Group," as required by the terms of the 2013 Settlement. FAC ¶ 50. The Wachtel Defendants acted as escrow agent for these settlement proceeds. FAC ¶ 52. As such, they were duty bound to hold those proceeds for the real party in interest—the Orly Trust. But they did not: They took direction from their friends Arie Genger and the Brosers (parties for whom they never entered an appearance as counsel of record) to release the funds to them and/or entities controlled by them.[14] FAC ¶¶ 52, 56–57. This conduct left the Orly Trust with *none* of the benefit of the derivative litigation that Defendants brought on its behalf. It damaged the Trust, leaving the Trust unable to pay its creditors or to provide for future generations, frustrating the Trust's purpose. FAC ¶¶ 46–47, 56–57.

The Zeichner Defendants were fully aware of this arrangement and the conflicts it posed but lodged no objection. FAC ¶ 54. They knew, of course, that they would be paid, and indeed were paid, from the (wrongful) release of the settlement proceeds. FAC ¶¶ 54, 57.

---

[14] While the Wachtel Defendants claimed to represent the interests of the Orly Trust, they were actually representing the interests of Arie Genger and David and Arnold Broser. Arie and the Brosers are friends and business associates of Wachtel. In fact, Defendant William Wachtel's son now works for Arie Genger and David Broser. FAC ¶ 53.

## STANDARD

"In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor." *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 522 (S.D.N.Y. 2018).

A heightened pleading standard is applied to claims based on fraud. Fed. R. Civ. P. 9(b). "The purpose of Rule 9(b) is to require that a defendant be apprised of the misconduct complained of, so that he can prepare a defense." *Hutton v. Klabal*, 726 F. Supp. 67, 70 (S.D.N.Y. 1989). "[T]he adequacy of particularized allegations under Rule 9(b) is case- and context-specific." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quotations omitted). "Despite the generally rigid requirement of Rule 9(b), allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Id.* at 81–82 (alterations adopted).

## ARGUMENT

### I.   Derivative Litigation Background

"A derivative action represents prosecution of a claim belonging not to the individual [bringing the suit] but to the [principal (the real party in interest)] on whose behalf suit is brought.[15] *Kaplan v. Bennett*, 465 F. Supp. 555, 560 (S.D.N.Y. 1979); *see Papilsky v. Berndt*, 466 F.2d 251, 256 (2d Cir. 1972); *Serino v. Lipper*, 123 A.D.3d 34, 39 (1st Dep't 2014) ("It is black letter law that a stockholder has no individual cause of action against a person or entity that has injured the corporation [even where] the wrongful acts may have diminished the value of the shares of the corporation."). The plaintiff in a derivative suit is only *nominal* and the "proceeds of the action belong to the [principal]." *Papilsky*, 466 F.2d at 256; *see Jacobs v. Cartalemi*, 156 A.D.3d 605, 607

---

[15] While many of the cases cited here reference *shareholder* derivative litigation, analogous principles apply to derivative litigation brought on behalf of *trusts*. *See Velez v. Feinstein*, 87 A.D.2d 309, 314 (1st Dep't 1982).

(2d Dep't 2017); *Certain-Teed Prod. Corp. v. Topping*, 171 F.2d 241, 243 (2d Cir. 1948). Defendants who misdirect derivative proceeds away from the principal may be liable *even if* they did not receive the proceeds themselves. *Topping*, 171 F.2d at 243; *Mokhiber on Behalf of Ford Motor Co. v. Cohn*, 783 F.2d 26, 29 (2d Cir. 1986); *cf. Dabney v. Levy*, 191 F.2d 201, 203 (2d Cir. 1951) (proceeds of a derivative suit are "as much the corporation's property as its factories or apparatus").

A derivative plaintiff should not recover proceeds of a derivative suit even if the derivative suit is discontinued by stipulation. *Clarke v. Greenberg*, 296 N.Y. 146 (1947) ("When one assumes to act for another, regardless of the manner or method used in accomplishing a successful termination, he should willingly account for his stewardship. The plaintiff-stockholder, in good conscience, should not be allowed to retain the proceeds of a derivative suit discontinued by stipulation, to his individual use, in opposition to the corporation, any more than the proceeds of a judgment or a settlement with court approval.").

Not surprisingly, derivative suits have long raised the specter of "the unsavory practice of private and collusive settlement." *Birnbaum v. Birrell*, 17 F.R.D. 409, 411 (S.D.N.Y. 1955). The concern has been that derivative plaintiffs will collusively settle with defendants for harms done to the principal without providing any benefit to the principal. *Mokhiber*, 783 F.2d at 27.

Derivative plaintiffs owe fiduciary duties to the principals for whom they bring suit. *Id.*; *see Steinberg v. Steinberg*, 434 N.Y.S.2d 877, 878 (Sup. Ct., N.Y. Cty. 1980) (noting that a derivative plaintiff "makes herself a fiduciary"); *see also EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 31, 31 (2005) ("A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'").

## II.     **Each of Plaintiff's claims is well-pleaded and states a cause of action.**

### A.     **Plaintiff has adequately pled malpractice.**

"In an action to recover damages for legal malpractice, a plaintiff must demonstrate that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages." *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 442 (2007) (quotations omitted). "To establish causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence." *Id.*

Here, Plaintiff has adequately pled malpractice because the allegations satisfy each element of a malpractice claim. As detailed below, contrary to Defendants' arguments, privity is not required where there is "fraud, collusion, malicious acts or other special circumstances," *Estate of Schneider v. Finmann*, 15 N.Y.3d 306, 209 (2010), and, in any event, Defendants should be estopped from denying privity.

#### i.     ***The allegations satisfy each element of a malpractice claim.***

The FAC alleges facts stating a cause of action for malpractice. First, it alleges that Defendants "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." *Rudolf*, 8 N.Y.3d at 442. Without question, an attorney who commits fraud and makes false representations in court does *not* "exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." The FAC alleges just that: Defendants defrauded the Orly Trust by falsely representing, including in court, that they represented the Orly Trust's interests. ¶ 66. Specifically, the FAC alleges that Defendants: (1) colluded "to misappropriate and divert" Orly Trust property, ¶ 1; (2) made multiple false representations that they were representing the interests of the Orly Trust, ¶¶ 21–

26; (3) "knowingly facilitated a secret, collusive arrangement whereby their client, the derivative plaintiff, improperly diverted the settlement proceeds *away* from the [the Orly Trust]," ¶ 46, *see* ¶¶ 29, 31, 33, 35, 47–49; (4) "actively conceal[ed] the existence of documents and information [that] would have revealed the … diversion" of funds from the Orly Trust, ¶ 59; and (5) permitted David Broser to lie under oath to facilitate the fraudulent scheme, ¶¶ 60–61. The FAC also alleges that the Wachtel Defendants "engaged in a deceptive sleight-of-hand" to enrich their friends and business associates at the expense of the Orly Trust and that the Zeichner Defendants knowingly permitted them to do so. ¶¶ 53–54.

Second, the FAC alleges that Defendants' actions "caused [P]laintiff to sustain actual and ascertainable damages" because the Orly Trust would have received some—if not all—of the proceeds of the 2013 Settlement but for Defendants' conduct. *Rudolf*, 8 N.Y.3d at 442. The FAC also alleges that, because of Defendants' conduct: (1) "Plaintiff suffered damages in excess of $32 million in settlement proceeds," ¶ 5; and (2) "Arie Genger and the Brosers were able to make off with essentially all of the Orly Trust's funds," ¶ 57.

###    ii.    *Privity is not required where the allegations include fraud, collusion, malicious acts, or other special circumstances.*

Defendants argue that Plaintiff's malpractice claim fails because there was no privity between the Orly Trust and Defendants. Their argument is without merit because Plaintiff does not need privity to bring its claims.

In New York, a plaintiff does not *always* need privity to bring a malpractice suit: A party may maintain an action against an attorney—even in the absence of an attorney-client relationship—where there is "fraud, collusion, malicious acts or other special circumstances." *Estate of Schneider*, 15 N.Y.3d at 309; *see Stern v. Consumer Equities Assocs.*, 160 A.D.2d 993, 994 (2d Dep't 1990) ("[S]ince fraud and conspiracy to commit fraud have been alleged, privity is not

required to sustain the action for legal malpractice."); *see also AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co.*, 5 N.Y.3d 582, 595 (2005); *Ginsburg Dev. Companies, LLC v. Carbone*, 85 A.D.3d 1110, 1111−12 (2d Dep't 2011).

This privity exception does not require extraordinary circumstances. In fact, New York courts have readily dispensed with the privity requirement, particularly where, as here, the plaintiff's injury was foreseeable.[16] *See, e.g.*, *Good Old Days Tavern, Inc. v. Zwirn*, 259 A.D.2d 300, 300 (1st Dep't 1999) (permitting malpractice claim, despite the absence of privity, because plaintiff was a foreseeable third-party beneficiary of the contract of between defendant attorney and plaintiff's company); *Aranki v. Goldman & Assocs., LLP*, 34 A.D.3d 510, 511 (2d Dep't 2006) (no privity required where defendant lawyers "colluded … to freeze the plaintiffs out of … profit sharing and force them to surrender … their minority membership interests"). New York courts have also made clear that "[w]hen the lawyer represents that she is acting on the third party's behalf, the attorney is estopped from denying the attorney-client relationship and may be held liable for breach of fiduciary duty or negligence." *Crossland Sav. FSB v. Rockwood Ins. Co.*, 700 F. Supp. 1274, 1281 (S.D.N.Y. 1988); *see id.* (describing cases).

The FAC adequately pleads fraud, collusion, malicious acts, and other special circumstances. *See Mr. San, LLC v. Zucker & Kwestel, LLP*, 112 A.D.3d 796, 796 (2d Dep't 2013) (affirming denial of motion to dismiss in the absence of privity where plaintiff set forth "a claim which falls within 'the narrow exception of fraud, collusion, malicious acts or other special circumstances.'"). As stated above, the FAC alleges that Defendants committed fraud: As stated above, they (1) colluded "to misappropriate and divert" Orly Trust property, ¶ 1; (2) made

---

[16] Courts outside of New York have reached similar conclusions. The Supreme Court of Illinois, for instance, held that a derivative plaintiff's lawyers may be sued for malpractice by anyone who could bring a derivative suit on behalf of the principal, including the principal itself. *See Stevens v. McGuireWoods LLP*, 43 N.E.3d 923, 930 (Ill. 2015).

multiple false representations that they were representing the interests of the Orly Trust, ¶¶ 21–26; (3) "knowingly facilitated a secret, collusive arrangement," ¶ 46; *see* ¶¶ 29, 31, 33, 35, 47–49; (4) "actively conceal[ed] the existence of documents and information [that] would have revealed the … diversion" of funds from the Orly Trust, ¶ 59; and (5) permitted David Broser to lie under oath to facilitate the fraudulent scheme, ¶¶ 60–61. These allegations—which must be taken as true for the purposes of Defendants' motions to dismiss—make clear that this is a case of fraud, collusion, and malicious acts.[17]

### iii. *Defendants are estopped from denying privity where they claimed to represent Plaintiff.*

Because Defendants repeatedly claimed to represent the interests of the Orly Trust, they are equitably estopped from denying an attorney-client (or at least a privity relationship) with the Trust. *See Lemon v. Hollinger*, 2018 WL 3231665, at *4 (S.D.N.Y. May 14, 2018) (contemplating that a defendant could be equitably estopped from asserting the lack of privity as a defense).

"The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *In re Vebeliunas*, 332 F.3d 85, 93 (2d Cir. 2003) (quotations omitted); *see Nassau Tr. Co. v. Montrose Concrete Prod. Corp.*, 56 N.Y.2d 175, 184 (1982). "[T]he elements of equitable estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." *In re*

---

[17] Indeed, the facts in this case closely resemble those in *Ginsburg*, 85 A.D.3d 1110. There, the plaintiff entered into a real estate joint venture with partner. The plaintiff and partner dissolved the joint venture in arbitration. Under the arbitration award, the plaintiff was entitled to a mortgage note, at which point the joint venture would deliver the property to partner. Partner's lawyers, however, allegedly fraudulently conveyed the property to partner without authorization and before plaintiff received his mortgage note. Plaintiff sued partner's lawyers. The court held that plaintiff did not need privity to bring his malpractice claims. *Id.* at 1111–12. (Notably, the court also affirmed the denial of the defendant lawyer's motion to dismiss plaintiff's fraud claim based on the same facts. *Id.* at 1111.)

*Vebeliunas*, 332 F.3d at 93–94. "The parties asserting estoppel must show[:] (1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in their positions." *Id.* at 94.

Defendants falsely stated that they were representing the interests of the Orly Trust, and they intended the Orly Trust to rely on that representation—indeed, they blocked the Orly Trust Trustee's attempts to learn the true nature of the settlement, forcing the Trust to rely solely on Defendants' representations that somehow the settlement did *not* pay for claims belonging to the Orly Trust. FAC ¶¶ 70–71. In fact, Defendants knew that they were representing the interests of Orly as an individual, Arie, and the Brosers—to whom they eventually diverted the settlement proceeds. FAC ¶¶ 21–26, 29, 31, 33, 35, 46–49, 59.

### B.    Plaintiff has adequately pled fraud.

To prove *actual* fraud under New York law, the plaintiff must show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018). To prove *constructive* fraud, the plaintiff must show the same elements as actual fraud, "except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 310 (S.D.N.Y. 2014) (citing *Wilson v. Dantas*, 746 F.3d 530, 536 n.2 (2d Cir. 2014)).

"[A] fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." *Kaufman v. Cohen*, 307 A.D.2d 113, 119–20 (1st Dep't 2003). "Thus, where a fiduciary relationship exists, the mere failure to disclose facts which one is required to disclose may constitute actual fraud, provided the fiduciary possesses the requisite intent to deceive." *Id.* (quotations omitted).

The only elements of constructive fraud disputed by Defendants are: (1) the existence of a fiduciary relationship, and (2) reasonable reliance.[18] Defendants also argue that Plaintiff's fraud claim is duplicative and therefore must be dismissed. Their arguments lack merit.

### i. *Orly Genger and Defendants owed fiduciary duties to the Trust.*

"A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 561 (2009) (quotations omitted). "[A] contractual relationship is not required for a fiduciary relationship." *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012). One factor in determining whether a fiduciary relationship exists is "control by one party of the other for the good of the other." *Saul v. Cahan*, 153 A.D.3d 947, 949 (2d Dep't 2017).

Importantly, "[d]etermining whether a fiduciary relationship exists necessarily involves a fact-specific inquiry." *AG Capital Funding*, 11 N.Y.3d at 158. As such, "a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 308 (S.D.N.Y. 2014); *see In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 506 (S.D.N.Y. 2011).

As stated above, derivative plaintiffs owe a fiduciary duty to the principal on whose behalf they are suing. *Mokhiber*, 783 F.2d at 29; *see Steinberg*, 434 N.Y.S.2d at 878 ("Because she seeks to use a remedy designed to vindicate rights of the corporation and the other shareholders, she makes herself a fiduciary."). Defendants represented Orly in her capacity as a derivative plaintiff for the Orly Trust, and all or a substantial part of the claims settled by the 2013 Settlement—

---

[18] Without question, the first and fourth elements are satisfied here. Defendants falsely asserted that they represented the interests of the Orly Trust and used that false representation to defraud the Orly Trust of its right to a share of the 2013 Settlement Proceeds. FAC ¶¶ 1, 21–26, 29, 31, 33, 35, 46–49.

negotiated and executed by Defendants—were necessarily derivative claims brought by Orly on

behalf of the Orly Trust. As a result, Orly, and her lawyers, were acting in a fiduciary capacity

toward the Orly Trust. *See Crossland Sav. FSB v. Rockwood Ins. Co.*, 700 F. Supp. 1274, 1281

(S.D.N.Y. 1988) ("When the lawyer represents that she is acting on the third party's behalf, the

attorney is estopped from denying the attorney-client relationship and may be held liable for

breach of fiduciary duty …."); *Eurycleia Partners, LP*, 12 N.Y.3d at 561 (A "fiduciary" under New

York Law is "under a duty to act for or to give advice for the benefit of" the principal.

(quotations omitted)).

Defendants argue that they cannot be fiduciaries of the Orly Trust because they were

"adverse" to the Trust. This argument is without merit. For one, derivative plaintiffs are by

operation of law aligned in interest with the principals on whose behalf they bring litigation—

even if they are practically adverse. Indeed, derivative suits often arise *because of* this adversity:

The derivative plaintiff seeks to do something that it could not get the principal to do for itself.

*See, e.g.*, *Bansbach v. Zinn,* 1 N.Y.3d 1, 8 (2003). Second, Defendants are equitably estopped, as

described above, from arguing that their interests were adverse to the Orly Trust because they

repeatedly stated that they represented the interests of the Orly Trust (and then used that

representation to harm the Orly Trust by diverting settlement proceeds that the Trust was

entitled to).

### ii.    ___Plaintiff has adequately pled reasonable reliance.___

Reasonable reliance is more likely to be found where the plaintiff relies on a

representation of fact as opposed to "opinion or advice." *Matsumura v. Benihana Nat'l Corp.*, 542 F.

Supp. 2d 245, 256 (S.D.N.Y. 2008). "[W]hether or not reliance on alleged misrepresentations is

reasonable in the context of a particular case is intensely fact-specific and generally considered

inappropriate for determination on a motion to dismiss." *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008).

The Orly Trust reasonably relied on Defendants' factual misrepresentations (i.e., that they represented the Trust) by "(a) not appealing the restraining order preventing it from prosecuting its claims in Delaware, (b) not acting to secure the money paid for releases made on its behalf before the money was converted, and (c) agreeing to voluntarily discontinue the Delaware action with respect to ownership." FAC ¶ 70.

This reliance was reasonable because Orly had no individual (i.e. non-derivative) claims in the underlying litigations, given that she never owned any shares as an individual. So it was reasonable for the Orly Trust to believe that Defendants were representing its interest by representing Orly as a derivative plaintiff of the Trust. The Trust's reliance was also reasonable because one should be able to rely on representations made in open court by members of this State's bar. *Cf. In re Cohen*, 370 F. Supp. 1166 (S.D.N.Y. 1973) (an attorney is an officer of the court with a duty to "maintain[] the dignity of the court"). The Orly Trust could not be expected to anticipate that members of this State's bar would lie in court to help their clients make off with $32 million in derivative settlement funds.

### iii.   *Plaintiff's fraud claim is not duplicative of its malpractice claim, and, in any event, would not require dismissal.*

Where a plaintiff alleges fraud "independent of the alleged malpractice … a motion to dismiss a cause of action as duplicative is properly denied." *Vermont Mut. Ins. Co. v. McCabe & Mack, LLP*, 105 A.D.3d 837, 840 (2d Dep't 2013). This is so even where the fraud and malpractice claim allege *identical* damages. *Id.* at 838.

But whether a fraud claim is independent of malpractice is context specific. If the fraud and malpractice claims are both based on the fact that "defendants ignored their professional

duties," "defendants' conflicts of interest," or that defendants failed to disclose a fact that they were required to disclose, the claims may be duplicative. *Hoffman v. RSM U.S. LLP*, 169 A.D.3d 522, 523 (1st Dep't 2019). But where a fraud claim is premised on more than the "quality of the [defendant's] work," it is likely *not* duplicative. *Cascardo v. Dratel*, 171 A.D.3d 561, 562 (1st Dep't 2019); *Postiglione v. Castro*, 119 A.D.3d 920, 922 (2d Dep't 2014) (where "cause of action alleging fraud makes no claim of inadequate or negligent legal representation … the fraud cause of action was not duplicative of the legal malpractice cause of action.").

Courts also routinely distinguish fraud from malpractice where the fraud was intended "from the outset," before any professional services were rendered. *Schaeffer v. Kessler*, 2013 WL 1155587, at *8 (S.D.N.Y. Mar. 20, 2013); *see Johnson v. Proskauer Rose LLP*, 129 A.D.3d 59, 69 (1st Dep't 2015) (fraud claim is independent of malpractice claim because plaintiffs claim that defendants conceived of the fraudulent scheme at the outset.). Indeed, the typical case where a fraud claim is dismissed as duplicative is one in which the alleged fraud is merely the defendant's attempt to conceal malpractice. *See, e.g.*, *Luv N' Care, Ltd. v. Shiboleth LLP*, 2017 WL 3671039, at *9 (S.D.N.Y. Aug. 8, 2017); *Brean Murray, Carret & Co. v. Morrison & Foerster LLP*, 165 A.D.3d 582, 583 (1st Dep't 2018); *White of Lake George Inc. v. Bell*, 251 A.D.2d 777, 778 (3d Dep't 1998).

Here, Defendants' fraud did not arise out of its failure to adequately perform its professional duties. Unlike the usual case—where a fraud claim is premised on the defendants' attempt to *conceal* the malpractice—in this case, the fraud was used to *commit* the malpractice. Indeed, as discussed above, the malpractice claim is premised on an exception, to the general privity requirement, that *requires fraud*. That exception would have little purpose if its application was necessarily duplicative of fraud.

But *even if* the malpractice claim were duplicative of the fraud claim, *at least one* claim—here, the fraud claim—should survive. Duplicativeness does not warrant dismissing *every* claim; it

only warrants dismissing the *incidental* duplicative claim. *See Fin. Servs. Vehicle Tr. v. Saad*, 72 A.D.3d 1019, 1020 (1st Dep't 2010); *cf. Mitschele v. Schultz*, 36 A.D.3d 249, 255 (1st Dep't 2006) (fraud claim still "viable irrespective of whether some of the alleged acts and misrepresentations were mentioned in connection with the [dismissed and] untimely causes of action"). Here, *if anything*, the *malpractice* clam is incidental to the fraud.

In addition, at the pleading stage, courts should not routinely dismiss duplicative claims *solely* because they are duplicative—alternative pleading is permissible. *ARB Upstate Commc'ns LLC v. R.J. Reuter, L.L.C.*, 93 A.D.3d 929, 934 (3d Dep't 2012) ("While [a] cause of action may eventually be determined to be duplicative of another cause of action … plaintiffs may proceed on alternative theories at [an] early stage of the litigation."); *EBC I, Inc. v. Goldman Sachs & Co.*, 7 A.D.3d 418, 420 (1st Dep't 2004), *aff'd as modified*, 5 N.Y.3d 11 (2005) (noting alternative theories of malpractice and fiduciary breach are "alternative theories" that "may be advanced in pleadings"); *Ginsburg*, 85 A.D.3d at 1111 (affirming the denial of the defendant lawyer's motion to dismiss plaintiff's fraud and malpractice claims based on the same facts). Thus, even if the Court finds that Plaintiff has alleged duplicative causes of action, this Court should not dismiss at this early stage of litigation.[19]

### C.   Plaintiff has adequately pled breach of fiduciary duty (as to third cause of action).

To establish a breach of fiduciary duty "[u]nder New York law, … a plaintiff … must establish (1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant

---

[19] Contrary to the arguments made by Defendants, courts do not invariably dismiss duplicative claims: "A fraud claim that is premised on the same acts of nondisclosures and misrepresentations as is a legal malpractice claim *may* be dismissed as duplicative." *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 698 (S.D.N.Y. 2002) (emphasis added); *see Salichs v. Tortorelli*, 2004 WL 602784 (S.D.N.Y. Mar. 29, 2004)); *see* ZEK Brief 13 (citing *Salichs*).

breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach." *Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir. 2004).

As discussed extensively above, Orly and Defendants owed the Orly Trust fiduciary duties. *See, e.g.*, *Mokhiber*, 783 F.2d at 29. Those fiduciary duties were breached when Defendants falsely claimed to represent the interests of the Trust, abused that misrepresentation to obtain settlement proceeds from the Trump Group, and then failed to pay those proceeds to the real party in interest (the Orly Trust).

Nor should Plaintiff's fiduciary duty claims be dismissed as duplicative of the malpractice claim, for all the reasons provided above with respect to Plaintiff's fraud claim. *See Burke, Albright, Harter & Rzepka, LLP v. Sills*, 83 A.D.3d 1413, 1414 (4th Dep't 2011) (breach of fiduciary duty claim not duplicative of legal malpractice claim where fiduciary duty claim "based on … intent[] to deceive" and malpractice claim based on "negligent conduct"); *see also Cherry Hill Mkt. Corp. v. Cozen O'Connor P.C.*, 118 A.D.3d 514, 514 (1st Dep't 2014); *Lauder v. Goldhamer*, 122 A.D.3d 908, 910 (2d Dep't 2014).

### D. <u>Plaintiff has adequately pled breach of fiduciary duty (as to fourth cause of action—with respect to Wachtel Defendants).</u>

The Wachtel Defendants violated their fiduciary duties to Plaintiff by failing to properly execute their escrow obligations: They diverted proceeds of the 2013 Settlement held in their IOLA account away from the Orly Trust to their friends Arie Genger and the Brosers.

The New York Rules of Professional Conduct make clear that an attorney serving as an escrow agent for a client must determine whether any persons apart from the client can claim an ownership interest in the escrowed funds. If so, the attorney must promptly notify any person with an interest in the funds that the attorney has received the escrowed funds. *See* Rule 1.15(b)–(c); *see also, e.g.*, *In re Kulcsar*, 2011 WL 1202168, at \*1 (S.D.N.Y. Mar. 24, 2011).

The improper handling of IOLA funds supports a breach of fiduciary duty claim. Escrow agents become trustees of those with beneficial interests in the funds. *Oppenheim v. Simon*, 57 A.D.2d 1006, 1007 (3d Dep't 1977). The escrow agent is liable to principals for damage resulting from any breach of trust. *Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn*, 165 Misc. 2d 539, 546 (Sup. Ct., N.Y. Cty. 1994), *aff'd*, 227 A.D.2d 106 (1st Dep't 1996). As a trustee, the escrow agent owes the "highest kind of loyalty" and "must make whole the party to which he or she owes a fiduciary duty for any damages arising from the breach of the fiduciary's duty, and the appropriate measure of damages requires placing the beneficiary in the same position it would have been in had the wrong not occurred."[20] *Id.* A third-party beneficiary of the escrow may bring an action against the escrow agent. *Id.* (citing *United States v. Jacobs*, 304 F. Supp. 613 (S.D.N.Y. 1969)).

Here the 2013 Settlement required the Trump Group to pay $17.3 million to the IOLA account of the Wachtel Defendants, to be held "as attorneys for the AG Group" (which includes, as defined in the 2013 Settlement, Orly, Arie, the David Brosers, and the Browsers' affiliated entities). FAC ¶ 50. Those proceeds belonged—entirely, or in substantial part—to the Orly Trust. Thus, the Wachtel Defendants were required to inform the Trust of those proceeds, to act as a fiduciary for the Trust, and to ensure that the Trust received its share of proceeds. The Wachtel Defendants failed to honor these duties. Worse still, the Wachtel Defendants *actively concealed* the 2013 Settlement from the Orly Trust, thus hindering its ability to protect its interest in the proceeds—an interest that should have been protected by the Wachtel Defendants in the first instance. FAC ¶ 59, 71.

---

[20] This issue analogously arises in the resolution of a personal injury case. For example, a plaintiff's lawyer receives funds from a settlement into the lawyers' IOLA account and pays out the client's share without paying the subrogated insurer which had paid for the client's medical treatment. Because the lawyer acted as the escrow agent of the settlement funds, the lawyer is liable to the insurer.

This case is similar to *In re Ginzburg*, 89 A.D.3d 938, 941 (2d Dep't 2011). In that case, an attorney held funds from a medical malpractice suit on behalf of an estate. The attorney disbursed the funds to the representative of the estate in his *individual* capacity instead of in his capacity as *representative* of the estate. The Second Department held that the attorney breached his fiduciary duty as an escrow agent to the estate and affirmed the Surrogate Court's holding that the attorney must make the representative of the estate, *as administer of the estate*, whole. Here, likewise, the Wachtel Defendants, who served as escrow agents, diverted proceeds away from the Orly Trust and to their friends Arie and the Brosers.

Indeed, the *only* argument raised by the Wachtel Defendants in their brief as to why this claim should be dismissed is that it is somehow duplicative of the malpractice claim. WAC Br. 11. That argument fails for all the reasons stated above. But the independence of this claim is even more obvious: This claim is premised on the Wachtel Defendants' independent obligations as escrow agents, which supports this cause of action independently from their obligations as representatives of the Orly Trust. Indeed, this claim would survive even if Defendants had never falsely represented to the court that they were representing the interests of the Orly Trust—it arises not from their misrepresentations but from their failure to fulfill their duties as escrow agents.

### E.     Plaintiff has adequately pled aiding and abetting breach of fiduciary duty.

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003); *see In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005).

"A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Id.* at 126. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Id.* However, "inaction … constitutes substantial assistance … if the defendant owes a fiduciary duty directly to the plaintiff." *Id.*

As explained above, Orly, as derivative plaintiff for the Orly Trust, owed fiduciary duties to the trust. *See, e.g.*, *Mokhiber*, 783 F.2d at 29. Orly breached those fiduciary duties by colluding with Defendants, Arie, the Brosers, and the Trump Group to "monetize" the Trust's interest in TRI shares without *any benefit* to the Trust. *Genger 3*, 76 F. Supp. 3d at 491 ("Orly has effectively monetized an interest in the [TRI] shares she claims not to have received to the tune of $32.3 million."). Defendants, as counsel to Orly, knew and substantially assisted in this breach by representing her in court, making false representations—including *in court*—to prevent the Trust from pursuing its rights, negotiating and executing the settlement that misappropriated the Trust's claims, and concealing the existence and terms of the 2013 Settlement from the Trust. FAC ¶¶ 21–26, 29, 31, 33, 35, 46–49, 59.

### F. __Plaintiff has adequately pled aiding and abetting conversion.__

"Aiding and abetting conversion requires the existence of a conversion by the primary tortfeasor, actual knowledge, and substantial assistance." *William Doyle Galleries, Inc. v. Stettner*, 167 A.D.3d 501, 505 (1st Dep't 2018). "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Id.*

The simple fact is that all or most of the $32 million proceeds of the 2013 Settlement belonged to the Orly Trust. And yet, the Trust received *nothing*: The proceeds ended up with various members the AG Group. Those members intentionally and without authority assumed

control over those proceeds knowing that they belonged to the Trust. Indeed, no one could doubt that all or most of the proceeds belonged to the Trust. The Trump Group, for instance, wrote to the court, on behalf of all parties to the 2013 Settlement, that the derivative claims were "*bargained and paid for in the settlement.*" Letter to Judge, *2010 Action* (No. 485) (emphasis added).

Defendants—or at a minimum, the Wachtel Defendants—substantially assisted that primary violation for all the reasons stated above: They made false representations to prevent the Orly Trust from pursuing its rights, were key players in achieving the settlement that misappropriated the Orly Trust's assets, and concealed the terms of that settlement from the Orly Trust, all of which had the effect of aiding the conversion of the Orly Trust's interest in the settlement proceeds. FAC ¶¶ 21–26, 29, 31, 33, 35, 46–49, 59.

### G.    Plaintiff has adequately pled its breach of contract claim.

"Under New York law, a third party may enforce a contract when recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012) (quotations omitted).

"A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [its] benefit and (3) that the benefit to [it] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost." *Bd. of Educ. v. Long Island Power Auth.*, 130 A.D.3d 953, 954–55 (2d Dep't 2015); *see Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786 (2006). But "[a] party need not necessarily be specifically mentioned in a contract to be considered a third-party beneficiary." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996).

No one contests that the retainer agreements between Defendants and Orly were valid and binding contracts. Nor can anyone seriously contest that those contracts were intended for the benefit of the Orly Trust—the only *real* claims Defendants brought under those contracts, after all, belonged to the Trust. Finally, the benefit to the Trust was not merely incidental: Defendants were bringing claims that *should* have (and would have but for Defendants' fraud) resulted in a recovery for the *Trust*, as the real party in interest, and not (at least directly) to Orly.

Defendants argue that this claim is duplicative of the malpractice claim. It is not duplicative for all the reasons stated above with respect to other causes of action, but here again, the independence of this claim should be obvious: It arises from Defendants' contractual promises to represent the interests of the Orly Trust in their retainer agreements with Orly, not from Defendants' failures of professional judgment. Further, to the extent this Court finds that one of the claims is duplicative, the claim for breach of contract should survive.

## III.    Plaintiff's claims are not barred by the statute of limitations.

Under New York law, the statute of limitations is an affirmative defense. *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 697 (S.D.N.Y. 2002); *see Fishman by Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 143 (2d Cir. 1998). As a consequence, the burden of proof falls on the defendants. *Hirsch v. Rehs Galleries, Inc.*, 2020 WL 917213, at *3 (S.D.N.Y. Feb. 26, 2020) (Broderick, J.).

"The pleading requirements in the Federal Rules of Civil Procedure, however, do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Id.* (quotations omitted). Nor can a defendant meet its burden by "citing an absence of evidence in favor of the plaintiff's position." *Rosas v. Balter Sales Co. Inc.*, 2015 WL 12915807, at *13 (S.D.N.Y. Mar. 30, 2015) (Broderick, J.).

The statute of limitations for aiding and abetting a primary violation is, in general, the same as the statute of limitations for the primary violation. *See, e.g.*, *Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 453 (S.D.N.Y. 1998).

### A.      Plaintiff's fraud claim is timely.

The statute of limitations "for a cause of action sounding in fraud is six years from the wrong, or two years from the date the fraud could reasonably have been discovered, whichever is later." *Baratta v. ABF Real Estate Co.*, 215 A.D.2d 518, 519 (2d Dep't 1995); *see* CPLR 203(g), 213(8). "[T]he time a plaintiff could with reasonable diligence have discovered the alleged fraud is the time from which it conclusively appears that the plaintiff has knowledge of facts which should have caused him or her to inquire and discover the alleged fraud." *Id.*

Defendants argue that the Orly Trust's fraud claim is time barred solely because it is "merely incidental" to claims with shorter limitations periods. This argument is without merit for the reasons stated above with respect to Defendants' arguments about the Orly Trust's purported failures to state a claim. The FAC clearly alleges that Defendants colluded with others to "misappropriate and divert" the Orly Trust's property, made multiple false representations, and facilitated a collusive settlement agreement. ¶¶ 21–26, 29, 31, 33, 35, 46–49, 59. The fraud allegations are not simply dressed up malpractice or conversion allegations: Defendants' core malfeasance was not a failure of professional judgment.[21] Their core malfeasance was deception—to the Orly Trust, to the court, and to the Trump Group. FAC ¶¶ 21–26. Their core misrepresentation was that they were representing the Orly Trust's interests when in fact they were acting to defraud the Trust of its claims, and ultimately, its settlement proceeds. FAC ¶¶ 29, 31, 33, 35, 46–49. Nor are the fraud allegations dressed up conversion allegations: Defendants

---

[21] Indeed, the malpractice claim itself relies on the fraud exception to the privity requirement, as explained above.

didn't just help to steal money from the Orly Trust—Defendants also tricked the Trust, the court, and the Trump Group into believing that they were representing the Trust's interests, which enabled them to defraud the Trust of its settlement proceeds. FAC ¶¶ 29, 31, 33, 35, 46–49.

**B.**     **Plaintiff's malpractice claim is timely.**

The statute of limitations for malpractice is generally three years. CPLR § 214(6). But where an action "sounds in fraud," New York courts have applied the six-year fraud statute of limitations. *Cent. Tr. Co., Rochester v. Goldman*, 70 A.D.2d 767, 767 (4th Dep't 1979) ("When, as here, the complaint alleges not only malpractice but also all the necessary elements of fraud and the damage claimed is proximately caused by the fraud, the complaint is sufficient for purposes of the six-year Statute of Limitations."); *see also Simcuski v. Saeli*, 44 N.Y.2d 442, 448 (1978) ("Fraudulent representations may play a dual role. They may be the basis for an independent action for fraud. They may also, in equity, be a basis for an equitable estoppel barring the defendants from invoking the Statute of Limitations as against a cause of action for breach of fiduciary relations").

In addition, under the continuous representation rule, the running of the statute of limitations is postponed until the lawyer no longer represents the client in the particular matter in which the malpractice occurred. *Glamm v. Allen*, 57 N.Y.2d 87, 93 (1982). The malpractice allegations rest on the fraud exception to the privity requirement. Because the malpractice claim is premised on Defendants' representation of Orly, in her capacity as a derivative plaintiff for the Orly Trust, the continuous representation rule should apply based on Defendants' continuous representation of *Orly*, which continued until at least January 2017 when the Zeichner Defendants withdrew from the 2009 Action and the 2010 Action. (The Wachtel Defendants

never withdrew their appearance.) FAC ¶ 21. Therefore, the statute of limitations for malpractice should be tolled until at least January 2017.[22]

### C.   Plaintiff's breach of fiduciary duty claim is timely.

New York law does not provide a specific statute of limitations for breach of fiduciary duty claims. The applicable statute of limitations for a breach of fiduciary duty claim depends on the remedy that a plaintiff seeks. *See Kaufman v. Cohen*, 307 A.D.2d 113, 118 (1st Dep't 2003). As relevant here, claims for breach of fiduciary duty that sound in fraud are subject to a six-year statute of limitations, even when the relief sought is money damages. *Cusimano v. Schnurr*, 137 A.D.3d 527, 530 (1st Dep't 2016); *see IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) ("[W]here an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213(8).").

As discussed above, because the core of Defendants' malfeasance in this action sounds in fraud, the six-year statute of limitations applies to the Orly Trust's breach of fiduciary duty claims. FAC ¶¶ 21–26, 29, 31, 33, 35, 46–49, 59.

### D.   Plaintiff's conversion claim is timely.

The statute of limitations for conversion is generally three years. *See Rattenni v. Cerreta*, 285 A.D.2d 636, 637 (2d Dep't 2001); CPLR 214(3). But where the "gravamen of the complaint sounds wholly in fraud, not conversion… the applicable statute of limitations is six years." *Klein v. Gutman*, 12 A.D.3d 417, 419 (2d Dep't 2004); *see Petrou v. Karl Ehmer Int'l Foods, Inc.*, 167 A.D.2d 338, 339 (2d Dep't 1990) ("When a plaintiff asserts causes of action sounding in both fraud and conversion, the longer Statute of Limitations period for fraud … will apply, provided that the

---

[22] In addition, the Wachtel Defendants held until early 2017 unpaid promissory notes under the 2013 Settlement that belonged to the Trust, that exist *solely* because of the Orly Trust's clams, and that were held by the Wachtel Defendants *because of* their false claim to represent the Trust's interests.

complaint sets forth at least a semblance of the elements of fraud at that stage."); *see also Matter of Estate of Kraus*, 208 A.D.2d 728, 729 (2d Dep't 1994). As explained above, the "gravamen" of the complaint sounds in fraud, therefore the applicable statute of limitations is six years.

> **E.      Plaintiff's breach of contract claim is timely.**

A cause of action alleging breach of contract is governed by a six-year statute of limitations. CPLR 214(2). Accordingly, Plaintiff's contract claim is plainly timely. Defendants' only argument that Plaintiff's breach of contract action is time barred is that the breach of contract cause of action is somehow duplicative of the malpractice cause of action. But for the reasons stated above, the breach of contract claim is *not* duplicative of the malpractice cause of action; it arises from Defendants' contractual promises to represent the interests of the Orly Trust in their retainer agreements, not from Defendants' failures of professional judgment.

## IV.      Plaintiff's claims are not barred by collateral estoppel.

Defendants argue that Plaintiff's claims are barred by issue preclusion (or collateral estoppel). Their argument lacks merit: No court has ever determined how the proceeds of the 2013 Settlement should be distributed, nor has any court ever reached Plaintiff's claims that the parties to the 2013 Settlement Agreement improperly purported to resolve the Orly Trust's claims without any benefit to the Trust, the real party in interest. Instead, in 2019, the state court declined the motion to intervene to raise the issue, finding that the case had been concluded and that the motion was "moot." *See supra* Statement of Facts, Part IV. In short, issue preclusion does not apply because the issue has never been decided.

Because Defendants argue that the state court's rulings in the 2010 action are preclusive in this action, New York preclusion law applies. *See Simmons v. Trans Express Inc.*, 955 F.3d 325, 328 (2d Cir. 2020) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

In New York, issue preclusion (collateral estoppel) "precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) (quotations omitted). It applies if two requirements are satisfied: (1) "the *identical* issue necessarily must have been decided in the prior action and be decisive of the present action," and (2) "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Id.* (emphasis added). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action." *Id.*

Issue preclusion (collateral estoppel) is *not* the same thing as claim preclusion (res judicata). Claim preclusion (res judicata) "bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Avilon Auto. Grp. v. Leontiev*, 168 A.D.3d 78, 85 (1st Dep't 2019) (quotations omitted). Only claim preclusion can bar claims that *could have* been raised in earlier proceedings but were not. *See id.*; *see also Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 72 (2018) (Issue preclusion only bars claims that were "actually litigated and resolved.").

Neither issue nor claim preclusion applies here. As a preliminary matter, although Defendants raise *only* an *issue* preclusion argument, they appear to conflate issue preclusion with claim preclusion. *See* ZEK Br. at 29 (citing *claim* preclusion (res judicata) cases to advance their

argument based on *issue* preclusion (collateral estoppel)).[23] Defendants cite to two cases, one an unreported district court case, for the proposition that New York's "preclusion law" bars a cause of action that "arises from the 'same transaction' or 'same foundation facts,' [even if] a different legal theory is advanced." Zek Br. at 22. But, as noted above, issue preclusion and claim preclusion are "*distinct*" doctrines, and only *claim* preclusion (res judicata) bars different theories that arise out of the same transaction or occurrence.[24] *Paramount Pictures*, 31 N.Y.3d at 72.

In any case, to the extent Defendants intended to argue that claim preclusion applies, the Orly Trust was not a party to the 2010 Action nor in *actual* privity with any party to that action (because Defendants, while *purporting* to represent the Orly Trust, did not *in fact* do so).[25] Nor was Dalia, the then-Trustee of the Orly Trust, able to intervene in the 2010 Action.[26]

In any case, as a matter of both issue and claim preclusion, the Orly Trust did *not* have a "full and fair opportunity to contest the prior determination." *Kaufman*, 65 N.Y.2d at 455; *see Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002). The 2013 Settlement was borne of and constituted fraud: (1) it arose out of false representations—that Defendants represented the interests of the Trust—made *to the court* by Defendants; (2) it wrongfully diverted proceeds belonging to the Trust; and (3) it was kept secret from the Trust. FAC ¶¶ 21–26, 29, 31, 33, 35,

---

[23] The Wachtel Defendants do not make their own arguments regarding preclusion, but they "join the argument presented in the Zeichner Defendants' motion to dismiss that Plaintiff's claims are barred by the doctrine of collateral estoppel." WAC Br. at 14.

[24] This legal sleight of hand is significant because claim preclusion, as a broader and more powerful preclusive bar, places a greater burden on the party advancing it. *See Donohue Candy & Tobacco Co. v. Consumer Prod. Distributors, Inc.*, 422 F. Supp. 3d 637, 646 (E.D.N.Y. 2019); *Paramount Pictures*, 31 N.Y.3d at 72 (claim preclusion "more broadly bars the parties or their privies from relitigating issues"). Thus, Defendants appear to be trying to obtain the effect of claim preclusion while satisfying the lower burden of issue preclusion. In any case, Defendants' arguments fail as a matter of both issue and claim preclusion.

[25] Indeed, Defendants themselves repeatedly argue in their briefs that the Orly Trust was *not* in privity with Defendants.

[26] *See*, *supra*, note 12 and accompanying text.

46–49, 59. Thus, there was nothing "fair" about the prior litigation and its resolution, and the

Orly Trust had no meaningful opportunity to contest it. (Indeed, the Trust didn't even receive a

copy of the settlement agreement until it was too late.)

As to issue preclusion, Plaintiff's claims have never been resolved "*on the merits* by a court

of competent jurisdiction." *Avilon*, 168 A.D.3d at 85 (emphasis added) (quotations omitted).

Although Dalia, the then-Trustee of the Orly Trust, made efforts in the state court to litigate its

claims, the court never reached them, ultimately denying the Trustee's motion to intervene as

"moot." Decision & Order, Feb. 19, 2019, *2010 Action* (No. 1520). Under both federal and New

York law, a determination that a matter is "moot" is a decision that the court lacks subject matter

jurisdiction because there is no case or controversy. *See Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d

438, 441 (S.D.N.Y. 2018); *Cerniglia v. Ambach*, 145 A.D.2d 893, 894 (3rd Dep't 1988) (citing *Hearst

Corp. v. Clyne*, 50 N.Y.2d 707, 713 (1980)). A decision without subject matter jurisdiction is a

nullity: It does not adjudicate anything. *Gutierrez v. Fox*, 141 F.3d 425, 426 (2d Cir. 1998);

*Manhattan Telecommunications Corp. v. H & A Locksmith, Inc.*, 21 N.Y.3d 200, 203 (2013). As a

consequence, a dismissal for mootness does not have preclusive effect.[27] *Hell's Kitchen Neighborhood

Ass'n v. Bloomberg*, 2007 WL 3254393, at *4 (S.D.N.Y. Nov. 1, 2007) (citing *Fox v. Bd. of Trustees of

State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994)); *see City of Oneida v. Chassin*, 229 A.D.2d

855, 857 (3d Dep't 1996) (rejecting collateral estoppel argument based on dismissal due to

mootness). Thus, Plaintiff's claims have not been resolved on the merits.

Indeed, the 2013 Settlement does not indicate *to whom* the settlement proceeds belong,

nor has *any* court yet decided the issue. This action—at least in part—is an action to recoup

---

[27] Of course, whether a court is right or wrong about its mootness determination, a finding of mootness is by
definition "not on the merits." As long as the court *thinks* an issue is moot—and dismisses on that ground—the court
has not adjudicated the issue *on the merits*.

damages because those proceeds were not distributed to their rightful owner—the Orly Trust, and so it is not precluded. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327 (1955) (a judgment "unaccompanied by findings [does] not bind the parties on any issue ... which might arise in connection with another cause of action"); *see also Motrade v. Rizkozaan, Inc.*, 1998 WL 108013, at *5 (S.D.N.Y. Mar. 11, 1998) ("To have a preclusive effect on specific issues or facts, however, a voluntary dismissal also must be accompanied by specific findings sufficient for a subsequent court to conclude that certain matters were actually decided.").

The Wachtel Defendants argue that an affidavit filed by the then-Trustee of the Orly Trust raised the issue that Orly was settling claims in the 2013 Settlement that belonged to the Trust, "which underlies every cause of action asserted in the FAC." *See* WAC Br. 4. They fail to mention, however, that the court in the 2010 Action never actually decided the issues raised by the affidavit. In its May 13, 2014 order, the court did *not* decide the issue, but to the contrary invited the parties to provide more information on the derivative claims implicated by the 2013 Settlement. *See* Order, Mar. 21, 2014, *2010 Action* (No. 925) (ECF no. 45-15). Similarly, in the court's May 7, 2015 order, the court never reached the issue, because it held the Trustee's motion in abeyance and later denied it in February 2019 as "moot," which for the reasons explained above is not a decision *on the merits*. *See 2010 Action* (Nos. 1279, 1520).

Likewise, to the extent Defendants argue that the May 13, 2014 order somehow precludes this action, *see* ZEK Br. at 6, at the time that decision was rendered, Dalia, the Orly Trust's then-Trustee, had yet to be shown a copy of the 2013 Settlement Agreement, and thus had no way to fully and fairly litigate any claim. More importantly, the March 2014 order explicitly did *not* decide the issue, but instead "invite[d] the parties" to detail the derivative claims, concluding: "*Unless and until the issue of derivative claims is resolved*, I cannot determine

whether some or all of the settlement proceeds with the Trump Group belong to Orly or the Orly Trust…." Order, Mar. 21, 2014, *2010 Action* (No. 925) (ECF no. 45-15) (emphasis added).

Finally, the Zeichner Defendants cite an excerpt from a transcript in which the court tells the then-Trustee of the Orly Trust that "it sounds like that ship has sailed" when the Trustee raised the issue of whether the settlement had been paid. *See* ZEK Br. at 24. But an offhand remark in a hearing that "it *sounds like*" payment was made under the 2013 Settlement is hardly a determination on the merits regarding the claims brought in the FAC. And in any case, that March 2015 hearing led to the May 7, 2015 order, in which, as explained above, the court held the Trustee's intervention motion in abeyance until it was eventually dismissed as "moot," without the Trustee ever being able to litigate the issue. *See 2010 Action* (No. 1279).

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants' motions to dismiss should be denied in their entirety.

Dated: May 7, 2020
      New York, NY

**POLLOCK COHEN LLP**

By:    */s/ Adam Pollock*
     Adam Pollock
60 Broad St., 24th Floor
New York, NY 10004
Adam@PollockCohen.com
Phone: (212) 337-5361

*Counsel for Plaintiff*